# Exhibit B

**Before the**
**FEDERAL COMMUNICATIONS COMMISSION**
**Washington, DC 20554**

| | |
|---|---|
| In the Matter of<br><br>*Entitlement to Lowest Unit Charge for Legally Qualified Candidates for Federal Office and All Authorized Committees* | Docket No. _____<br><br>DA 26-300 |

## APPLICATION FOR REVIEW

David R. Fox
Richard A. Medina
Nicole E. Wittstein
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
(202) 968-4490
dfox@elias.law
rmedina@elias.law
nwittstein@elias.law

*Counsel for Applicants*

April 29, 2026

**TABLE OF CONTENTS**

Summary ................................................................................................................ iii

Application for Review .......................................................................................... 1

Question Presented ................................................................................................. 1

Background ............................................................................................................. 2

I.      Statutory and regulatory framework ............................................................ 2

      A.      The "lowest unit charge" entitlement ................................................ 2

      B.      The Media Bureau's LUC Guidance ................................................... 5

      C.      The Applicants ................................................................................... 6

Argument ............................................................................................................... 9

I.      The LUC Guidance unlawfully dilutes candidates' exclusive entitlement to lowest unit charge by offering it to non-candidate political committees ............................................... 9

      A.      Party committees' coordinated expenditures are not use by a candidate. ............. 10

      B.      Advertisements by JFCs with non-candidate members are not "use" by a candidate. ................................................................................. 13

      C.      Applicants are aggrieved by the Media Bureau's LUC Guidance. ......................... 17

Conclusion ........................................................................................................... 19

## SUMMARY

In 1971, to address candidates' ballooning campaign costs, Congress required broadcast stations to provide special low rates—known as "lowest unit charge"—to candidates in the run-up to elections. The plain text of the resulting statute, codified at Section 315(b) of the Communications Act, reflects this limited purpose—it entitles only "candidates" to the special rates. 47 U.S.C. § 315(b)(1). But the Media Bureau recently issued guidance purporting to require broadcast stations to offer lowest unit charge to advertising purchased by two categories of non-candidate political committees: (1) party committees engaged in coordinated expenditures and (2) "Joint Fundraising Committees" (JFCs) with candidate and non-candidate committee members. That guidance directly conflicts with the plain text of the Communications Act and the Commission should set it aside, making clear that only candidates and candidate committees are entitled to lowest unit charge.

Advertisements by party committees are not entitled to lowest unit charge because they are not "use" of a broadcasting station "by . . . a legally qualified candidate," *id.*, even if they are "coordinated" with a candidate. The Federal Election Campaign Act (FECA) distinguishes between (1) party committee *contributions* to candidate committees for the candidate's own use, *see* 52 U.S.C. § 30116(a)(1)(A), (h), and (2) party committee coordinated *expenditures*, which must be made directly by the party committee, *see id.* § 30116(d). The latter are "use" by a party committee, not by a candidate, because they are required to be the party committee's expenditures—if they were the candidate's use, they would be unlawful contributions to the candidate's committee.

Advertisements by JFCs with candidate and non-candidate members are also not entitled to lowest unit charge because, by law, much of the cost of those advertisements is borne by non-candidate members who are not entitled to lowest unit charge. *See* 11 C.F.R. § 102.17(c)(7). The

iii

Media Bureau justified its guidance by noting that JFCs can be formally designated as "authorized committees" of candidates under FECA. But FECA allows candidates to designate JFCs as "authorized committees" "*solely* for the purpose of joint fundraising." 52 U.S.C. § 30102(e)(3)(A)(ii) (emphasis added). That designation reflects that the JFC spends *the candidate's* share of fundraising expenses and receives *the candidate's* share of contributions on behalf of the candidate, before transferring the candidate's share of net proceeds to the candidate's principal committee. *See id.* § 30101(6). It does not justify treating JFC expenditures as candidate expenditures entitled to lowest unit charge, even though some, and often nearly all, of those expenditures are paid for by non-candidate committees with no right to lowest unit charge.

Expedited action by the Commission is essential. The Bureau's unlawful guidance will imminently harm candidates in competitive House and Senate races in the 2026 cycle, including Applicants Senator Sherrod Brown, Senator Jon Ossoff, Governor Roy Cooper, and Representative Kristen McDonald Rivet, and their respective campaign committees. By forcing broadcasters to charge lower rates to non-candidate committees that—unlike Applicants—are not entitled to them, the Bureau's guidance ensures that Applicants will "face intensified competition" for limited airtime in violation of the Communications Act. *Shays v. FEC*, 414 F.3d 76, 86 (D.C. Cir. 2005) (emphasis omitted). They will also be subject to—and forced to respond to—a greater volume of negative advertisements purchased at lower rates. And because the Bureau's guidance allows non-candidates to buy more advertisements at lower rates, Applicants will be hampered in their ability to control their own independent campaign messages and policy positions, which risk being drowned out by political party messaging—from the Republican and Democratic Parties alike. As candidates for public office, Applicants have "an interest in a fair process" untainted by unlawful ad spending. *Bost v. Ill. State Bd. of Elections*, 146 S. Ct. 513, 519 (2026). The Commission should

iv

set aside the Bureau's erroneous guidance and vindicate Congress's "effort to reduce candidates' escalating campaign costs" without extending those same benefits to other groups. *In re Codification of Comm'n's Pol. Programming Pol'ys*, 7 FCC Rcd. 678, 685 n.54 (1991).

## APPLICATION FOR REVIEW

Applicants Senator Sherrod Brown, Senator Jon Ossoff, Governor Roy Cooper, and Representative Kristen McDonald Rivet, along with their principal campaign committees,[1] respectfully request that the Commission set aside the FCC Media Bureau's March 30, 2026, Public Notice providing Guidance on Entitlement to Lowest Unit Charge for Legally Qualified Candidates for Federal Office and All Authorized Committees, DA 26-300 ("LUC Guidance"). The LUC Guidance merits the Commission's review because it is in direct conflict with the Communications Act of 1934. *See* 47 CFR § 1.115(b)(2)(i). The LUC Guidance is attached to this Application as Exhibit A.

Applicants bring this challenge as an Application for Review pursuant to the D.C. Circuit's decision in *National Ass'n of Broadcasters v. FCC*, No. 14-1072, 2014 WL 4449657 (D.C. Cir. Sep. 9, 2024) (unpublished), which held that a challenge to a similar guidance document may— and must—be initiated via this procedure.

