No. 26-1785

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

SHERROD BROWN, JON OSSOFF, ROY COOPER, AND KRISTEN MCDONALD RIVET,

*Petitioners,*

v.

FEDERAL COMMUNICATIONS COMMISSION AND UNITED STATES OF AMERICA,

*Respondents.*

On Appeal from the
Federal Communications Commission
DA 26-300

# PETITIONERS' EMERGENCY MOTION TO EXPEDITE
**Ruling Requested by July 1, 2026**

David R. Fox
Richard A. Medina
Nicole E. Wittstein
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
Telephone: (202) 948-1135
dfox@elias.law
rmedina@elias.law
nwittstein@elias.law

*Counsel for Petitioners Sherrod Brown, Jon Ossoff, Roy Cooper, and Kristen McDonald Rivet*

## INTRODUCTION

Petitioners Governor Roy Cooper, Senator Sherrod Brown, Senator Jon Ossoff, and Representative Kristen McDonald Rivet respectfully move the Court for expedited briefing, oral argument, and decision in this appeal under 28 U.S.C. § 1657(a), Fed. R. App. P. 27, and this Court's Rule 27.

This case involves a single, straightforward question of pure statutory interpretation: Whether (a) party committees engaged in coordinated expenditures, and (b) "Joint Fundraising Committees" (JFCs) with both candidate and non-candidate committee members, are "candidates" within the meaning of the Communications Act of 1971. The clear answer is no. Yet on March 30, 2026, the Federal Communications Commission's Media Bureau decided otherwise, instructing broadcast stations to extend a substantial benefit to both categories of committees that federal law reserves for candidates, and candidates alone: "lowest unit charge." *See* Public Notice Providing Guidance on Entitlement to Lowest Unit Charge for Legally Qualified Candidates for Federal Office and All Authorized Committees, DA 26-300 (Mar. 30, 2026), Doc. 3-2 ("LUC Guidance"). And when Petitioners filed an Application for Review and urged the full FCC to take expedited action to review that erroneous decision in light of the fast-approaching election season, the FCC did nothing at all for weeks.

The legal question is straightforward. In 1971, Congress required broadcast stations to provide special low rates—known as "lowest unit charge"—to candidates for campaign advertisements in the run-up to elections. The purpose of this benefit was to help lower *candidates'* ballooning campaign costs. The plain text of the resulting statute, codified at § 315(b) of the Communications Act, reflects this limited purpose—it entitles only "candidates" to the special rates. 47 U.S.C. § 315(b)(1). The Media Bureau's decision to extend this benefit to non-candidate political committees by agency fiat defiles the text of the Communications Act and places Petitioners at a competitive disadvantage in their highly contested races for the U.S. Senate and House of Representatives in the upcoming general election.

Lowest unit charge becomes available for political advertisements on September 4, 2026—60 days before the general election on November 3. Expedited relief from the Court is therefore essential. FCC's unlawful guidance will imminently harm Petitioners Senator Sherrod Brown, Senator Jon Ossoff, Governor Roy Cooper, and Representative Kristen McDonald Rivet, and their respective campaign committees—along with many more candidates in competitive House and Senate races in the 2026 cycle. By forcing broadcasters to charge lower rates to non-candidate committees that—unlike Petitioners—are not entitled to them, the LUC Guidance ensures that Petitioners will "face intensified competition" for limited airtime in violation of the Communications Act. *Shays v. FEC*, 414 F.3d 76, 86 (D.C.

Cir. 2005) (emphasis omitted). They will also be subject to—and forced to respond to—a greater volume of negative advertisements purchased at lower rates. And because the LUC Guidance allows non-candidates to buy more advertisements at lower rates, Petitioners will be hampered in their ability to control their own independent campaign messages and policy positions, which risk being drowned out by political party messaging—from the Republican and Democratic Parties alike.

