No. 26-1785

# United States Court of Appeals
# for the Fourth Circuit

SHERROD BROWN, JON OSSOFF, ROY COOPER,
AND KRISTEN MCDONALD RIVET,

*Petitioners,*

v.

FEDERAL COMMUNICATIONS COMMISSION
AND UNITED STATES OF AMERICA,

*Respondents.*

On Appeal from the
Federal Communications Commission
DA 26-300

## UNOPPOSED MOTION TO INTERVENE BY THE NATIONAL REPUBLICAN CONGRESSIONAL COMMITTEE AND THE NATIONAL REPUBLICAN SENATORIAL COMMITTEE

Thomas R. McCarthy
David L. Rosenthal
Conor D. Woodfin
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
tom@consovoymccarthy.com

June 29, 2026

*Counsel for Intervenors
NRCC and NRSC*

1

## CORPORATE DISCLOSURE STATEMENT

In accordance with Federal Rule of Appellate Procedure 26.1 and Fourth Circuit Rule 26.1(b), each Intervenor discloses that it has no parent corporations and that no publicly held corporations hold 10% or more of its stock. No publicly held corporation not a party to this proceeding has a financial interest in the outcome of this proceeding.

Dated: June 29, 2026

/s/ *Thomas R. McCarthy*
Thomas R. McCarthy
*Counsel for Intervenors*
*NRCC and NRSC*

## INTRODUCTION

Sherrod Brown and the other Petitioners seek expedited review of an order that doesn't exist, in an attempt to entice this Court to exercise jurisdiction it doesn't have, based on a legal theory with no support, all to thwart their political competitors' campaigns in the midst of election season. No part of that request is appropriate. But the Court can stop at the "expedited review" part because, as the FCC explains, Petitioners identify no legitimate emergency. *See* FCC Opp. at 1 (Doc. 10). And because the Court lacks jurisdiction, the simplest (and correct) way to resolve this appeal is to grant the FCC's forthcoming motion to dismiss.

But if the appeal continues, the Court should not proceed without allowing the National Republican Congressional Committee and National Republican Senatorial Committee to participate. Petitioners target the NRCC and NRSC by name. They claim that the Committees' campaign strategies motivated their extraordinary request for relief. And they demand an order from this Court ratcheting up regulatory burdens on the NRCC, NRSC, and related entities on the eve of an election. The federal rules give organizations like the NRCC and NRSC a right to intervene in these circumstances. So if this litigation proceeds, it should include the Committees.

3

## BACKGROUND

To ensure the freeflow of information during election season, Congress granted special broadcasting privileges to political candidates and committees. Among those privileges, a qualified candidate using a broadcast station "in connection with his campaign for nomination for election" is entitled to low rates for those broadcasts. 47 U.S.C. §315(b)(1). That statute makes clear that those rights can be exercised by "the candidate (and any authorized committee of the candidate)." *Id.* §315(b)(2)(A). Certain television broadcasts, for example, must be accompanied by "a clearly readable printed statement, identifying the candidate and stating that the candidate has approved the broadcast and that the candidate's authorized committee paid for the broadcast." *Id.* §315(b)(2)(c). The FCC has "always held" that "authorized campaign committees" are entitled to those special low rates. *In re Codification of the Commission's Pol. Programming Pol'ys*, 7 F.C.C. Rcd. 4611, 4614 (1992).

The term "authorized committee" is a term of art. The statute imports "the meaning[] given" by the Federal Election Campaign Act. 47 U.S.C. §315(b)(2)(F). That Act defines an "authorized committee" to include "any" political committee that is "authorized by a candidate … to receive contributions or make expenditures on behalf of such candidate." 52 U.S.C. §30101(6). That definition casts a wide net. And although an "authorized

4

committee" generally can't support more than one candidate, it can if the committee is "established solely for the purpose of joint fundraising." *Id.* §30102(e)(3)(a)(ii). In addition, the Federal Election Campaign Act permits national and state political parties to make "coordinated expenditures" on behalf of the party's federal nominees. 52 U.S.C. § 30116(d). This allows for party coordinated communications, wherein a candidate authorizes and appears in advertisements funded by the party. *See* 47 U.S.C. §315(b)(2)(c); 52 U.S.C. §30120(d)(1)(B).

Under the Communications Act, a candidates' "authorized committee[s]" are entitled to the special low broadcasting rates. 47 U.S.C. §315(b)(1). Not *some* authorized committees. Not a limited subset of authorized committees. "[A]ny authorized committee of the candidate." *Id.* The "joint fundraising" committees ("JFCs") fall within that definition, 52 U.S.C. §30102(e)(3)(a)(ii). So do party coordinated communications authorized by a candidate. *See* 47 U.S.C. § 315(b)(1)(A) (extending LUC entitlement to candidate "use"); 47 C.F.R. §73.1941(b) ("use" means a candidate appearance). Neither the Communications Act nor federal campaign finance laws carve them out.

