# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

SHERROD BROWN, JON OSSOFF, ROY COOPER, KRISTEN MCDONALD RIVET,

  Petitioners,

  v.

FEDERAL COMMUNICATIONS COMMISSION, UNITED STATES OF AMERICA,

  Respondents.

Case No. 26-1785

## PETITIONERS' RESPONSE TO MOTION TO DISMISS

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................. i

TABLE OF AUTHORITIES ......................................................................... ii

INTRODUCTION ........................................................................................ 1

BACKGROUND .......................................................................................... 2

ARGUMENT ............................................................................................... 4

I.     The LUC Guidance is "final" because it is a legislative rule. ......................... 4

II.    The Public Notice has the full force and effect of a "Commission" order. ...................................................................................................... 9

III.   "Filing" an application for review is the only condition precedent for judicial review. ............................................................................... 10

IV.   The 60-day clock is a deadline, not a window. ............................................ 14

V.    The Court should not require any further exhaustion as a prudential matter. ...................................................................................................... 17

VI.   Alternatively, the decision is reviewable because the FCC has constructively denied Petitioners' Application for Review. ......................... 20

CONCLUSION ......................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Fed'n of Teachers v. Dep't of Educ.*,
779 F. Supp. 3d 584 (D. Md. 2025)........................................................6, 8

*Am. Fed'n of Teachers v. Dep't of Educ.*,
796 F. Supp. 3d 66 (D. Md. 2025).............................................................4

*Balfour Beatty Infrastructure, Inc. v. Baltimore*,
855 F.3d 247 (4th Cir. 2017) ..................................................................20

*Black v. SEC*,
125 F.4th 541 (4th Cir. 2025)....................................................................8

*Bost v. Ill. State Bd. of Elections*,
602 U.S. 71 (2026)....................................................................................4

*Byrd v. Haas*,
17 F.4th 692 (6th Cir. 2021) ............................................................ 20, 21

*Cal. Cmtys. Against Toxics v. EPA*,
934 F.3d 627 (D.C. Cir. 2019)...................................................................5

*Cavalier Tel., LLC v. Va. Elec. & Power Co.*,
303 F.3d 316 (4th Cir. 2002) ..................................................................18

*Cawthorn v. Amalfi*,
35 F.4th 245 (4th Cir. 2022) ...................................................................10

*Chamber of Com. v. OSHA*,
636 F.2d 464 (D.C. Cir. 1980)...................................................................5

*Children's Hosp. of the King's Daughters, Inc. v. Azar*,
896 F.3d 615 (4th Cir. 2018) .................................................................5, 6

*Coit Indep. Joint Venture v. Fed. Sav. & Loan Ins. Corp.*,
489 U.S. 561 (1989)........................................................................... 18, 20

*Env't Def. Fund, Inc. v. Hardin*,
428 F.2d 1093 (D.C. Cir. 1970)...............................................................20

*Georgia Power Co. v. Teleport Communications Atlanta, Inc.*,
    346 F.3d 1047 (11th Cir. 2003) ........................................................14

*Guerrero-Lasprilla v. Barr*,
    589 U.S. 221 (2020)........................................................................18

*Huawei Tech. USA, Inc. v. FCC*,
    2 F.4th 421 (5th Cir. 2021) .............................................................8

*International Telecard Association v. FCC*,
    166 F.3d 387 (D.C. Cir. 1999)........................................................13

*Jerri's Ceramic Arts, Inc. v. Consumer Prod. Safety Comm'n*,
    874 F.2d 205 (4th Cir. 1989) ..........................................................5

*Mayes v. Am. Hallmark Ins. Co. of Tex.*,
    114 F.4th 1077 (9th Cir. 2024) ......................................................15

*McCarthy v. Madigan*,
    503 U.S. 140 (1992)................................................................. 17, 19

*Muhammad v. Fleming*,
    29 F.4th 161 (4th Cir. 2022) ..........................................................11

*Newsweek, Inc. v. U.S. Postal Service*,
    652 F.2d 239 (2d Cir. 1981) ..........................................................15

*Novak v. Bank of N.Y. Mellon Tr. Co., NA.*,
    783 F.3d 910 (1st Cir. 2015)..................................................... 15, 16

*Richman Bros. Records, Inc. v. FCC*,
    124 F.3d 1302 (D.C. Cir. 1997).....................................................13

*Ross v. Blake*,
    578 U.S. 632 (2016)................................................................. 12, 17

*Rotkiske v. Klemm*,
    589 U.S. 8 (2019).............................................................................11

*Santos-Zacaria v. Garland*,
    598 U.S. 411 (2023).......................................................................17