## QUESTION PRESENTED

Whether the Media Bureau's March 30, 2026, Public Notice, DA 26-300, requiring broadcasters to provide the lowest unit charge for (1) political party committees' advertisements that qualify as coordinated expenditures under FECA, and (2) joint fundraising committees' advertisements, must be set aside as contrary to Section 315(b)(1) of the Communications Act of 1934?

---

[1] Friends of Sherrod Brown, Jon Ossoff for Senate, Cooper for North Carolina, and Kristen for Michigan.

1

**BACKGROUND**

I.      **Statutory and regulatory framework**

A.      **The "lowest unit charge" entitlement**

Section 315(b)(1) of the Communications Act of 1934 entitles "legally qualified candidate[s] for any public office" who "use . . . any broadcasting station" shortly before their elections to do so at "the lowest unit charge of the station for the same class and amount of time for the same period." 47 U.S.C. § 315(b)(1). This valuable entitlement takes effect 45 days before the candidate's primary election or runoff and 60 days before the candidate's general election. *Id.* § 315(b)(1)(A). It was enacted in its present form as part of the Federal Election Campaign Act of 1971 (FECA), which comprehensively regulates the finances of federal campaigns. *See Hernstadt v. FCC*, 677 F.2d 893, 897 (D.C. Cir. 1980).

FECA requires all federal candidates to designate a "principal campaign committee" to accept contributions and make expenditures on their behalf. 52 U.S.C. § 30102(e)(1). Everyone agrees that stations must offer lowest unit charge for advertisements purchased by those principal campaign committees on behalf of the "legally qualified candidate" they support. This Application concerns whether stations must *also* offer lowest unit charge to advertisements purchased by two other categories of committees that are further removed from the candidates themselves: party committees engaged in coordinated expenditures under 52 U.S.C. § 30116(d), and joint fundraising committees established by candidates and non-candidates "solely for the purpose of joint fundraising by such candidates," *id.* § 30102(e)(3)(A)(ii). While the dispute is ultimately over the meaning of the Communications Act, understanding it requires an explanation of federal campaign finance law's treatment of those two categories of committees.

**Party Committee Coordinated Expenditures.** FECA sharply limits the size of "contributions" that may be made to federal political committees, including candidate committees.

2

*See* 52 U.S.C. § 30116(a). To prevent donors from evading those limits by directly paying vendors on a candidate's behalf, FECA also treats as contributions, subject to those same limits, expenditures that are "made by any person in cooperation, consultation, or concert, with, or at the request or suggestion of, a candidate, his authorized political committees, or their agents." *Id.* § 30116(a)(7)(B)(i); *see Shays v. FEC*, 414 F.3d 76, 97 (D.C. Cir. 2005). But FECA contains an important exception to that treatment, which Congress enacted with its 1974 FECA amendments: State and national political party committees may make substantial coordinated expenditures in connection with federal candidates' campaigns without those expenditures being treated as contributions. *See* 52 U.S.C. § 30116(d). In the 2026 cycle, eligible party committees may coordinate with candidates with respect to up to $130,600 of expenditures for most House contests and between $130,600 and $4 million in Senate contests.[2] The Supreme Court is currently weighing whether the First Amendment prohibits restricting at all the amount that parties may spend on coordinated expenditures. *See generally NRSC v. FEC*, No. 24-621 (U.S.). But whether party coordinated expenditures remain limited or become unlimited, they must still be *the party's* expenditures rather than the candidate's—that is, the party must be the one paying the bills— because the parties' direct monetary contributions to candidate committees are subject to much lower limits that are not being challenged in the pending Supreme Court case. *See* 52 U.S.C. § 30116(a)(1)(A), (h); Tr. of Oral Argument at 82:15-83:8, *NRSC*, No. 24-621.[3]

**Joint Fundraising Committees.** In addition to establishing a principal campaign committee, FECA allows federal candidates to "designate a political committee established solely

---

[2] *See Coordinated Party Expenditure Limits*, FEC, https://www.fec.gov/help-candidates-and-committees/making-disbursements-political-party/coordinated-party-expenditures/coordinated-party-expenditure-limits/ (last visited Apr. 28, 2026).

[3] Oral Arg. Transcript, *NRSC v. FEC*, No. 24-261 (U.S. Dec. 9, 2025), https://www.supremecourt.gov/oral_arguments/argument_transcripts/2025/24-621_q86b.pdf.

3

for the purpose of joint fundraising by such candidates as an [additional] authorized committee." 52 U.S.C. § 30102(e)(3)(A)(ii); 11 C.F.R. § 102.17(a)(1), (2). Such committees are commonly known as "joint fundraising committees" or "JFCs." To form a JFC, the participating committees must establish a separate committee (or designate one of the participating committees) to serve as the joint fundraising representative and enter into an agreement that "state[s] a formula for the allocation of fundraising proceeds." 11 C.F.R. § 102.17(c)(1). A JFC's only permissible purpose is to "collect contributions, pay fundraising costs from gross proceeds and from funds advanced by participants, and disburse net proceeds to each participant." *Id.* § 102.17(b)(1); *see* 52 U.S.C. § 30102(e)(3)(A)(ii). In doing so, the FEC's joint fundraising regulation requires JFC participants to split expenses for each fundraising effort in proportion to their split of proceeds from that effort. 11 C.F.R. § 102.17(c)(7). In recent years, candidates have formed JFCs with party committees, which have higher contribution limits than candidates; with national party committees' even-higher-limit specialty account; and with other non-candidate committees, which also have higher contribution limits than candidates. An overwhelming majority of proceeds of these JFCs flow to the non-candidate committees, due to their higher contribution limits, which therefore bear the overwhelming majority of expenses as well.[4]

Beginning in the 2024 election cycle, select JFCs began running advertisements that were nearly indistinguishable from ordinary campaign ads. These advertisements advocated expressly for a specific Republican Senatorial candidate and against their Democratic opponent. Some

---

[4] *See, e.g.*, *Nevada Victory Committee*, FEC, https://www.fec.gov/data/committee/C00890962/ (last visited Apr. 28, 2026); *Wisconsin Victory Committee*, FEC, https://www.fec.gov/data/committee/C00889493/ (last visited Apr. 28, 2026).

4

advertisements were narrated by a Republican candidate, touting the candidates' background.[5] Others attacked Democratic opponents as corrupt or radical.[6] The only feature that distinguishes these ads from typical candidate or party-coordinated ads is a brief fundraising pitch—a call to "join" the candidate's "team"—in the final few seconds, along with an on-screen QR-code that prompts donations to the JFC.