The Court should expedite review of this case to ensure a lawful competitive landscape for campaigns in advance of the 2026 elections, and in so doing, prevent imminent harm to Petitioners and their campaigns. Absent expedited review, relief will come too late for the rapidly approaching 2026 election season. As candidates for public office, Petitioners have "an interest in a fair process" untainted by unlawful ad spending. *Bost v. Ill. State Bd. of Elections*, 607 U.S. 71, 71 (2026). The Court should set aside the erroneous LUC Guidance and vindicate Congress's "effort to reduce candidates' escalating campaign costs" without extending those same benefits to other groups. *In re Codification of Comm'n's Pol. Programming Pol'ys*, 7 FCC Rcd. 678, 685 n.54 (1991).

To enable relief in advance of September 4, 2026, when broadcasters must make lowest unit charge available for eligible political advertisements, Petitioners ask that the Court grant this motion to expedite by July 1, 2026, and enter the following schedule:

- **July 2, 2026** – FCC files the administrative record or confirms that it consists only of the challenged Media Bureau guidance and Petitioners' Application for Review.
- **July 6, 2026** – Petitioners file their opening brief.
- **July 27, 2026** – Respondents file their response brief.
- **August 3, 2026** – Petitioners file their reply brief.

Petitioners further request that the Court hear oral argument in a special sitting in August and issue a decision as soon as possible thereafter, in advance of the September 4 start of the lowest unit charge period.

Respondent FCC has informed Petitioners that it intends to move to dismiss this proceeding by July 2 on the ground that there is no reviewable final order of the FCC. Petitioners oppose that motion and will respond to it in accordance with Rule 27(a)(3)(A) once it is filed. Petitioners respectfully suggest that the motions panel is likely to defer the FCC's motion to dismiss to the merits panel given the jurisdictional issue's complexity, importance, and unsettled status in this Circuit. For that reason, and because of the time-sensitive nature of this appeal, Petitioners request that the Court order that expedited merits briefing proceed on the above schedule in parallel with resolution of the FCC's anticipated motion.[1]

---

[1] Consistent with the requirements of 4th Circuit Local Rule 27(a), counsel for Petitioners contacted counsel of record for FCC by email on June 24, 2026, to seek their position on this motion. Counsel indicated that the FCC will oppose this motion.

## BACKGROUND

### I. Statutory and regulatory framework

Section 315(b)(1) of the Communications Act of 1934 entitles "legally qualified candidate[s] for any public office" who "use . . . any broadcasting station" shortly before their elections to do so at "the lowest unit charge of the station for the same class and amount of time for the same period." 47 U.S.C. § 315(b)(1). This valuable entitlement takes effect 45 days before the candidate's primary election or runoff and 60 days before the candidate's general election. *Id.* § 315(b)(1)(A). It was enacted in its present form as part of the Federal Election Campaign Act of 1971 (FECA), which comprehensively regulates the finances of federal campaigns. *See Hernstadt v. FCC*, 677 F.2d 893, 897 (D.C. Cir. 1980).

FECA requires all federal candidates to designate a "principal campaign committee" to accept contributions and make expenditures on the candidate's behalf. 52 U.S.C. § 30102(e)(1). Everyone agrees that stations must offer lowest unit charge for advertisements purchased by those principal campaign committees on behalf of the "legally qualified candidate" they support. This Petition concerns whether stations must *also* offer lowest unit charge to advertisements purchased by two other categories of committees that are further removed from the candidates themselves: party committees engaged in coordinated expenditures under 52 U.S.C. § 30116(d), and joint fundraising committees established by candidates and non-candidates

"solely for the purpose of joint fundraising by such candidates," *id.* § 30102(e)(3)(A)(ii). While the dispute is ultimately over the meaning of the Communications Act, understanding it requires an explanation of federal campaign finance law's treatment of those two categories of committees.

**Party Committee Coordinated Expenditures.** FECA sharply limits the size of "contributions" that may be made to federal political committees, including candidate committees. *See* 52 U.S.C. § 30116(a). To prevent donors from evading those limits by directly paying vendors on a candidate's behalf, FECA also treats as contributions, subject to those same limits, expenditures that are "made by any person in cooperation, consultation, or concert, with, or at the request or suggestion of, a candidate, his authorized political committees, or their agents." *Id.* § 30116(a)(7)(B)(i); *see Shays v. FEC*, 414 F.3d 76, 97 (D.C. Cir. 2005). But FECA contains an important exception to that treatment, which Congress enacted with its 1974 FECA amendments: State and national political party committees may make substantial coordinated expenditures in connection with federal candidates' campaigns without those expenditures being treated as contributions—so long as *the party* is the one footing the bill. *See* 52 U.S.C. § 30116(d).