Instead of increasing their fundraising efforts to engage in advertising consistent with federal regulations, the politicians sued to change the rules of the game. Petitioners complain that NRCC and NRSC's candidate-party

5

coordinated communications and candidate-authorized JFCs raise funds and run ads entitled to receive the lowest unit charge ("LUC"). But this LUC reflects federal law, which designates JFCs as "authorized committee[s]," *id.*, and entitles "*any* authorized committee" to low broadcasting rates, 47 U.S.C. §315(b)(2) (emphasis added). Moreover, the FCC's broadcasting rules don't favor one party or candidate over another. Broadcasters, for example, must "afford equal opportunities to all other such candidates for that office in the use of such broadcasting station." 47 U.S.C. §315(a). And Petitioners receive support from committees that could take advantage of low broadcasting costs just as the NRCC and NRSC do. But preferring lawsuits to campaigns, Petitioners sought the intervention of courts over the support of the people. The Court should grant the intervention motion and allow the committees who are regulated by the FCC to weigh in.

## ARGUMENT

Under Federal Rule of Appellate Procedure 15(d), third parties can intervene in a proceeding for review of an administrative order by filing a motion within 30 days after the petition for review is filed. The motion need only contain "a concise statement of the interest of the moving party and the grounds for intervention." Fed. R. App. P. 15(d).

"Rule 15(d) does not provide standards for intervention, so appellate courts have turned to the rules governing intervention in the district courts

under Fed. R. Civ. P. 24." *Sierra Club, Inc. v. EPA*, 358 F.3d 516, 517-18 (7th Cir. 2004) (cleaned up). Some courts have found it sufficient that no prejudice will result from an otherwise unopposed intervention. *See IUOE v. NLRB*, 837 F.3d 593, 596 (6th Cir. 2016). Each approach warrants intervention.

### I.    Rule 24 favors intervention.

The Fourth Circuit applies a "[l]iberal intervention" standard "to dispose of as much of a controversy involving as many apparently concerned persons as is compatible with efficiency and due process." *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986) (cleaned up). Under Rule 24(a)(2), "upon the filing of a 'timely motion,'" *Alt v. EPA*, 758 F.3d 588, 591 (4th Cir. 2014), courts "must permit intervention as a matter of right" if the movant can demonstrate an "interest" in the action that could be "impaired" by an adverse decision and is not "adequately represented by existing parties." *Stuart v. Huff*, 706 F.3d 345, 349 (4th Cir. 2013) (cleaned up).

*First*, the motion is timely. Petitioners filed this case on June 22. They moved to expedite the case on June 25. The NRCC and NRSC filed this motion to intervene four days later, and well within Appellate Rule 15(d)'s 30-day deadline. The Court has not yet entered a scheduling order, no party has filed substantive motions, and the Committees' involvement will not delay any proceedings. The motion is timely.

*Second*, the NRCC and NRSC's interests in this case are at least as strong as Petitioners'. Just like Petitioners, the Committees have "an interest in a fair process" governed by lawful campaign finance rules. *Bost v. Ill. State Bd. of Elections*, 607 U.S. 71, 71 (2026). But Petitioners have it backward. The FCC's current rules—allowing both JFC advertisements and candidate-party coordinated  ads to receive the LUC—are the lawful status quo. It is Petitioners who seek to upend that status quo and hamstring the ability of the NRCC, NRSC, and other political competitors from participating on an even playing field. Those efforts to (re)structure the "competitive environment" implicate the Committees' interests in continuing its current practices. *Shays v. FEC*, 414 F.3d 76, 87 (D.C. Cir. 2005). Put simply, the Committees are "the 'object' of [the] government regulation" that Petitioners demand. *Diamond Alt. Energy, LLC v. EPA*, 606 U.S. 100, 114 (2025). So there should be "little question" that the NRCC and NRSC have concrete interests in preventing those increased regulatory burdens. *Id.*

*Third*, the NRCC and NRSC's interests will be impaired if Petitioners prevail. Indeed, that is Petitioners' stated goal. Their petition takes aim at "what NRCC and NRSC have done in recent years." Pet. at 14. And their petition is a self-professed attempt to thwart those efforts by inducing this court "to set aside" the so-called agency action that they claim permits those

efforts.[1] Pet. at 3. So there can be no doubt that if Petitioners "prevail" it "would impair or impede" the Committees' "ability to protect their interest in the subject matter of this litigation." *Teague v. Bakker*, 931 F.2d 259, 262 (4th Cir. 1991).