*Scoggins v. Lee's Crossing Homeowners Ass'n*,
  718 F.3d 262 (4th Cir. 2013) ........................................................20

*Shays v. Fed. Election Comm'n*,
  414 F.3d 76 (D.C. Cir. 2005) ..........................................................4

*Smith v. Ill. Bell Tel. Co.*,
  270 U.S. 587 (1926) ......................................................................18

*Volvo GM Heavy Truck Corp. v. U.S. Dep't of Lab.*,
  118 F.3d 205 (4th Cir. 1997) ........................................................19

*Western Union Telephone Co. v. FCC*,
  773 F.2d 375 (D.C. Cir. 1985) ......................................................16

**Statutes**

28 U.S.C. § 1446(b)(1) ..................................................................15

28 U.S.C. § 2342(1) ........................................................................4

28 U.S.C. § 2675 ......................................................................11, 12

42 U.S.C. § 405(g) ........................................................................12

42 U.S.C. § 1997e(a) .....................................................................12

47 U.S.C. § 155(c)(3) ........................................................1, 8, 9, 14

47 U.S.C. § 155(c)(7)................................................................*passim*

47 U.S.C. § 315(b)(1).................................................................. 2, 6

47 U.S.C. § 402(a) ..........................................................................4

47 U.S.C. § 503(b)(2).......................................................................7

**Regulations**

7 C.F.R. § 276.7(e) .......................................................................10

8 C.F.R. § 103.6(f)(1) ...................................................................10

42 C.F.R. § 93.500(d) ..............................................................................10

47 C.F.R. § 0.61(e) ....................................................................................9

47 C.F.R. § 1.102(b)(3) ...........................................................................10

47 C.F.R. § 1.115(d)...................................................................................3

**Other Authorities**

*In re Codification of the Comm'n's Pol. Programming Pol'ys*,
     7 FCC Rcd. 678 (1991)......................................................................6

*Participles Generally*, Chicago Manual of Style § 5.110..............................................10

## INTRODUCTION

The LUC Guidance is reviewable now for the reasons already explained in Petitioners' Brief. *See* Doc. 22 at 31–56. As requested by the Court, Doc. 18, Petitioners reiterate those reasons below in response to arguments raised in the FCC's Motion to Dismiss.

The LUC Guidance is undeniably final in fact—it is, in substance, a legislative rule, and the FCC concedes that it is both the start and the end of the relevant administrative record. It is thus a reviewable final order. It extends the statutory entitlement to lowest unit charge to new entities, and regulated parties face severe financial penalties if they deny lowest unit charge to these newly eligible committees. The FCC cannot avoid judicial review based on the fiction that the LUC Guidance merely "remind[s] broadcasters and the public" about lowest unit charge requirements when the LUC Guidance in fact imposes a new obligation. JA 1.

Contrary to the FCC's argument, it makes no difference that the LUC Guidance was issued by the Media Bureau instead of the full Commission. The Communications Act expressly provides that any "decision, report, or action" taken by the FCC's delegate "shall have the same force and effect" as if it were taken by the FCC, unless and until "reviewed" by the full Commission. 47 U.S.C. § 155(c)(3). The Commission does not contend that it has in fact "reviewed" the LUC Guidance, and it has offered no indication that such review is at all imminent.

1

Moreover, while the Act further provides that "[t]he filing of an application for review . . . shall be a condition precedent to judicial review" of a delegated action, *id.* § 155(c)(7), Petitioners met that condition precedent by filing an application for review over two months ago, which the FCC has—as far as Petitioners can tell—done nothing with. The statute requires nothing more. Any further exhaustion requirement is prudential and judge-made, and not a jurisdictional prerequisite to this Court's review. And, as explained in Petitioners' Brief, the Court should not require Petitioners to await a decision from the full Commission on their application for review because doing so would preclude meaningful judicial review and deprive Petitioners of an effective remedy for their looming irreparable harm.

## BACKGROUND

Federal law gives "legally qualified candidate[s]," and *only* "legally qualified candidate[s]," a special right to buy advertising time from broadcasters at particularly favorable rates known as "lowest unit charge" or "LUC" in the lead-up to elections. 47 U.S.C. § 315(b)(1). But earlier this year, the Federal Communications Commission's Media Bureau issued a "Public Notice" that undermined and diluted the value of candidates' right to lowest unit charge by instructing broadcasters to also offer LUC to two categories of non-candidate speakers: political parties engaged in coordinated expenditures, and joint fundraising committees with non-candidate members. JA 1–2.