### B.       The Media Bureau's LUC Guidance

Until recently, the FCC had not provided direct guidance on whether party coordinated expenditures and JFC expenditures are entitled to lowest unit charge for their use of broadcasting stations shortly before elections. And in connection with the litigation over the constitutionality of the party coordinated expenditure limits in *NRSC v. FEC*, the Solicitor General argued in his reply brief that the Communications Act "require[s] broadcasters to charge low rates for candidate spending, *but not for party spending—whether coordinated or independent*." Reply Brief for the Federal Respondents at 23, *NRSC v. FEC*, No. 24-261 (U.S. Oct. 1, 2025), 2025 WL 3068193 (emphasis added).

After this announcement, the National Association of Broadcasters released a new guidance memo to its broadcaster members. *See* Ex. B ("NAB Memo"). NAB stated its "belie[f]" that "a candidate's designated principal campaign committee is entitled to lowest unit charge, while 'joint fundraising committees' and other 'hybrid' committees are not."

On March 30, 2026, just days after the NAB Memo was issued, the Media Bureau issued the LUC Guidance. The LUC Guidance states the Bureau's position that "the LUC requirements

---

[5] *More Work to Do*, MI Victory Committee/Rogers, https://perma.cc/GY65-XBX6 (last visited Apr. 29, 2026); *Call to Duty*, Sheehy Victory Committee, https://perma.cc/9S62-6XMR (last visited (Apr. 29, 2026).

[6] *See, e.g.*, *Conflict of Interest*, WI Victory JFC/Hovde, https://perma.cc/8KUC-ZX7Z (last visited Apr. 29, 2026); *Radical Too*, Fischer Victory Fund, https://perma.cc/AV7G-FBPX (last visited Apr. 29, 2026).

are applicable to (1) authorized committees, including authorized committees that engage in joint fundraising with legally qualified candidates for federal office, and (2) advertisements that qualify as coordinated expenditures of political parties and legally qualified candidates for federal office." Ex. A ("LUC Guidance") at 1. It states that "the FCC has long held that LUC provisions of section 315(b) apply to both candidates and their authorized campaign committees" because the Act "repeatedly refers to candidates and their authorized committees as sharing the rights it confers." *Id.* It asserts that "[t]he FCC's rules do not recognize distinctions between types of committees for LUC purposes (*e.g.*, principal campaign committee, joint fundraising committee) provided that the committee is an authorized committee of the candidate under FECA." *Id.* at 2. And it further purports to "restate previous Media Bureau guidance" (which it neither cites nor otherwise identifies) that "candidate-party coordinated advertisements are subject to the LUC provisions, provided that the ad otherwise complies with other applicable requirements." *Id.*

### C.      The Applicants

Applicants are legally qualified Democratic candidates for the U.S. House of Representatives and U.S. Senate in the upcoming 2026 election, along with their principal campaign committees. Each is running in a highly competitive race that has been targeted by the Republican Party for likely coordinated party expenditures in support of Applicants' opponents.

Applicant Sherrod Brown served three terms as United States Senator from the state of Ohio, from 2007 until 2025. In 2024, Senator Brown lost his seat by less than 4% in a hotly contested race to now Senator Bernie Moreno. He is now challenging sitting Senator Jon Husted in the 2026 election, whom Ohio Governor Mark DeWine appointed to fill the seat vacated by Vice President J.D. Vance. The NRSC has characterized the Ohio Senate seat as one of only three

6

"true defensive targets."[7] Senator Brown therefore expects the race will draw significant spending by NRSC, including in party-candidate coordinated advertisements. In 2024, the NRSC spent more than $1.9 million on media in coordination with Senator Bernie Moreno's campaign to unseat Senator Brown,[8] and nearly $90k more in independent expenditures.[9]

Applicant Jon Ossoff is a United States Senator for the State of Georgia. Senator Ossoff won his seat in 2020 in an exceedingly close and nationally watched race. On election night, no candidate received more than 50% of the vote, forcing the race to a runoff between Senator Ossoff and then-incumbent Senator David Perdue. In the runoff election on January 5, 2021, Senator Ossoff prevailed by only 1.2%. The Republican Party has publicly touted Senator Ossoff's seat "as their top pickup opportunity in the Senate,"[10] and reporters have suggested that the race "may become the most expensive Senate race ever."[11] Indeed, the 2020 race for Senator Ossoff's seat currently holds the record for most expensive Senate race in history,[12] with the NRSC spending $1.3 million in coordinated expenditures with then-Senator Perdue's campaign,[13] and another $14

---

[7] Max Greenwood, *NRSC Chair Tim Scott Predicts Record-Breaking Spending in 2026 Senate Race*, Campaigns & Elections (Feb. 10, 2025), https://campaignsandelections.com/industry-news/nrsc-chair-predicts-record-spending-in-2026/.

[8] *Party-coordinated Expenditures*, FEC https://www.fec.gov/data/party-coordinated-expenditures/?committee_id=C00027466&candidate_id=S4OH00192&cycle=2024 (last visited Apr. 29, 2026).

[9] *Independent Expenditures*, FEC https://www.fec.gov/data/independent-expenditures/?data_type=processed&most_recent=true&q_spender=C00027466&cycle=2024&is_notice=true&candidate_id=S6OH00163 (last visited Apr. 29, 2026).

[10] Liz Goodwin, *Republicans Privately Fear This Swing State Democrat*, The Wash. Post (Mar. 23, 2026), https://www.washingtonpost.com/politics/2026/03/23/ossoff-georgia-senate-midterms-democrats-republicans/?utm_campaign=wp_main&utm_source=facebook&utm_medium=social.

[11] Max Cohen & John Bresnahan, *Ossoff Gears Up for Fight of His Political Life in 2026*, Punchbowl News (Feb. 6, 2025), https://punchbowl.news/article/campaigns/jon-ossoff-gets-ready-for-2026-senate-race/.

[12] Greenwood, *supra* note 7.

[13] *Party Coordinated Expenditures*, FEC, https://www.fec.gov/data/party-coordinated-expenditures/?committee_id=C00027466&candidate_id=S4GA11285&cycle=2020 (last visited Apr. 28 , 2026).

million in independent expenditures opposing Ossoff's candidacy.[14] To that end, Senator Ossoff expects the 2026 race will draw significant spending by the NRSC, as well.