**Joint Fundraising Committees.** In addition to establishing a principal campaign committee, FECA allows federal candidates to "designate a political committee established solely for the purpose of joint fundraising by such candidates

as an [additional] authorized committee." 52 U.S.C. § 30102(e)(3)(A)(ii); 11 C.F.R. § 102.17(a)(1), (2). Such committees are commonly known as "joint fundraising committees" or "JFCs." A JFC's only permissible purpose is to "collect contributions, pay fundraising costs from gross proceeds and from funds advanced by participants, and disburse net proceeds to each participant." *Id.* § 102.17(b)(1); *see* 52 U.S.C. § 30102(e)(3)(A)(ii). The FEC's joint fundraising regulation requires JFC participants to split expenses for each fundraising effort in proportion to their split of proceeds from that effort. 11 C.F.R. § 102.17(c)(7).

In recent election cycles, Republican candidates have taken advantage of these rules to form JFCs designed as advertising vehicles with party committees, which have higher contribution limits than candidates; with party committees' even-higher-limit "specialty accounts"[2]; and with other non-candidate committees, with their own separate contribution limits. These JFCs are structured to ensure that an overwhelming majority of their proceeds flow to the non-candidate committees, and count against the non-candidate committees' contribution limits—meaning that those non-candidate committees bear the overwhelming majority of expenses as

[2] FECA was amended in 2014 to create separate presidential convention, headquarters, and legal proceedings accounts for certain national party committees, with separate, higher contribution limits. *See* 52 U.S.C. § 30116(a)(9).

well.[3] These JFCs then run advertisements that are indistinguishable from typical candidate or party-coordinated advertisements, other than a brief fundraising pitch in the final few seconds that prompted donations to the JFC.[4] And they have sought and received lowest unit charge from broadcasters for those ads, despite their being overwhelmingly funded by non-candidates.

## II. The Media Bureau's LUC Guidance

Until recently, the FCC had not provided direct guidance on whether party committees engaged in candidate-coordinated spending JFCs with non-candidate members are entitled to lowest unit charge for their use of broadcasting stations shortly before elections. On March 30, 2026, however, the Media Bureau issued the challenged LUC Guidance. The LUC Guidance states the Bureau's position that "the LUC requirements are applicable to (1) authorized committees, including authorized committees that engage in joint fundraising with legally qualified candidates for federal office, and (2) advertisements that qualify as coordinated expenditures of political parties and legally qualified candidates for federal office." Pet. Ex. A, Doc.

---

[3] *See, e.g.*, Nevada Victory Committee, FEC, https://www.fec.gov/data/committee/C00890962/ (last visited Apr. 28, 2026); *Wisconsin Victory Committee*, FEC, https://www.fec.gov/data/committee/C00889493/ (last visited June 25, 2026).

[4] *See, e.g.*, *Conflict of Interest*, WI Victory JFC/Hovde, https://perma.cc/8KUC-ZX7Z; *Radical Too*, Fischer Victory Fund, https://perma.cc/AV7G-FBPX; *More Work to Do*, MI Victory Committee/Rogers, https://perma.cc/GY65-XBX6; *Call to Duty*, Sheehy Victory Committee, https://perma.cc/9S62-6XMR.

3-2 (“LUC Guidance”) at 1. It states that “the FCC has long held that LUC provisions of section 315(b) apply to both candidates and their authorized campaign committees” because the Act “repeatedly refers to candidates and their authorized committees as sharing the rights it confers.” *Id.* It asserts that “[t]he FCC’s rules do not recognize distinctions between types of committees for LUC purposes (*e.g.*, principal campaign committee, joint fundraising committee) provided that the committee is an authorized committee of the candidate under the FECA.” *Id.* at 2. And it further purports to “restate previous Media Bureau guidance” (which it neither cites nor otherwise identifies) that “candidate-party coordinated advertisements are subject to the LUC provisions, provided that the ad otherwise complies with other applicable requirements.” *Id.*

## III. Petitioners’ Application for Review explains that the LUC Guidance is straightforwardly unlawful.

On April 29, 2026, Petitioners timely filed an Application for Review asking FCC to set aside the Media Bureau’s LUC Guidance. Petitioners’ application explained that the LUC Guidance is unlawful because it purports to require stations to offer lowest unit charge to advertisements from party committees engaged in coordinated spending and from JFCs, when neither constitutes the use of a broadcasting station by a legally qualified candidate, in violation of Section 315(b)(1)’s plain text.