*Fourth*, no party adequately represents the NRCC and NRSC's interests. An intervenor need only show "that representation of its interest '*may be*' inadequate." *United Guar. Residential Ins. v. Phila. Sav. Fund Soc.*, 819 F.2d 473, 475 (4th Cir. 1987) (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)). That burden is 'minimal.'" *Id.* And the Republican Committees' "partisan" interests easily distinguish them from the Federal Defendants' "public interests." *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 309 (5th Cir. 2022) (allowing "[s]everal committees associated with the Republican Party moved to intervene as defendants"). Moreover, neither the NRCC nor NRSC is a mere "member of the public" who "seeks to intervene

---

[1] Petitioners' assumption that the underlying Media Bureau guidance is final agency action subject to review is wrong. *Compare* Pet. at 3-4, *with* FCC Opp. at 4. Put simply, an FCC "public notice is not a final, reviewable agency decision." *AT&T Corp. v. FCC*, 369 F.3d 554, 561 (2004); *see also Nat'l Ass'n of Broadcasters v. FCC*, 2014 WL 4449657, at *1 (D.C. Cir. Sept. 9, 2014) (Media Bureau's "Public Notice cannot be considered a 'de facto' FCC rule for purposes of judicial review"). Further, the statute authorizing review of final FCC actions anticipates the agency first disposing of Petitioners' application of review as a condition precedent to judicial review. 47 U.S.C. §155(c)(7); *see Int'l Telecard Ass'n v. FCC*, 166 F.3d 387, 388 (D.C. Cir. 1999) (rejecting the argument that "the act of filing a request for Commission review in itself sufficient to satisfy the judicial review prerequisites of § 155(c)(7)").

to defend a law." *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 196 (2022). Rather, the Committees are *regulated parties* defending their partisan and political interests that the FCC, as the *regulator*, can't possibly share. At a minimum, that divergence means there is no "full overlap of interests" between the NRCC and NRSC, and the Federal Defendants, which is all that is required to show inadequacy. *Id.*

## II. Petitioners do not oppose intervention, which will not prejudice any party.

No party will be prejudiced by the NRCC and NRSC's intervention, but this case could very well be the Committees' only chance to defend its interests at stake in this case. Petitioners recognize this and do not oppose intervention so long as it does not cause delay. No delay will be had by granting intervention. The Committees will abide by whatever expedited deadlines the Court sets. So "[w]hatever additional burdens adding the [Committees] to this case may pose, those burdens fall well within the bounds of everyday case management." *Berger*, 597 U.S. at 200. Petitioners target the NRCC and NRSC by name. And they seek a partisan advantage in the upcoming elections by filing this action. If the Court is going to entertain the Petition, it should do so only with the NRCC and NRSC's participation.

*         *         *

10

Both standards support intervention, and either is sufficient to grant the motion. The Court should allow the NRCC and NRSC to intervene and defend its interests against Petitioners' partisan litigation strategy.

## CONCLUSION

For these reasons, the Court should grant the motion to intervene.

Respectfully submitted,

*/s/ Thomas R. McCarthy*

Thomas R. McCarthy
David Rosenthal
Conor D. Woodfin
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
tom@consovoymccarthy.com

June 29, 2026

*Counsel for Intervenors*
*NRCC and NRSC*

11

## COMBINED CERTIFICATIONS

In accordance with the Federal Rules of Appellate Procedure and the Local Rules of this Court, I certify the following:

1. I am a member in good standing of the Bar of this Court.

2. This brief complies with the type-volume limitations of Fed. R. App. P. 29(a)(5) and 32(a)(7)(B) because it contains 1,873 words, excluding the parts exempted by Fed. R. App. P. 32(f).

3. This brief complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) & (a)(6) because it has been prepared using Microsoft Word in 14-point Palatino.

4. The text of the electronic brief is identical to the text in the paper copies.

5. The electronic file containing the brief was scanned for viruses using the most recent version of a commercial virus scanning program, and no virus was detected.

Dated: June 29, 2026

/s/ Thomas R. McCarthy
Thomas R. McCarthy
*Counsel for Intervenors*
*NRCC and NRSC*

12

## CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2026, this brief was electronically filed with the Clerk of Court using the appellate CM/ECF system, which will provide notice and service on counsel for all parties.

Dated: June 29, 2026

*/s/ Thomas R. McCarthy*
Thomas R. McCarthy
*Counsel for Intervenors
NRCC and NRSC*