Petitioners are Democratic candidates for the U.S. House of Representatives and U.S. Senate in the upcoming 2026 election. Each is running in a highly competitive race that has been targeted by the Republican Party for coordinated party expenditures in support of Petitioners' opponents. On April 29, 2026, Petitioners timely filed an application for review under 47 U.S.C. § 155(c)(4) asking the FCC to set aside the Media Bureau's LUC Guidance. Petitioners' application explained that the LUC Guidance is unlawful because it instructs stations to offer lowest unit charge to advertisements from party committees engaged in coordinated spending and from JFCs with non-candidate members, when neither constitutes the use of a broadcasting station by a legally qualified candidate, in violation of Section 315(b)(1)'s plain text.

No other party opposed the application within the fifteen-day deadline allowed under the Commission's regulations. *See* 47 C.F.R. § 1.115(d). Yet the FCC has entirely ignored Petitioners' application. Aside from a system-generated filing confirmation, the FCC has communicated nothing to Petitioners about the status of the application, and the regulations do not dictate any timeline for review. Because they face imminent, irreparable harm, Petitioners petitioned for review of the LUC Guidance on Friday, June 19, 2026. The Clerk docketed the petition on June 22. The FCC moved to dismiss the case for lack of jurisdiction on July 1, Doc. 17, and the

Court ordered a response, Doc. 18. Petitioners filed their opening brief on July 6. Doc. 22.

**ARGUMENT**

The Court has jurisdiction to set aside the straightforwardly unlawful LUC Guidance because, under the Communications Act, the Media Bureau's guidance is a final order. 28 U.S.C. § 2342(1); *see also* 47 U.S.C. § 402(a). The LUC Guidance constitutes final agency action because it is a legislative rule disguised as mere guidance. And the text of the Communications Act confirms that all statutory requirements for this Court's review have been met.[1]

**I.      The LUC Guidance is "final" because it is a legislative rule.**

The LUC Guidance is, in substance and operation, a "legislative" rule and thus necessarily final. *See Am. Fed'n of Teachers v. Dep't of Educ.*, 796 F. Supp. 3d

---

[1] The FCC suggests in a footnote that it is "not clear" whether Petitioners have standing. Doc. 17 at 5 n.1. As candidates for public office, Petitioners have "an interest in a fair process" untainted by unlawful ad spending. *Bost v. Ill. State Bd. of Elections*, 602 U.S. 71 , 77 (2026). A candidate for office suffers a legally cognizable injury "when regulations illegally structure [the] competitive environment" governing their election. *Shays v. Fed. Election Comm'n*, 414 F.3d 76, 87 (D.C. Cir. 2005). Such an injury arises, for example, when a candidate "face[s] *intensified* competition" under an unlawful regulatory scheme, requiring them to "anticipate and respond to a broader range of competitive tactics than federal law would otherwise allow." *Id.* at 86. Here, Petitioners are candidates for highly contested House and Senate offices and are undisputably entitled to lowest unit charge for their ads. And Republican committees that are *not* entitled to lowest unit charge have already promised to weaponize the unlawful LUC Guidance in competitive races like Petitioners'. *See* Doc. 22 at 50–52.

66, 99 (D. Md. 2025) ("'An agency action that purports to impose legally binding obligations or prohibitions on regulated parties—and that would be the basis for an enforcement action for violations of those obligations—is a legislative rule,' which is always a final agency action." (citation omitted); *Cal. Cmtys. Against Toxics v. EPA*, 934 F.3d 627, 631 (D.C. Cir. 2019) (explaining that "all legislative rules are final, [but] not all final rules are legislative"). The document purports to merely "remind broadcasters and the public about the FCC's lowest unit charge (LUC) requirements." JA 1. But whether an agency rule is substantive or interpretive is a pragmatic inquiry, and it does not depend on an agency's self-serving characterizations. *Jerri's Ceramic Arts, Inc. v. Consumer Prod. Safety Comm'n*, 874 F.2d 205, 207 (4th Cir. 1989) (explaining that an agency's "characterization of its statement as an exposition of its policy or interpretation of the standard does not preclude [the Court from] finding that it is something more" (citation omitted)); *Chamber of Com. v. OSHA*, 636 F.2d 464, 468 (D.C. Cir. 1980) ("[W]e do not classify a rule as interpretive just because the agency says it is."). Courts thus regularly find that guidance documents and other nominally "nonfinal" agency actions are, in fact, reviewable legislative rules. *See, e.g.*, *Children's Hosp. of the King's Daughters, Inc. v. Azar*, 896 F.3d 615, 620–21 (4th Cir. 2018) (concluding that a policy announced in a Frequently Asked Questions document "f[e]ll[] on the legislative end of the 'spectrum'" (citation omitted)); *Am. Fed'n of Teachers v. Dep't*

*of Educ.*, 779 F. Supp. 3d 584, 611–12 (D. Md. 2025) (concluding a "Dear Colleague" letter was a legislative rule and final agency action even though such letters "are generally interpretive rules, and usually do not require notice and comment").