Applicant Roy Cooper is the former Governor of North Carolina. He announced his candidacy for United States Senate on July 28, 2025, and he won the Democratic Party primary election for U.S. Senate in North Carolina on March 4, 2026. Like Ohio, the NRSC has characterized the North Carolina Senate seat as a "true defensive targets."[15] Governor Cooper therefore expects the race to draw significant spending by the NRSC. In 2022, when North Carolinians last elected a U.S. Senator, the NRSC spent $1.7 million in coordinated expenditures with Senator Ted Budd for media supporting his campaign.[16] And it spent more than $6 million more in independent expenditures opposing the Democratic candidate.[17]

Applicant Kristen McDonald Rivet represents Michigan's 8th Congressional District in the House of Representatives. Representative McDonald Rivet won her seat in 2024 in an election in which Donald Trump carried her district by two points. Representative McDonald Rivet will be on the ballot in November 2026 to keep her seat in MI-8. NRCC has announced its plan to target MI-8 to expand its House majority this election cycle,[18] and Representative McDonald Rivet expects NRCC will dedicate significant resources toward advertisements opposing her reelection.

---

[14] *Independent Expenditures*, FEC https://www.fec.gov/data/independent-expenditures/?data_type=processed&most_recent=true&q_spender=C00027466&cycle=2020&is_notice=true&candidate_id=S8GA00180 (last visited Apr. 28, 2026).

[15] Greenwood, *supra* note 7.

[16] *Party Coordinated Expenditures*, FEC https://www.fec.gov/data/party-coordinated-expenditures/?committee_id=C00027466&candidate_id=S2NC00505&cycle=2022 (last visited Apr. 28, 2026).

[17] *Independent Expenditures*, FEC https://www.fec.gov/data/independent-expenditures/?data_type=processed&most_recent=true&q_spender=NRSC&cycle=2022&is_notice=true&candidate_id=S2NC00497 (last visited Apr. 28, 2026).

[18] *NRCC Targets 26 Offensive Seats to Expand House Majority*, NRCC (Mar. 17, 2025), https://www.nrcc.org/2025/03/17/nrcc-targets-26-offensive-seats-to-expand-house-majority/.

In the 2024 election cycle, NRCC spent nearly $630,000 in independent expenditures on media opposing Representative McDonald Rivet's candidacy.[19] And in 2022, NRCC coordinated more than $100,000 in expenditures with the Republican candidate for MI-8.[20]

## ARGUMENT

**I.      The LUC Guidance unlawfully dilutes candidates' exclusive entitlement to lowest unit charge by offering it to non-candidate political committees.**

The LUC Guidance must be set aside because it unlawfully requires broadcasters to offer lowest unit charge for advertisements that are not entitled to it under the Communications Act. Section 315(b)(1) provides for lowest unit charge *only* "for the use of any broadcasting station by any person who is a legally qualified candidate for any public office in connection with his campaign." 47 U.S.C. § 315(b)(1). Lowest unit charge is therefore available only for uses of broadcasts *by candidates*, and not for other political advertisements. The Commission has explained that "*only candidates* are entitled to lowest unit charge benefits," and it has "*never* held that independent entities" that support or oppose candidates are "entitled to the lowest unit charge." *In re Codification of Comm'n's Pol. Programming Pol'ys*, 7 FCC Rcd. 678, 685 n.54, 686 (1991) (emphasis added). Commission regulations implementing the statutory lowest unit charge provision similarly provide that lowest unit charge is available for use by "any *person* who is a legally qualified *candidate* for any public office." 47 C.F.R. § 73.1942(a) (emphasis added).

As the Commission has explained, the lowest unit charge provision reflects a "Congressional effort to reduce *candidates'* escalating campaign costs." *In re Codification of*

---

[19]    *Independent      Expenditures*,    FEC,    https://www.fec.gov/data/independent-expenditures/?data_type=processed&q_spender=C00075820&is_notice=false&most_recent=true&candidate_id=H4MI08218&min_date=01%2F01%2F2023&max_date=12%2F31%2F2024 (last visited Apr. 28, 2026).
[20]    *Party    Coordinated    Expenditures*,    FEC,    https://www.fec.gov/data/party-coordinated-expenditures/?committee_id=C00075820&candidate_id=H0MI08141 (last visited Apr. 28, 2026).

*Comm'n's Pol. Programming Pol'ys*, 7 FCC Rcd. at 685 n.54 (emphasis added). To that end, the provision "regulat[es] rates charged political candidates," and it was "viewed [by Congress] as providing an additional break for candidates." *Hernstadt*, <u>677 F.2d at 897</u>. It "was intended to ensure that, during the pre-election period, *candidates* would receive . . . volume and frequency discounts regardless of the number of announcements purchased." *Id.* at 890 (emphasis added). But its scope was intentionally limited, to avoid "imposing unreasonable and possibly economically devasting burdens on small stations." *Id.* at 898.

The LUC Guidance must be set aside as unlawful because it purports to require stations to offer lowest unit charge to advertisements from party committees engaged in coordinated spending and from JFCs, when neither constitutes the use of a broadcasting station by a legally qualified candidate, as Section 315(b)(1)'s plain text demands.

### A. Party committees' coordinated expenditures are not use by a candidate.

Party committees' coordinated expenditures are not entitled to lowest unit charge because they are expenditures by the party committees, not by candidates, so they are not "use" of a broadcasting station "by . . . a legally qualified candidate" as Section 315(b)(1) requires. This follows directly from FECA's distinction between (1) party committee *contributions* to candidate committees, which transfer funds to candidates that the candidates can then spend to purchase broadcast time for their own "use," *see* <u>52 U.S.C. § 30116(a)(1)(A)</u>, <u>(h)</u>, and <u>(2)</u> party committee coordinated *expenditures*, which must be made directly by the party committee, *not* the candidate, although the party and candidate are free to discuss and plan them in advance, *see id.* § 30116(d). For party committee advertisements to be *the candidate's* use, they would need to be purchased by the candidate's campaign, not by the party—and if so, they would involve *contributions* by party committees to the campaign, rather than coordinated expenditures. By treating party committee advertisements as candidate spending under the Communications Act when it is party spending

10

under FECA, the LUC Guidance improperly puts the two statutes "at war with one another," instead of reading them "as a harmonious whole." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 502 (2018).