**A.** Party committees' coordinated expenditures are not entitled to lowest unit charge because they are expenditures by the party committees, not by candidates, so they are not "use" of a broadcasting station "by . . . a legally qualified candidate" as Section 315(b)(1) requires. This follows directly from FECA's distinction between (1) party committee *contributions* to candidate committees, which transfer funds to candidates that the candidates can then spend to purchase broadcast time for their own "use," *see* 52 U.S.C. § 30116(a)(1)(A), (h), and (2) party committee coordinated *expenditures*, which must be made directly by the party committee, *not* the candidate, although the party and candidate are free to discuss and plan them in advance, *see id.* § 30116(d).

For party committee advertisements to be *the candidate's* use, they would need to be purchased by the candidate's campaign, not by the party—and if so, they would involve *contributions* by party committees to the campaign, rather than coordinated expenditures. By treating party committee advertisements as candidate spending under the Communications Act when it is party spending under FECA, the LUC Guidance improperly puts the two statutes "at war with one another," instead of reading them "as a harmonious whole." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 502 (2018). This construction flouts traditional principles of statutory interpretation and cannot be countenanced.

**B.** Advertisements by JFCs with non-candidate members are also not "use" of a broadcasting station "by . . . a legally qualified candidate" that is entitled to lowest unit charge because by law, much of the cost and much of the fundraising benefit of those advertisements must be borne by the non-candidate members of the JFC who have no right to lowest unit charge. In practice, those non-candidate members often completely dominate JFC fundraising. In the 2024 cycle, for example, the NRSC and Rogers for Senate formed a JFC, Michigan Victory Committee, that spent more than 98% of its receipts (more than $9 million) on advertising, while disbursing very little to its participants: just over 1% of its receipts (just under $100,000) to the NRSC, and just 0.02% (barely $2,000) to Rogers for Senate, the only candidate-committee member.[5] Under FEC rules, that means that the NRSC—the recipient of 98% of the proceeds after advertising expenses—must have paid for 98% of the more than $9 million in advertising expenses, while Rogers for Senate paid just 2%. *See* 11 C.F.R. § 102.17(c)(7). And, as explained above, the NRSC as a party committee is not entitled to lowest unit charge because its advertising expenses are not the use of a broadcasting station by *a candidate*. Yet the LUC Guidance requires

[5] *See Michigan Victory Committee – Disbursements*, FEC, https://www.fec.gov/data/committee/C00888883/?tab=spending#total-disbursements (last visited June 25, 2026). NRSC deployed a similar strategy in Nevada and Wisconsin. *See supra* note 3.

stations to treat all of this JFC's advertising expenses as if they are "use" by a candidate whose campaign committee pays for almost none of them.

Petitioners identified these straightforward statutory conflicts for FCC in its Application for Review, and no other party opposed the application within the fifteen-day deadline allowed under the Commission's regulations. *See* 47 C.F.R. § 1.115(d). Yet FCC has entirely ignored Petitioners' application. Aside from a system-generated filing confirmation, FCC has communicated nothing to Petitioners about the status of the application, and the regulations do not dictate any timeline for review. Because they face imminent, irreparable harm, Petitioners petitioned for review of the LUC Guidance, and FCC's constructive denial of Petitioners' challenge to the guidance, on Friday, June 19, 2026. The Clerk docketed the petition on June 22. Petitioners now move to expedite this appeal to ensure timely judicial review before the relevant part of the 2026 general election cycle kicks off.