The LUC Guidance is unquestionably legislative in nature. "A rule is legislative if it supplements a statute, adopts a new position inconsistent with existing regulations, or otherwise effects a substantive change in existing law or policy." *Children's Hosp.*, 896 F.3d at 620 (quoting *Mendoza v. Perez*, 754 F.3d 1002, 1021 (D.C. Cir. 2014)). As Petitioners explained in their Brief, the plain text of the Communications Act entitles only *candidates* to lowest unit charge in the 60 days before a general election. 47 U.S.C. § 315(b)(1); *see* Doc. 22 at 18–31. It makes no mention of authorized committees or party coordinated expenditures in defining the scope of that right. And, as the LUC Guidance acknowledges, existing FCC rules extend that entitlement only to a candidate's authorized *campaign* committee. *See* JA 1 ("Accordingly, the FCC has long held that LUC provisions of section 315(b) apply to both candidates and their authorized campaign committees." (citing *In re Codification of the Comm'ns Pol. Programming Pol'ys*, Memorandum Opinion and Order, 7 FCC Rcd. 4611, 4614 ¶ 23 (1992))); *see also In re Codification of the Comm'n's Pol. Programming Pol'ys*, 7 FCC Rcd. 678, 685–86, 685 n.54 (1991) ("[O]nly candidates are entitled to lowest unit charge benefits," and the FCC has

"*never* held that independent entities" that support or oppose candidates are "entitled to the lowest unit charge" (emphasis added)). Neither Congress nor any FCC rulemaking has ever extended lowest unit charge to party committees, JFCs, or any other "authorized committee" aside from a candidate's principal campaign committee. And as for party coordinated expenditures, while the LUC Guidance purports "to restate previous Media Bureau guidance regarding LUC eligibility for candidate-party coordinated ads," it cites no such guidance, and Petitioners are aware of none. *See* JA 2.

The LUC Guidance also carries undeniable real-world impacts—it leaves broadcasters no choice but to comply. As the Media Bureau emphasizes, lowest unit charge is a "*requirement*." JA 1 (emphasis added). And noncompliance carries hefty penalties. A broadcaster may be subject to fines, forfeitures, or rebates if they deny lowest unit charge for qualifying candidate advertisements in the lead up to an election, including fines up to $25,000 *per day* for "continuing violation[s]" of the Act. *See* 47 U.S.C. § 503(b)(2)(A). Because the LUC Guidance redefines *who* is eligible for lowest unit charge in the first place, it necessarily subjects broadcasters to new penalties if they fail to comply. The LUC Guidance reshapes the legal landscape governing lowest unit charge by extending the entitlement to party committees and JFCs—a move Congress has not authorized. Despite the labels

7

affixed by the agency, the guidance is thus undeniably legislative, and therefore reviewable final agency action.

Alternatively, even if the LUC Guidance is an interpretive rule only, it remains final and reviewable under the *Bennett v. Spear* framework, for many of the same reasons. *See Am. Fed'n of Teachers*, 779 F. Supp. 3d at 610 ("An interpretive rule can still be final agency action, and thus subject to judicial review, if it satisfies the test from *Bennett*."); *see also Huawei Tech. USA, Inc. v. FCC*, 2 F.4th 421, 435 (5th Cir. 2021) ("A Hobbs Act 'final order' is analytically identical to 'final agency action' under the APA." (citing 5 U.S.C. § 704)). Under that standard, "[a] final order 'must mark the "consummation" of the agency's decisionmaking process,' and it 'must be one by which rights or obligations have been determined, or from which legal consequences will flow.'" *Black v. SEC*, 125 F.4th 541, 546 (4th Cir. 2025) (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)). Both conditions are satisfied here. Section 155(c)(3) confirms the LUC Guidance is the agency's final word on the matter unless and until the FCC *in fact* takes up Petitioners' application for review—something it shows no present intention to do. And the statutory penalties for violating the lowest unit charge requirement confirm that "legal consequences will flow" from the Media Bureau's guidance.