Section 315(b)(1) does not require lowest unit charge for the "use" of a broadcasting station by a political party or any other non-candidate political group—only by a "legally qualified candidate." It was specifically crafted to "reduce *candidates'* escalating campaign costs." *In re Codification of Comm'n's Pol. Programming Pol'ys*, 7 FCC Rcd. at 685 n.54 (emphasis added). That is why the Commission has "never held that independent entities were entitled to the lowest unit charge," even for ads supporting or opposing candidates, but has instead emphasized that "the lowest unit charge *inures to the benefit of candidates only*." *Id.* (emphasis added). If Congress had wanted to extend lowest unit charge to party expenditures also, it easily could have said so when it first authorized coordinated expenditures a short two years after passing the lowest unit charge requirement in the first place. But it opted instead to limit the entitlement to avoid "imposing unreasonable and possibly economically devasting burdens on small stations." *Hernstadt*, 677 F.2d at 898; *see also Hayes v. Sebelius*, 762 F. Supp. 2d 90, 115 (D.D.C. 2011) ("[W]hen Congress amends one provision of a statute but not another, it can be interpreted to have signaled its intention not to apply the amendment to the unaffected provision.").

Consistent with the provision's text and purpose, the Commission has historically interpreted Section 315(b)(1) to mean that "only candidates or their authorized campaign committees are entitled to the LUC pursuant to Section 315(b)." *In re Codification of the Commission's Pol. Programming Pol'ys*, Memorandum Opinion and Order, 7 FCC Rcd. 4611, 4614, ¶ 23 (1992). As explained below with respect to JFCs, this interpretation is overbroad to the extent it permits JFCs to benefit from lowest unit charge even when some of their members are

11

not candidate committees. But party committees' coordinated spending fails even this overbroad test. With one exception in presidential contests that is inapplicable to Applicants' circumstances,[21] party committees are not and cannot be "authorized campaign committees" under FECA because, by their very nature, they "support[] or ha[ve] supported more than one candidate" for office, and they exist to do more than "solely . . . joint fundraising." 52 U.S.C. § 30102(e)(3)(A). Thus, party coordinated expenditures are made neither by a candidate nor by "their authorized campaign committee[]," so they fail the Commission's own longstanding test of lowest unit charge eligibility.

The LUC Guidance has no answer to these arguments. The Guidance acknowledges that advertising "purchased by political parties as an independent expenditure is not entitled to LUC." Ex. A at 2. It points out that such expenditures are not coordinated with candidates. But it does not explain how coordination could convert a party's own expenditure into the use of a station by a candidate. The more natural reading of the statute, by far, is that offered by the Solicitor General to the Supreme Court late last year: that lowest unit charge is available *only* for candidates and is "not [available] for *party spending—whether coordinated or independent*." Reply Brief for the Federal Respondents at 23, *NRSC*, No. 24-261 (U.S. Oct. 1, 2025), 2025 WL 3068193 (emphasis added). And while the Guidance purports to merely "restate previous Media Bureau guidance" on the subject, it does not cite any and Applicants are aware of none. Ex. A at 2. The only source the Guidance cites on this subject is *FEC v. Colorado Republican Federal Campaign Committee*, 41 F. Supp. 2d 1197 (D. Colo. 1999). But that case—which was ultimately reversed, *FEC v. Colorado Republican Fed. Campaign Comm.*, 533 U.S. 431 (2001)—holds no such thing. The quoted language—that "independent expenditures do not qualify for the lowest rates on the purchase of

---

[21] FECA allows a presidential candidate nominated by a political party to designate the national committee of the party as a principal campaign committee, but only if the national committee retains separate accounts with respect to that function. 52 U.S.C. § 30102(e)(3)(A)(i).

12

broadcasting time, as coordinated expenditures would"—is not a holding of the court but merely a description of one party's statement of undisputed facts. 41 F. Supp. 2d at 1210.

The LUC Guidance's statement that "candidate-party coordinated advertisements are subject to the LUC provisions" is therefore unlawful, because it purports to extend the entitlement to lowest unit charge to the use of broadcasting stations by political parties, whereas—as the Commission has long recognized—Congress limited that entitlement to candidates only.

**B.    Advertisements by JFCs with non-candidate members are not "use" by a candidate.**

Advertisements by JFCs with non-candidate members are also not "use" of a broadcasting station "by . . . a legally qualified candidate" that is entitled to lowest unit charge because by law, much of the cost and much of the fundraising benefit of those advertisements must be borne by the non-candidate members of the JFC who have no right to lowest unit charge. In practice, those non-candidate members often completely dominate JFC fundraising. In the 2024 cycle, for example, the NRSC and Rogers for Senate formed a JFC, Michigan Victory Committee, that spent more than 98% of its receipts (more than $9 million) on advertising, while disbursing very little to its participants: just over 1% of its receipts (just under $100,000) to the NRSC, and just 0.02% (barely $2,000) to Rogers for Senate, the only candidate-committee member.[22] Under FEC rules, that means that the NRSC—the recipient of 98% of the proceeds after advertising expenses—must have paid for 98% of the more than $9 million in advertising expenses, while Rogers for Senate paid just 2%. *See* 11 C.F.R. § 102.17(c)(7). And, as explained above, the NRSC as a party committee is not entitled to lowest unit charge because its advertising expenses are not the use by *a candidate* of a broadcasting station. Yet the LUC Guidance requires stations to treat all of this

---

[22]    *See Michigan Victory Committee – Disbursements*, FEC, https://www.fec.gov/data/committee/C00888883/?tab=spending#total-disbursements (last visited Apr. 28, 2026).

JFC's advertising expenses as if they are "use" by a candidate whose committee pays for almost none of them.

The Michigan Victory Committee did not stand alone. NRSC used the same strategy in Nevada and Wisconsin.[23] And even JFCs that do raise substantial money, rather than serving merely as advertising vehicles, often raise far more for party committees and PACs that are not entitled to lowest unit charge than they raise for candidate committees that are so entitled— meaning that their advertising expenses are overwhelmingly paid by committees not entitled to lowest unit charge. Grow the Majority, for example—Speaker Mike Johnson's principal joint fundraising committee—made more than half of its 2025 disbursements to party committees and non-candidate PACs, and less than half to candidate committees that could be entitled to lowest unit charge.[24]

The LUC Guidance's only justification for extending lowest unit charge to advertising purchased by JFCs like these—advertising which by law is paid for primarily by committees that are not entitled to lowest unit charge—is that the JFCs are formally designated as "authorized campaign committees" of the participating candidates. *See* Ex. A at 2. But FECA allows candidates to designate JFCs as "authorized committees" "*solely* for the purpose of joint fundraising." 52 § 30102(e)(3)(A)(ii) (emphasis added). That designation reflects that the JFC spends the candidate's share of fundraising expenses and receives the candidate's share of contributions on behalf of the candidate, before transferring the candidate's share of net proceeds to the candidate's principal committee. *See id.* § 30101(6). But that *at most* makes the *candidate's share* of the JFC's expenditures into candidate expenditures—it does not in any way transform the portions of the

---

[23] *See supra* note 4.