**ARGUMENT**

This Court has considerable discretion to expedite briefing and argument in any appeal where the circumstances compel prompt relief. *See* 28 U.S.C. § 1657(a) (courts "shall expedite the consideration of any action . . . if good cause therefor is shown"); 4th Cir. Local R. 12(c) (permitting the Court to expedite an appeal on a party's motion or its own initiative). Courts, including this Court, routinely expedite appeals that involve the need for imminent relief related to elections, recognizing

the critical need to ensure that elections are conducted in accordance with federal statutory and constitutional law. *See, e.g.*, *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 235 (4th Cir. 2014); Order Granting Mot. to Expedite, *DSCC v. Trump*, No. 26-5193 (D.C. Cir. June 11, 2026), Doc. 2178261. Such relief is critical here: the 2026 general election is fast approaching and candidate, committee, and JFC advertisements will saturate the airwaves even sooner. Without immediate judicial intervention, Petitioners will be forced to compete in some of the nation's closest-watched—and most expensive—races under an unlawful regime that affords party committees and JFCs a substantial benefit Congress never authorized. And no administrative exhaustion requirements preclude immediate judicial review.

**A.** Expedited review is necessary because the 2026 general election cycle is already underway. Election day is November 3, 2026, but Petitioners will be entitled to lowest unit charge starting September 4, 2026. The unlawful regime propagated by the LUC Guidance thus threatens Petitioners—each of whom is running in a highly competitive race—with imminent and irreparable harm, because it dilutes their statutory right to lowest unit charge by unlawfully extending it to non-candidates who are not entitled to it. And the issue will undeniably affect Petitioners' election contests specifically because the Republican national party committees have committed to spending substantial funds in support of Petitioners' opponents. The

NRCC has announced it is targeting Representative McDonald Rivet's seat to attempt to expand the Republicans' majority in the House of Representatives this fall.[6] And the NRSC says that it views Senator Ossoff's seat, as well as the North Carolina and Ohio seats for which Governor Cooper and Senator Brown are running, as critical to maintain Republican control of the Senate.[7] Petitioners therefore expect that the Republican party committees will dedicate substantial resources toward political advertising opposing Petitioners' campaigns and supporting their opponents, including through coordinated expenditures and JFC advertising. That is exactly what NRCC and NRSC have done in recent years: these committees have spent millions of dollars in coordinated expenditures with Republican candidates in recent election cycles, and it is expected this cycle will shatter existing spending records.[8] The chair of the NRSC and NRCC's sister committee, the RNC, touted in an interview that, should the NRSC prevail at the Supreme Court in its case seeking

---

[6] *NRCC Targets 26 Offensive Seats to Expand House Majority*, NRCC (Mar. 17, 2025), https://perma.cc/CCV4-EVDA.

[7] Max Greenwood, *NRSC Chair Tim Scott Predicts Record-Breaking Spending in 2026 Senate Race*, Campaigns & Elections (Feb. 10, 2025), https://campaignsandelections.com/industry-news/nrsc-chair-predicts-record-spending-in-2026/; Liz Goodwin, *Republicans Privately Fear This Swing State Democrat*, The Wash. Post (Mar. 23, 2026), https://perma.cc/ZE3P-UMZR; Max Cohen & John Bresnahan, *Ossoff Gears Up for Fight of His Political Life in 2026*, Punchbowl News (Feb. 6, 2025), https://punchbowl.news/article/campaigns/jon-ossoff-gets-ready-for-2026-senate-race/.

[8] *See* Cohen & Bresnahan, *supra* note 7.

to overturn coordinated expenditure limits, Republican Party committees plan to spend *hundreds of millions* of dollars on coordinated TV advertising "at the candidate rate" to "obliterate" Democratic candidates.[9] And given these projections, Petitioners also expect that more JFCs will continue the practice a select few test-drove in 2024 of running advertisements that function as candidate ads for their opponents. In its "2026 Battle Plan," the NRSC promises donors that it will "build[] on our success we saw last cycle by deploying Joint Fundraising Committee (JFC) ads . . . which *allow us to unlock the candidate rate on linear television* and close the gap with the Democrats' ActBlue advantage."[10]

**B.** Judicial review is both appropriate and necessary at this juncture, for two reasons. *First*, by failing to act on Petitioners' application for review, despite the need for urgency in light of the upcoming election, the FCC has constructively denied the application. *See Env't Def. Fund, Inc. v. Hardin*, 428 F.2d 1093, 1099 (D.C. Cir. 1970) ("[W]hen administrative inaction has precisely the same impact on the rights of the parties as denial of relief, an agency cannot preclude judicial review

---

[9] Matthew Foldi, *INTERVIEW: RNC Chair Joe Gruters on the RNC's election integrity wins and how the GOP can defy history in 2026*, Wash. Reporter (June 23, 2026), https://washingtonreporter.news/interview-rnc-chair-joe-gruters-on-the-rncs-election-integrity-wins-and-how-the-gop-can-defy-history-in-2026.