**II.      The Public Notice has the full force and effect of a "Commission" order.**

The FCC argues that the Media Bureau's Public Notice falls outside this Court's jurisdiction because it is "not an order of the Commission." Doc. 17 at 6. But the Communications Act provides that an action taken by a bureau within the FCC based on authority delegated by the FCC is no less final than an action by the full Commission. Section 155(c)(3) provides that "[a]ny order, decision, report, or action made or taken pursuant to" delegated authority "shall have the same force and effect, and shall be made, evidenced, and enforced in the same manner, as orders, decisions, reports, or other actions of the Commission." 47 U.S.C. § 155(c)(3); *see also* 47 C.F.R. § 0.61(e) (delegating to the Media Bureau authority to "[a]dminister and enforce rules and policies regarding political programming and related matters").

Section 155(c)(3) also makes clear that the LUC Guidance maintains the same "force and effect" as an "action[] of the Commission" even though Petitioners filed an application for review of the LUC Guidance by the full Commission. *Contra* Doc. 17 at 7. Specifically, Section 155(c)(3) provides that actions taken pursuant to delegated authority "have the same force and effect" as "actions of the Commission" unless and until the order is "*reviewed*" by the full Commission. 47 U.S.C. § 155(c)(3) (emphasis added).

Congress's use of the past participle, "reviewed," confirms that the mere *filing* of such an application does not strip a delegated action of its full force and effect unless and until it is "reviewed." *See Participles Generally*, Chicago Manual of Style § 5.110 ("The past participle denotes the verb's action as being *completed*." (emphasis added)); *Cawthorn v. Amalfi*, 35 F.4th 245, 258 (4th Cir. 2022) ("The past tense is 'backward looking'; it refers to things that have already happened, not those yet to come."). Finality would give way only if the FCC *in fact* reviews the LUC Guidance—something the agency has not done and that nothing in its motion to dismiss suggests it has immediate plans to do. Reinforcing this reading, the FCC's regulations—unlike those other agencies have promulgated—confirm that the filing of an application for review of a "non-hearing" matter, such as this, does not automatically stay the effect of the challenged decision. *See* 47 C.F.R. § 1.102(b)(3); *contra, e.g.*, 8 C.F.R. § 103.6(f)(1) (providing for automatic stay of immigration bond breach determinations by USCIS during administrative appeal period); 42 C.F.R. § 93.500(d) (same for HHS research misconduct proceedings); 7 C.F.R. § 276.7(e) (same for Food and Nutrition Service actions).

## III. "Filing" an application for review is the only condition precedent for judicial review.

Consistent with Congress's treatment of applications for review in Section 155(3), Section 155(c)(7) requires only "the *filing* of an application for review," and not the *resolution* of an application for review, as a "condition precedent" to seeking

judicial review of actions under delegated authority like the LUC Guidance. 47 U.S.C. § 155(c)(7). The Act does not condition judicial review on *complete* exhaustion of administrative remedies, including a Commission ruling on the merits. Indeed, the same subsection later refers to any "orders disposing of all applications for review," but it does *not* do so in the first sentence establishing "condition[s] precedent to judicial review." *See id.*

Had Congress intended to absolutely foreclose judicial review until after the full Commission *decided* an application for review, it could have said so. *See Rotkiske v. Klemm*, 589 U.S. 8, 14 (2019) ("Atextual judicial supplementation is particularly inappropriate when . . . Congress has shown that it knows how to adopt the omitted language or provision."). For example, Congress could have said, "a final 'order[] disposing of all applications for review filed in any case' shall be a condition precedent to judicial review." *See* 47 U.S.C. § 155(c)(7) (referencing such orders later in the provision). Or it could have required that a party both "file" an application for review and that such application be "finally denied by the [FCC] in writing." 28 U.S.C. § 2675. But it did not, and its choice must be given legal effect. To find that Congress has foreclosed judicial review until the full Commission has resolved an application for review would require reading language into the statute that simply is not there—a reading this Court cannot allow. *See, e.g.*, *Muhammad v. Fleming*, 29 F.4th 161, 166 (4th Cir. 2022) (declining "to judicially create a

requirement" that "Congress knew how to impose" but "did not impose"). Where a statute sets specific prerequisites for judicial review, courts must obey that text and neither add nor subtract requirements. *See Ross v. Blake*, 578 U.S. 632, 640 n.1 (2016) (cautioning that "adherence to [a statute's] text runs both ways," and "judicial rulings that imposed extra-statutory limitations on" the ability to sue are just as unlawful as those removing requirements).