[24] *Grow    the    Majority    –    Spending*, FEC, https://www.fec.gov/data/committee/C00858373/?tab=spending (last visited Apr. 28, 2026).

JFC's expenditures paid for by non-candidate committees into candidate use that could qualify for lowest unit charge. It therefore does not justify treating expenditures by JFCs with non-candidate members as entitled to lowest unit charge, as the LUC Guidance does, because those expenditures are partially—and often overwhelmingly—paid for by non-candidates.

The mere fact that JFCs are designated as "authorized committees" by participating candidates does not justify the LUC Guidance's anomalous treatment of JFC expenditures funded in large part by non-candidates as if they were candidate use. The phrase "authorized committee" does not appear in the text of Section 315(b)(1), which grants *only candidates* the right to lowest unit charge. Nor does it appear anywhere in the Commission's regulations. *See* 47 C.F.R. § 73.1942. The only place the phrase "authorized committee" appears in the relevant statute is in a different subsection of Section 315, 47 U.S.C. § 315(b)(2). And that Subsection (b)(2), titled "Content of broadcasts," does not grant substantive rights to candidates, authorized committees, or anybody else. Instead, it places conditions on a *candidate's* right to lowest unit charge, which is separately conferred in Subsection (b)(1). Subsection (b)(2) provides that, to be eligible for lowest unit charge, a candidate must make a "written certification" that "the candidate (and any authorized committee of the candidate) shall not make any direct reference to another candidate for the same office, in any broadcast using the rights and conditions of access under [the Communications Act]," unless the ad also includes a disclaimer indicating that the candidate approved the broadcast and that the candidate's authorized committee paid for the broadcast. 47 U.S.C. § 315(b)(2)(A), (C). By its plain terms, this condition applies to "*any*" television or radio broadcast made by the candidate *or* the candidate's authorized committee—not just those entitled to lowest unit charge.

Subsection (b)(2) therefore does not mean that every "authorized committee" broadcast is entitled to lowest unit charge. It simply means that, for a candidate to receive lowest unit charge

15

for his *own* ads, he must certify that neither he nor any of his "authorized committees" will run *any* advertisement that mentions an opponent without including the required disclaimer. In other words, Section 315(b)(1) offers a limited benefit to candidates—lowest unit charge for candidate ads—in exchange for a broader commitment to abide by the conditions in Subsection (b)(2) in both candidate ads *and* authorized committee ads—including JFC ads. Nothing in the statute or its purpose limits the universe of broadcasts covered by Subsection (b)(2) to those covered by Subsection (b)(1). Thus, there is no reason to read the limitations in Subsection (b)(2) as enlarging the scope of entities entitled to lowest unit charge under Subsection (b)(1).

Confirming this, Subsection (b)(2)(B) provides that if the candidate "or any authorized committee of such candidate" breaches the conditions in Subsection (b)(2)(A), then "such *candidate* shall not be entitled to receive [lowest unit charge] on such broadcast or *any other* broadcast" within the covered period. *Id.* § 315(b)(2)(B) (emphasis added). Notably, this subsection does not say that a violation of Subsection (b)(2)(A) disentitles "authorized committees" from receiving lowest unit charge. If Congress meant for *both* "candidates" and "authorized committees" to get lowest unit charge, then the omission of "authorized committees" from this second clause of Subsection (b)(2)(B) would make little sense—it would produce a loophole that would swallow subsection (b)(2) whole. *See County of Maui v. Haw. Wildlife Fund*, 590 U.S. 165, 183 (2020) (rejecting a reading of a statute that "is inconsistent with the statutory text and simultaneously creates a massive loophole").

That both the "carrot" in Subsection (b)(1)—entitlement to lowest unit charge—and the "stick" in Subsection (b)(2)(B)—disentitlement from lowest unit charge—mention only "candidates" and not "authorized committees" is telling. This is particularly so because Congress *did* mention "authorized committees" in the parts of Subsection (b)(2) that describe the universe

16

of ads subject to the disclaimer requirement. "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (alteration omitted).

Thus, because broadcasting purchased by JFCs with non-candidate members is partially—and often overwhelmingly—paid for by non-candidate committees that are not entitled to lowest unit charge, the LUC Guidance is unlawful in requiring stations to extend lowest unit charge to such broadcasts.

C.    **Applicants are aggrieved by the Media Bureau's LUC Guidance.**

The Commission's regulations authorize "[a]ny person aggrieved by any action taken pursuant to delegated authority [to] file an application requesting review of that action by the Commission." 47 C.F.R. § 1.115(a). Applicants have been "aggrieved" by the LUC Guidance within the meaning of Section 1.115(a).

Federal law widely recognizes "competitive injuries" for political candidates. A candidate for office suffers a legally cognizable injury "when regulations illegally structure [the] competitive environment" governing their election. *Shays*, 414 F.3d at 87. That is, candidates "suffer injury to a statutorily protected interest if" governing regulations require them to "compete for office in contests tainted" by illegal practices. *Id.* at 85. Such an injury arises, for example, when a candidate "face[s] *intensified* competition" under an unlawful regulatory scheme, requiring them to "anticipate and respond to a broader range of competitive tactics than federal law would otherwise allow." *Id.* at 86.

That is just the case here. Applicants are four legally qualified candidates for the U.S. House of Representatives and U.S. Senate and their principal campaign committees. Senator Sherrod Brown, Senator Jon Ossoff, Governor Roy Cooper, and Representative Kristen McDonald

17

Rivet will all appear on the 2026 general election ballot. Under Section 351(b), Applicants are indisputably entitled to lowest unit charge for their political advertisements.

Applicants' races are highly competitive. NRCC has announced it is targeting Representative McDonald Rivet's seat to attempt to expand the Republicans' majority in the House of Representatives this fall.[25] And the NRSC views Senator Ossoff's seat, as well as the North Carolina and Ohio seats for which Governor Cooper and Senator Brown are running, as absolutely critical to maintain Republican control of the Senate.[26] Applicants therefore expect that the Republican party committees will dedicate substantial resources toward political advertising opposing Applicants' campaigns and supporting their opponents, including through coordinated expenditures and JFC advertising. That is exactly what NRCC and NRSC have done in recent years: these committees have spent millions of dollars in coordinated expenditures with Republican candidates in recent election cycles,[27] and it is expected this cycle will shatter existing spending records.[28]And given these projections, Applicants also expect that more JFCs will continue the practice a select few test-drove in 2024 of running advertisements that function as candidate ads for their opponents.