[10] NRSC, *2026 Battle Plan* at 14 (attached as Exhibit 1).

by casting its decision in the form of inaction rather than in the form of an order denying relief.”).

*Second*, even if FCC has not constructively denied Petitioners’ application, judicial review remains appropriate because Petitioners have fulfilled the only exhaustion requirement required by statute, and further review by the Commission is futile. By “filing” the Application for Review, Petitioners complied with the only statutory “condition precedent to judicial review” of the Media Bureau’s guidance. 47 U.S.C. § 155(c)(7). Nothing in the Communications Act necessarily requires the Commission to act on a petition before judicial review: If Congress had wanted to require by statute the complete exhaustion of administrative remedies, rather than mere filing, Congress could easily have said so. Indeed, later in § 155(c)(7), Congress expressly refers to “orders disposing of all applications for review” filed to challenge an exercise of delegated authority like the LUC Guidance, yet the statute never makes the issuance of such orders a “condition precedent” for judicial review—only the “filing” of the application.

Given that Congress required only filing, any further exhaustion requirement is necessarily prudential and judge-created, rather than statutory and mandatory, and therefore subject to equitable exceptions. *Ross v. Blake*, 578 U.S. 632, 639 (2016). And here, further exhaustion would be futile and would subject Petitioners to irreparable harm, as absent prompt review the LUC Guidance will force Petitioners

to compete in an unlawfully structured competitive environment in their ongoing campaigns.

Further exhaustion is also unnecessary because the question is a pure question of law, and the Court would be neither bound by nor required to defer to FCC's interpretation of the Communications Act. *Loper Bright Enter. v. Raimondo*, 603 U.S. 369, 413 (2024); *see Garcia v. Raycraft*, 815 F. Supp. 3d 595, 602 (W.D. Mich. 2025) (declining to require prudential exhaustion on question of statutory interpretation, citing *Loper Bright*).

## CONCLUSION

For the foregoing reasons, and to enable meaningful relief before September 4, 2026, when the entitlement to LUC takes effect for the general election, Petitioners ask that the Court enter the following expedited schedule, to proceed in parallel with briefing on the FCC's anticipated motion to dismiss:

- **July 2, 2026** – FCC files the administrative record or confirms that it consists only of the challenged Media Bureau guidance and Petitioners' Application for Review.
- **July 6, 2026** – Petitioners file their opening brief.
- **July 27, 2026** – Respondents file their response brief.
- **August 3, 2026** – Petitioners file their reply brief.

Petitioners further request that the Court hear oral argument in a special sitting in August and issue a decision as soon as possible thereafter, in advance of the September 4 start of the lowest unit charge period.

Dated: June 25, 2026

**ELIAS LAW GROUP LLP**

By: /s/ *David R. Fox*

David R. Fox
Richard A. Medina
Nicole E. Wittstein
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
Telephone: (202) 948-1135
dfox@elias.law
rmedina@elias.law
nwittstein@elias.law

## CERTIFICATE OF COMPLIANCE

1. This document complies with the word limit of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 3,827 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft® Word for Microsoft 365 MSO (Version 2605) in 14 pt Times New Roman Font.

By: /s/ *David R. Fox*

David R. Fox

## CERTIFICATE OF SERVICE

I hereby certify that on June 25, 2026, I filed a copy of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record who have entered an appearance. I further certify that I served the United States with a copy of the foregoing by arranging for it to be sent via third party commercial carrier to:

Todd Blanche, Acting Attorney General
United States Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530

and

United States Attorney's Office for the District of Columbia
601 D Street NW
Washington, DC 20530

By: /s/ *David R. Fox*

David R. Fox