A comparison with other administrative exhaustion regimes confirms Section 155(c)(7)'s narrow scope. In other contexts, Congress has expressly conditioned judicial review on a party presenting, and an agency *resolving*, a request for administrative review. *See, e.g.*, 42 U.S.C. § 405(g) ("Any individual, after any final *decision* of the Commissioner of Social Security *made after a hearing* to which he was a party . . . may obtain a review of such decision by a civil action[.]" (emphasis added)); 28 U.S.C. § 2675 (FTCA precluding judicial review "unless the claimant shall have first presented the claim to the appropriate Federal agency *and his claim shall have been finally denied by the agency in writing* and sent by certified or registered mail" (emphasis added)). And others yet unequivocally require *complete* "exhaustion" of available procedures in explicit terms. *E.g.*, 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions . . . until such administrative remedies as are available are *exhausted*." (emphasis added)).

The FCC relies on contrary decisions from the D.C. and Eleventh Circuits, but their reasoning is atextual, outdated, and should not guide the Court here. The D.C. Circuit's opinion in *International Telecard Association v. FCC*, 166 F.3d 387 (D.C. Cir. 1999), is not grounded in the text of Section 155(c)(7). *See* Doc. 17 at 6 (citing this decision). In rejecting the petitioner's argument that Section 155(c)(7) required only the *filing* of an application for review and not resolution by the Commission, the court considered itself bound by its earlier ruling in *Richman Bros. Records, Inc. v. FCC*, 124 F.3d 1302 (D.C. Cir. 1997). But the petitioner in *Richman Bros. Records* never even *filed* an application for review, as Section 155(c)(7) expressly requires—instead, it asked the court to "suspend the [statutory] exhaustion requirement" entirely "in the case of a referral made under the doctrine of primary jurisdiction." 124 F.3d at 1304. So while *Richman* said, without closely examining the Act's text, that the court had "every reason to think . . . that the Congress did not intend that the court review a staff decision that has not been adopted by the Commission itself," this was mere dicta that did not reflect engagement with Section 155(c)(7)'s contrary text. *Id.* And when *International Telecard* later elevated this dicta to holding in a five-paragraph, per curiam opinion, it conducted no further textual analysis. This exceedingly thin reasoning should not persuade in the face of the ample textual evidence that Congress, by making delegated actions final unless

13

and until "reviewed," and by requiring only the "filing" of an application for review, did intend to permit review of delegated actions. *Supra* II.

Similarly, in *Georgia Power Co. v. Teleport Communications Atlanta, Inc.*, 346 F.3d 1047 (11th Cir. 2003), the Eleventh Circuit correctly recognized that a party may obtain judicial review of an FCC bureau's order if "(1) it files an application for review by the full Commission, and (2) the relevant order becomes final." *Id.* at 1050 (emphasis added). But the court mistakenly held that "once [a party] *files* an application for review, the subordinate unit's order is non-final, and hence nonreviewable under 28 U.S.C. § 2344." *Id.* (citing 47 U.S.C. § 155(c)(3)) (emphasis added). As explained above, Section 155(c)(3) provides that an action taken pursuant to delegated authority has "the same force and effect" as an action "of the Commission" "unless [it is] *reviewed*" by the Commission. 47 U.S.C. § 155(c)(3) (emphasis added); *see supra* II. The delegated action thus remains final unless and until FCC review actually occurs.

## IV. The 60-day clock is a deadline, not a window.

The FCC argues that the Petition is "incurably premature," because it was filed before the "60-day filing window" in 47 U.S.C. § 155(c)(7) "open[ed]." Doc. 17 at 8–9. But Section 155(c)(7) does not create a "window"—it sets a deadline. It provides that the time "within which a petition for review must be filed . . . *shall be computed from* the date upon which public notice is given of orders disposing of all

14

applications for review filed in any case." 47 U.S.C. § 155(c)(7) (emphasis added). It does not say that the time for filing *begins* when the application for review is disposed of. Nor does it say that a petition for review is premature if filed before that time.

Federal statutes often use the word "within" to connote a deadline rather than a window. For example, 28 U.S.C. § 1446(b)(1) provides: "The notice of removal of a civil action or proceeding shall be filed *within* 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading . . ." (emphasis added). As the Ninth Circuit has explained, "The plain text of § 1446(b)(1) sets a deadline for removal, not a 'window' for removal. Nothing in the statute's text can be construed as barring a defendant from filing a notice of removal before formal service." *Mayes v. Am. Hallmark Ins. Co. of Tex.*, 114 F.4th 1077, 1079 (9th Cir. 2024); *see also Novak v. Bank of N.Y. Mellon Tr. Co., NA.*, 783 F.3d 910, 913 (1st Cir. 2015) (per curiam) ("[A] defendant can remove at any time before the removal period runs, including before the clock begins ticking."). Here, similarly, that the time "within which" to file a petition for review is "computed from" disposition of an application for review, 47 U.S.C. § 155(c)(7), does not mean that a petition cannot be filed "before the clock begins ticking." *Novak*, 783 F.3d at 913; *see also Newsweek, Inc. v. U.S. Postal Service*, 652 F.2d 239, 241 (2d Cir. 1981) (interpreting a provision that certain decisions of the Board of Governors of the

15

Postal Service "may be appealed . . . within 15 days after [their] publication," to permit judicial review of appeals filed prior to publication).