For the reasons Applicants explain above, a straightforward, textual reading of Section 351(b) does not require broadcasters to offer party committees or JFCs lowest unit charge in these circumstances. Broadcasters *should* be permitted to charge party committees—which are vastly better resourced than Applicants and their designated campaign committees—normal rates for airtime. But the Media Bureau's LUC Guidance instead unlawfully requires broadcasters to charge

---

[25] *Supra* note 18.
[26] *Supra* notes 7, 10–11.
[27] *Supra* notes 8–9; 13–14; 16–17; 19–20.
[28] *See* Cohen & Bresnahan, *supra* note 11.

party committees lowest unit charge for candidate-coordinated advertisements and JFC advertisements, thereby vastly reducing the cost to run ads against Applicants and supporting their opponents. This illegal discount for party coordinated and JFC ads places Applicants at a competitive disadvantage, forcing them to respond to a higher volume of the counter advertisements than otherwise could have been purchased at the same price point, and diluting their independent campaign messaging—which is supposed to be privileged by the Communications Act—with party messaging at lower rates than it is entitled to under law.

Moreover, because the issue directly affects Applicants' ongoing campaigns for the 2026 election, urgent action by the Commission is needed to correct the Media Bureau's erroneous guidance. Applicants reasonably expect that JFC and party-coordinated broadcast spending against them will begin in just the next few months. The Commission should therefore expedite this matter and promptly set aside the LUC Guidance.[29]

## CONCLUSION

The Commission should set aside the LUC Guidance and explain that only candidates and their principal campaign committees are entitled to lowest unit charge.

---

[29] It was "not possible" for applicants "to participate in the earlier stages of the proceeding," 47 C.F.R. § 1.115(a), because there was no earlier proceeding—the Bureau did not solicit public input before it issued the LUC Guidance.

Dated: April 29, 2026                     Respectfully submitted,

                                          David R. Fox
                                          Richard A. Medina
                                          Nicole E. Wittstein
                                          **ELIAS LAW GROUP LLP**
                                          250 Massachusetts Ave. NW, Suite 400
                                          Washington, DC 20001
                                          (202) 968-4490
                                          dfox@elias.law
                                          rmedina@elias.law
                                          nwittstein@elias.law

                                          *Counsel to Applicants*

20

# EXHIBIT A

# FC PUBLIC NOTICE

**Federal Communications Commission**
45 L Street NE
Washington, DC 20554

News Media Information 202-418-0500
Internet: www.fcc.gov
TTY: 888-835-5322

**DA 26-300**
**Released: March 30, 2026**

### FCC MEDIA BUREAU PROVIDES GUIDANCE ON ENTITLEMENT TO LOWEST UNIT CHARGE FOR LEGALLY QUALIFIED CANDIDATES FOR FEDERAL OFFICE AND ALL AUTHORIZED COMMITTEES

With another election season upon us, the FCC's Media Bureau takes this opportunity to remind broadcasters and the public about the FCC's lowest unit charge (LUC) requirements. As discussed below, the LUC requirements are applicable to (1) authorized committees, including authorized committees that engage in joint fundraising with legally qualified candidates for federal office, and (2) advertisements that qualify as coordinated expenditures of political parties and legally qualified candidates for federal office.

Section 73.1942 of the Commission's rules specifies that the charges made for the use of any broadcast station by a legally qualified candidate in connection with their campaign for nomination or election shall not exceed the LUC of the station for the same class and amount of time for the same period during 45 days preceding the date of a primary election and 60 days preceding the date of a general election.[1] Although section 73.1942 makes no reference to a legally qualified candidate's "authorized committee," section 315(b) of the Communications Act of 1934, as amended (Act), which section 73.1942 is intended to implement, repeatedly refers to candidates and their authorized committees as sharing the rights it confers.[2] Accordingly, the FCC has long held that LUC provisions of section 315(b) apply to both candidates and their authorized campaign committees.[3]

To determine what qualifies as an authorized committee, the Commission relies on subsection 315(b)(2)(F) of the Act, which explicitly defines the term "authorized committee" as having the same meaning given to it by the Federal Election Campaign Act (FECA), *i.e.*, the principal campaign committee or any other political committee authorized and designated by a candidate to receive contributions or make expenditures on behalf of such candidate.[4] Additionally, although the FECA generally prohibits the designation as an authorized committee a political committee that supports more

---

[1] 47 CFR § 73.1942(a).

[2] *See* 47 U.S.C. § 315(b).

[3] *See In the Matter of Codification of the Commission's Political Programming Policies*, Memorandum Opinion and Order, 7 FCC Rcd 4611, 4614, para. 23 (1992).

[4] 47 U.S.C. § 315(b)(2)(F) ("authorized committee" has the meaning given such term by section 30101 of title 52"). *See* 52 U.S.C. § 30101(6) (defining the term "authorized committee" to mean "the principal campaign committee or any other political committee authorized by a candidate under section 30102(e)(1) of this title to receive contributions or make expenditures on behalf of such candidate"); 52 U.S.C. § 30102(e)(1) ("Each candidate for Federal office . . . shall designate in writing a political committee in accordance with paragraph (3) to serve as the principal campaign committee of such candidate. . . . A candidate may designate additional political committees in accordance with paragraph (3) to serve as authorized committees of such candidate.").

than one candidate,[5] it provides an exception to allow candidates to designate as an authorized committee a political committee "established solely for the purpose of joint fundraising."[6]  The FCC's rules do not recognize distinctions between types of committees for LUC purposes (*e.g.*, principal campaign committee, joint fundraising committee) provided that the committee is an authorized committee of the candidate under the FECA.

We also take this opportunity to restate previous Media Bureau guidance regarding LUC eligibility for candidate-party coordinated ads.  Advertising time purchased by political parties as an independent expenditure is not entitled to LUC.  These expenditures involve no coordination between the party and a candidate.  By contrast, however, candidate-party coordinated advertisements are subject to the LUC provisions, provided that the ad otherwise complies with other applicable requirements in section 73.1942 of the Commission's rules and section 315(b) of the Act.[7]

Stations are always free to request documentation from parties to confirm that an entity purchasing time is eligible to receive LUC.

**-FCC-**

---

[5] 52 U.S.C. § 30102(e)(3)(A).

[6] 52 U.S.C. § 30102(e)(3)(A)(ii).

[7] *See, e.g.*, Colorado II at 1210 ("For example, independent expenditures do not qualify for the lowest rates on the purchase of broadcasting time, as coordinated expenditures would.").