The FCC relies on *Western Union Telephone Co. v. FCC*, 773 F.2d 375 (D.C. Cir. 1985), for its contrary position. Doc. 17 at 8. But for several reasons, the Court should not follow that case here. First, it did not interpret or address Section 155(c)(7), with its express language making only the *filing*, and not the *resolution*, of an application for review a condition precedent to judicial review. *See Novak*, 783 F.3d at 913 (explaining that the meaning of "within . . . after" is illuminated by statutory context). Rather, it dealt with an effort to seek judicial review of an order before that very order was published in the Federal Register—a form of prematurity entirely absent here. *See Western Union*, 773 F.2d at 376–77. In contrast, here, the challenged agency action—the LUC Guidance—is firmly in place. Second, Section 155(c)(7)'s designation of the filing of an application for review as a condition precedent also answers *Western Union*'s concern that if the 60-day deadline were a deadline rather than a period, there would be no clear starting point for review— Section 155(c)(7)'s plain text makes the filing of the application that starting point. Third, *Western Union* reasoned that it was aware of only one case interpreting "within . . . after" language as setting a deadline rather than a period, *id.* at 377, but as explained in the prior paragraph, such cases have proliferated in the decades since. Finally, *Western Union* did not address the significance of Section 155(c)(7)'s

description of the 60-day deadline as being "computed from" a particular date, rather than "starting from" that date, as would be expected if a period rather than a deadline were involved.

**V. The Court should not require any further exhaustion as a prudential matter.**

Because the plain text of the Communications Act requires only the *filing* of an Application for Review, any further exhaustion of administrative remedies is necessarily a matter of judicial discretion. "[W]here Congress has not *clearly* required exhaustion, sound judicial discretion governs." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) (emphasis added); *cf. Santos-Zacaria v. Garland*, 598 U.S. 411, 417–18 (2023) (explaining that even statutory exhaustion requirements are nonjurisdictional absent "unmistakable evidence, on par with express language addressing the court's jurisdiction"). The FCC argues that the Court "cannot waive an exhaustion requirement on the basis of futility where Congress specifically mandates exhaustion." Doc. 17 at 9 (quoting *Ga. Power*, 346 F.3d at 1050). But, as explained *supra* III, Congress knows how to mandate complete "exhaustion" and it did not do so in Section 155(c)(7). So, to the extent that anything more than "filing" is required, that would be at most a "judge-made" exhaustion doctrine which is "amenable to judge-made exceptions." *Ross*, 578 U.S. at 639. Such exceptions apply here.

The FCC's position, it seems, is that the full Commission can simply sit on the Application indefinitely and thereby preclude judicial review altogether. That would violate the "well-settled" and "strong" presumption that agency decisions are judicially reviewable. *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 229 (2020) (citation omitted); *see also Coit Indep. Joint Venture v. Fed. Sav. & Loan Ins. Corp.*, 489 U.S. 561, 587 (1989) (holding that the "lack of a reasonable time limit in the current administrative . . . procedure renders it inadequate"); *cf. Smith v. Ill. Bell Tel. Co.*, 270 U.S. 587, 591–92 (1926) (a claimant "is not required indefinitely to await a decision of the rate-making tribunal before applying to a federal court for equitable relief").

The Court should therefore exercise its discretion to allow Petitioners to seek judicial review without awaiting FCC action on their application for review. "[I]n determining whether exhaustion is required, federal courts must balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion." *Cavalier Tel., LLC v. Va. Elec. & Power Co.*, 303 F.3d 316, 323 (4th Cir. 2002). "Application of this balancing principle is intensely practical . . . because attention is directed to both the nature of the claim presented and the characteristics of the particular administrative procedure provided." *Id.* (quoting *McCarthy*, 503 U.S. at 146). The "interests of the individual weigh heavily against requiring administrative exhaustion," when "(1) resort to the

administrative remedy may prejudice a subsequent court challenge of the contested agency action; (2) the agency's remedy may be inadequate; [or] (3) . . . where the administrative agency body is shown to be biased or to have otherwise predetermined the issues before it." *Volvo GM Heavy Truck Corp. v. U.S. Dep't of Lab.*, 118 F.3d 205, 211 n.8 (4th Cir. 1997) (citing *McCarthy*, 503 U.S. at 147–48). As Petitioners explained in their Brief, at least the first and second conditions are present here.