# EXHIBIT B





## POLITICAL ADVERTISING
### INDEPENDENT COMMITTEES AND "LUC" RATES

Many stations have encountered independent entities such as political action committees (PACs) or political parties, claiming to be "authorized" by a candidate and thus entitled to the "lowest unit charge" (LUC) for political advertising under Section 315(b) of the Communications Act of 1934 (47 U.S.C. § 315(b)). This question has also arisen in related litigation currently pending before the U.S. Supreme Court. This memo presents NAB staff's view of whether such claims, as a general matter, may be valid. This memo is not intended to provide legal advice on how the law or legal principles discussed herein may apply to a broadcast station's specific circumstances. Indeed, each station faces its own unique political and economic environment, and as such, the applicability of these views will vary based on the situation. Stations should seek the advice of their own attorneys when deciding whether an advertisement qualifies for the LUC.

NAB believes that, while a candidate's "authorized committee" is entitled to LUC, other entities are not. Specifically, under the applicable federal laws, a candidate's designated principal campaign committee is entitled to LUC rates, while "joint fundraising committees" and other "hybrid" committees are not. In fact, as detailed below, the Department of Justice, through the Solicitor General, recently reflected a similar view.

Although Section 315(b) only mentions LUC in the context of candidate ads, the FCC has historically interpreted the law to apply to both a "legally qualified candidate" and the "authorized committee of such candidate." Section 315(b)(2) states that an ad by a candidate and any "authorized committee" of the candidate that references an opponent for the same office is only entitled to the LUC if the ad includes the "stand by your ad" statement that the candidate has approved the ad. In a 1972 Public Notice, for instance, the FCC specifically denied that the LUC provision of Section 315(b)(1) applied to political broadcasts by groups, organizations, or persons other than candidates, stating: "The provision applies only to broadcasts by candidates for public office." Similarly, in a 1992 Memorandum Opinion and Order codifying its prior political programming policies, the FCC stated: "[W]e have always held that only candidates or their authorized campaign committees are entitled to the LUC pursuant to Section 315(b). Thus, even if an independent entity produces an advertisement that includes an appearance by a candidate, that independent entity is not entitled to the LUC." Accordingly, it is not sufficient for candidate to "authorize" or approve any particular advertisement. For any

entity to claim an entitlement to LUC rates, the entity itself must be the "authorized committee" of a legally qualified candidate.

Section 315(b) defines "authorized committee" by referring to Section 30101 of the Federal Election Campaign Act (FECA) (52 U.S.C. § 30101). Section 30101 states that "[t]he term 'authorized committee' means the principal campaign committee or any other political committee authorized by a candidate under section 30102(e)(1) of this title to receive contributions or make expenditures on behalf of such candidate." Section 30102(e)(1), in turn, provides that each candidate shall designate a committee to serve as the "principal campaign committee of such candidate." The "principal campaign committee" is therefore an "authorized committee" within the meaning of both Section 30101 of the FECA and Section 315(b) of the Communications Act. Section 30102(e)(1) also provides that a candidate "may designate additional political committees in accordance with paragraph (3) to serve as authorized committees of such candidate."

Section 30102(e)(3), however, generally limits the designation of additional committees as "authorized committees" to committees that exclusively support a single candidate. Paragraph (3) provides two exceptions to this limitation. First, a candidate for President nominated by a political party may designate the national committee of such political party as "a principal campaign committee."[1] Second, candidates "may designate a political committee established *solely for the purpose of joint fundraising* by such candidates as an authorized committee" (emphasis added). Thus, while such "joint fundraising committees" may be considered "authorized committees" under the FEC's rules, the plain language of the FECA limits their designation as an authorized committee *solely* to regulations regarding *fundraising*, not to any regulatory designations related to active campaigning or buying advertising. The Department of Justice, through the Solicitor General of the United States, essentially took this view in a 2025 filing with the United States Supreme Court, stating that the LUC rules "require broadcasters to charge low rates for candidate spending, **but not for party spending—whether coordinated or independent**."[2]

NAB thus believes that, pursuant to the terms of Sections 30101 and 30102 of the FECA, only a candidate's designated principal campaign committee is entitled to LUC rates, while "joint fundraising committees" and other "hybrid" committees are not "authorized committees" eligible for LUC rates under Section 315(b) of the Communications Act.[3]

---

[1] This, of course, is applicable only to Presidential candidates and, under the terms of Section 30102(e)(3), only where the national committee maintains separate maintains separate books of account with respect to its function as a principal campaign committee.

[2] *Reply Brief for the Federal Respondents at 23, National Republican Senatorial Committee, et al., Petitioners, v. FEC, et al.*, No. 24-261, 2025 WL 3068193 (Oct. 1, 2025) (emphasis added). The Solicitor General added, "Parties could spend more money on advertisements, but broadcasters still would not be required to charge parties special low rates." *Id.*

[3] Note that, as of the date of this writing, the Supreme Court has agreed to hear arguments in a case brought by National Republican Senatorial Committee and others as to whether the First Amendment permits the government to restrict political parties from spending money on

In addition, because the key definition of "authorized committee" is tied to federal campaign finance limitations, it appears that these exceptions are limited to the narrow category of federal candidate committees. Nothing in the FECA, the Communications Act, or the FCC's rules or published cases suggests that these exceptions extend to state or local political parties, or other groups that are purportedly authorized by a state or local candidate. Thus, even if such parties claim to be "authorized" to act for a candidate under state or local law, it does not appear that they would qualify for LUC status under federal law.

*NAB's Counsel Memos are intended to serve as a source of general information on legal issues of interest to the broadcast industry. Broadcasters seeking information on how the principles discussed in a Counsel Memo apply to their specific circumstances should seek the advice of their own attorneys.*

---

campaign advertising with input from the party's candidate for office. (*National Republican Senatorial Committee, et. al. v. FEC, et. al.*, 117 F.4th 389 (6th Cir. 2024), *cert. granted,* 2025 WL 1787717 (U.S. Jun. 30, 2025) (No. 24-261).) While some have suggested that the Court's decision in this case may broaden the scope of entities entitled to LUC rates, neither the issues to be addressed in the case nor Section 315(b) of the Communications Act appear to support such an outcome. Indeed, the Solicitor General of the United States has already explicitly denied that the Court's decision will impact LUC rates, stating "[p]arties could spend more money on advertisements, but broadcasters still would not be required to charge parties special low rates." (*Reply Brief for the Federal Respondents at 23, National Republican Senatorial Committee, et al., Petitioners, v. FEC, et al.*, No. 24-261, 2025 WL 3068193 (Oct. 1, 2025).)