First, waiting on the FCC to act will not merely "prejudice" Petitioners' right to "subsequent[ly] assert[] . . . a court action," *McCarthy*, 503 U.S. at 146–47, it will preclude effective judicial review altogether. While the FCC protests that the application has been pending for only two months, Doc. 17 at 9, the beginning of the period in which stations are required to offer lowest unit charge is less than two months away. And there has thus far been no indication that the FCC has taken *any* action on Petitioners' pending Application for Review, or that it plans to do so. The FCC's Motion to Dismiss tersely says only that the "Commission has not yet ruled on the application for review." Doc. 17 at 4. Not only does the FCC decline to offer even an aspirational timeline for adjudicating the pending application, nothing in the record or in its filings suggests that the Commission is actively considering it.

Similarly, the "lack of a reasonable time limit in the current administrative . . . procedure renders it inadequate" because it allows the FCC to "delay" administrative

review "indefinitely, denying a litigant its day in court." *Coit Indep. Joint Venture*, 489 U.S. at 587. The Commission need not even delay "indefinitely" to deny Petitioners their "day in court"—a delay of just a few more months will have that effect. Even if the Commission were inclined to revisit or set aside the Media Bureau's LUC Guidance, any decision that comes after the statutory lowest unit charge period begins on September 4 will come too late to provide fully "effective relief." *Balfour Beatty Infrastructure, Inc. v. Baltimore*, 855 F.3d 247, 252 (4th Cir. 2017). And any relief that comes after the November election has come and gone will be altogether illusory.

**VI.    Alternatively, the decision is reviewable because the FCC has constructively denied Petitioners' Application for Review.**

Alternatively, if the Court concludes that a decision on Petitioners' Application for Review is required, the Court should treat the Commission's silence as a constructive denial. The FCC flatly states, without citation, that "[i]n this context, there is no such thing as a 'constructive denial.'" Doc. 17 at 9. But courts have long held that "when administrative inaction has precisely the same impact on the rights of the parties as denial of relief, an agency cannot preclude judicial review by casting its decision in the form of inaction rather than in the form of an order denying relief." *Env't Def. Fund, Inc. v. Hardin*, 428 F.2d 1093, 1099 (D.C. Cir. 1970). Courts "have recognized constructive denials of this sort in other contexts." *Byrd v. Haas*, 17 F.4th 692, 698 (6th Cir. 2021) (collecting cases); *cf. Scoggins v.*

*Lee's Crossing Homeowners Ass'n*, 718 F.3d 262, 272 (4th Cir. 2013) ("[T]he HOA's failure to take any action for such an extended period operated as a constructive denial of the ATV request.").

Petitioners' Application for Review explicitly requested that the FCC "expedite this matter and promptly set aside the LUC Guidance," because "JFC and party-coordinated broadcast spending against them will begin in just the next few months." Pet. Ex. B, Doc. 3-3 at 19. In "practical terms," the FCC's inaction "amount[s] to an outright denial" of that request. *Byrd*, 17 F.4th at 698. From Petitioners' perspective, there is "no material difference" between the FCC's silence on that request and denying it. *Id.* By failing to take any steps to review Petitioners' application on an expedited basis, the Commission has ensured that Petitioners will be unable to obtain any effective relief through its administrative processes. That is effectively a denial of Petitioners' request that the Commission set aside the LUC Guidance in advance of the 2026 election season.

## CONCLUSION

The Motion to Dismiss should be denied.

Dated: July 13, 2026

Respectfully submitted,

*/s/ David R. Fox*

**ELIAS LAW GROUP LLP**
David R. Fox
Richard A. Medina
Nicole E. Wittstein
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
T: (202) 948-1135
dfox@elias.law
rmedina@elias.law
nwittstein@elias.law

*Counsel for Petitioners Senator Sherrod Brown, Senator Jon Ossoff, Governor Roy Cooper, and Representative Kristen McDonald Rivet*

**CERTIFICATE OF COMPLIANCE**

1. This document complies with the word limit of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 5,166 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft® Word for Microsoft 365 MSO (Version 2605) in 14 pt Times New Roman Font.

By: /s/ *David R. Fox*
David R. Fox

**CERTIFICATE OF SERVICE**

I hereby certify that on July 13, 2026, I filed a copy of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record who have entered an appearance.

By: /s/ *David R. Fox*
David R. Fox