No. 26-1785

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

SHERROD BROWN, JON OSSOFF, ROY COOPER,
AND KRISTEN MCDONALD RIVET,

*Petitioners,*

v.

FEDERAL COMMUNICATIONS COMMISSION
AND UNITED STATES OF AMERICA,

*Respondents,*

&

NATIONAL REPUBLICAN CONGRESSIONAL COMMITTEE AND
NATIONAL REPUBLICAN SENATORIAL COMMITTEE,

*Intervenors.*

On Appeal from the
Federal Communications Commission
DA 26-300

## BRIEF OF INTERVENORS NRCC & NRSC

Thomas R. McCarthy
David L. Rosenthal
Conor D. Woodfin
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Suite 700
Arlington, Virginia 22209
(703) 243-9423
tom@consovoymccarthy.com
david@consovoymccarthy.com
conor@consovoymccarthy.com

July 20, 2026

*Counsel for Intervenors*

No. 26-1785, *Sherrod Brown v. FCC*

## CORPORATE DISCLOSURE STATEMENT

Per Rule 26.1 and Circuit Rule 26.1, Intervenors National Republican Congressional Committee and National Republican Senatorial Committee each certify that it has no parent corporation, and no corporation owns 10% or more of its stock. No publicly traded company or corporation has an interest in the outcome of this case or appeal.

*/s/ Thomas R. McCarthy*
*Counsel for Intervenors*
*NRCC and NRSC*

Dated: July 20, 2026

# **TABLE OF CONTENTS**

Corporate Disclosure Statement........................................................................ i

Table of Authorities........................................................................................ iii

Glossary of Abbreviations.............................................................................viii

Introduction.....................................................................................................1

Jurisdictional Statement..................................................................................2

Statement of the Issues ..................................................................................2

Statement of the Case......................................................................................3

      A.     Background ...............................................................3

      B.     Procedural History ................................................15

Standard of Review .......................................................................................16

Summary of Argument...................................................................................16

Argument.......................................................................................................18

    I.     The Court lacks jurisdiction. ............................................18

    II.    Even if the Court could review the merits, both candidate-party coordinated ads and JFC ads are subject to the LUC rule. .............21

      A.     The LUC applies to candidate-party coordinated ads. .........24

      B.     The LUC applies to qualifying JFC ads. ................................28

Conclusion.....................................................................................................29

Certificate of Compliance..............................................................................30

Certificate of Service .....................................................................................30

# TABLE OF AUTHORITIES

**Cases**

*Ala. Power Co. v. FCC,*
311 F.3d 1357 (11th Cir. 2002) ...............................................................21

*AT&T Corp. v. FCC,*
369 F.3d 554 (2004) ...............................................................................20

*Bennett v. Spear,*
520 U.S. 154 (1997) ......................................................................1, 19, 21

*Broadband Comms Ass'n of Penn. v. FCC,*
No. 26-1062 (July 9, 2026) ...............................................................20, 21

*Council Tree Commc'ns v. FCC,*
503 F.3d 284 (3d Cir. 2007).....................................................................21

*Encino Motorcars, LLC v. Navarro,*
579 U.S. 211 (2016) .................................................................................28

*FCC v. Fox Television Stations, Inc.,*
556 U.S. 502 (2009) .................................................................................27

*FEC v. Colo. Republican Fed. Campaign Comm.,*
41 F. Supp. 2d 1197 (D. Colo. 1999)........................................................25

*FEC v. Colo. Republican Fed. Campaign Comm.,*
533 U.S. 431 (2001) .................................................................................25

*FTC v. Standard Oil Co. of Cal.,*
449 U.S. 232 (1980) .................................................................................21

*Hernstadt v. FCC,*
677 F.2d 893 (D.C. Cir. 1980) ...................................................................4

*Int'l Telecard Ass'n v. FCC,*
166 F.3d 387 (D.C. Cir. 1999) ..............................................................1, 20

*Loper Bright Enters. v. Raimondo,*
603 U.S. 369 (2024) .................................................................................16

*McCutcheon v. FEC,*
572 U.S. 185 (2014) .................................................................................13

*Miller v. FCC,*
66 F.3d 1140 (11th Cir. 1995) ....................................................................3

*Nat'l Ass'n of Broadcasters v. FCC,*
2014 WL 4449657 (D.C. Cir. Sept. 9, 2014).............................................20

*NRSC v. FEC,*
  2025 WL 3068193 (U.S. Oct. 1, 2025) ........................................25

*NRSC v. FEC,*
  2026 WL 1868932 (U.S. June 30, 2026)................................7, 25, 26, 27, 29

*Sierra Club v. NRC,*
  825 F.2d 1356 (9th Cir. 1987) ........................................21

*Sprint Corp. v. FCC,*
  151 F.4th 347 (D.C. Cir. 2025) ........................................16

*Star Wireless, LLC v. FCC,*
  522 F.3d 469 (D.C. Cir. 2008) ........................................16

**Statutes**

28 U.S.C. §2342 ........................................2, 19

47 U.S.C. §151 ........................................26

47 U.S.C. §155 ........................................2, 19, 20

47 U.S.C. §315 ........................................*passim*

47 U.S.C. §402 ........................................19

47 U.S.C. §405 ........................................19

52 U.S.C. §30101 ........................................13, 18, 28

52 U.S.C. §30102 ........................................13, 28

52 U.S.C. §30116 ........................................6

52 U.S.C. §30120 ........................................24

52 U.S.C. §315 ........................................28

**Regulations**

11 C.F.R. §102.13 ........................................23

11 C.F.R. §102.17 ........................................13, 14

11 C.F.R. §109.21 ........................................7

11 C.F.R. §109.37 ........................................7, 13

11 C.F.R. §110.11 ........................................6, 23, 26

11 C.F.R. §110.3 ........................................23

47 C.F.R. §73.1941 ........................................22, 24

47 C.F.R. §73.1942 ........................................*passim*

47 C.F.R. §73.1943 ............................................................................6

**Other Authorities**

FCC Political File Record, Begich-NRCC for Alaska's AL CD (Sept. 18, 2024), perma.cc/EN6M-34MQ ................................................10

FCC Political File Record, Brown/Democrat/US Senate (Sept. 27, 2024), bit.ly/4vzDtf2.................................................................11

FCC Political File Record, Brown/DSCC (Nov. 1, 2024), perma.cc/36HN-SJL4.........................................................10

FCC Political File Record, DCCC/Sykes (Oct. 2, 2024), bit.ly/4pCjY4j......................................................................11

FCC Political File Record, DCCC/Tranel (Oct. 2, 2024), bit.ly/4vDtUfh ....................................................................11

FCC Political File Record, Elissa Slotkin for Michigan (Oct. 28, 2024), perma.cc/FB44-35B2 ................................................14

FCC Political File Record, Friends of Dave McCormick (Oct. 28, 2024), perma.cc/6PS3-ZJSW ...........................................14

FCC Political File Record, Kamala Harris for President (Oct. 3, 2024), bit.ly/3T8qm7l .............................................11

FCC Political File Record, Kristen for MI/DCCC (Aug. 20, 2024), perma.cc/R6C8-3THL...........................................10

FCC Political File Record, Kristen for Michigan (Aug. 20, 2024), perma.cc/RTX4-YPJ2 .............................................10

FCC Political File Record, Lanon Baccam (Sept. 30, 2024), bit.ly/3Tn6nBN.................................................................12

FCC Political File Record, Marie Perez (Sept. 12, 2024), bit.ly/4h3xNXt ................................................................11

FCC Political File Record, Mary Peltola for Alaska (Sept. 12, 2024), perma.cc/HQK8-23C2 ................................................10

FCC Political File Record, Michigan Victory Committee – Mike Rogers (Oct. 31, 2024), perma.cc/52S8-N5PV...........................14

FCC Political File Record, Nevada Victory Committee (Oct. 15, 2024), perma.cc/B4VK-YF7S .........................................14

FCC Political File Record, NRCC/Coughlin for Congress (Oct. 22, 2024), bit.ly/4aUFxak................................................12

FCC Political File Record, NRCC/Schweikert (Oct. 27, 2024),
  bit.ly/4wPIKjF .................................................................................12

FCC Political File Record, NRCC/Zinke (Oct. 18, 2024),
  bit.ly/4bOuZts ..................................................................................12

FCC Political File Record, OH - Bernie Moreno For Senate (Oct. 29, 2024),
  bit.ly/4flEZLJ ...................................................................................12

FCC Political File Record, PA Victory Fund/Friends of Dave McCormick
  (Oct. 28, 2024), perma.cc/3WHR-6Z4D.....................................................14

FCC Political File Record, POL/Andrea Salinas/D/USHouse/OR (Sept. 19,
  2024), bit.ly/3Rgi4K4 .........................................................................12

FCC Political File Record, POL/Bernie Moreno/R/US Senate/OH (Oct. 29,
  2024), bit.ly/4vvi2Md .........................................................................12

FCC Political File Record, POL/C Deluzio/DCCC/D/Con/PA-A (Nov. 1,
  2024), bit.ly/3T7GINr ........................................................................11

FCC Political File Record, POL/Derek Merrin/R/Congress/NRCC/OF
  (Oct. 1, 2024), bit.ly/44BsS8G .............................................................12

FCC Political File Record, POL/Donald Trump/R/President/US-A (Aug.
  21, 2024), bit.ly/3RjXusc ....................................................................11

FCC Political File Record, POL/DSCC/Sherrod Brown/US Senate (Oct. 28,
  2024), perma.cc/4TMK-C3DJ................................................................9

FCC Political File Record, POL/Emilia Sykes/D/US House/OH (Sept. 12,
  2022), perma.cc/B6U3-K5SV .................................................................9

FCC Political File Record, POL/Emilia Sykes/DCCC/D/US House/OH
  (Sept. 12, 2022), perma.cc/B6HK-HPT8 ..................................................9

FCC Political File Record, POL/Janelle Bynum/DCCC/D/US House,
  (Sept. 16, 2024), bit.ly/4fGDfy2 ...........................................................11

FCC Political File Record, POL/Kevin Coughlin/NRCC/R/US House
  (Oct. 29, 2024), bit.ly/458e7Kz.............................................................12

FCC Political File Record, POL/Lanon Baccam/DCCC/D/US House F
  (Oct. 7, 2024), bit.ly/4fHzW9R ............................................................12

FCC Political File Record, POL/Lori Chavez-DeRemer/NRCC/R/USH
  (Sept. 20, 2024), bit.ly/4pr9zsf ............................................................12

FCC Political File Record, POL/Sherrod Brown (Sept. 30, 2024),
  bit.ly/4flkdfv ...................................................................................12

FCC Political File Record, POL/Sherrod Brown/US Senate/OH (Oct. 28, 2024), perma.cc/W4EV-22BZ ...................................................................9

FCC Political File Record, Sam Brown for Nevada (Oct. 14, 2024), perma.cc/5PP7-HP37 ....................................................................14

FCC Political File Record, Sheehy Victory Committee (July 30, 2024), perma.cc/FFD4-DTMM ..................................................................14

FCC Political File Record, Sheehy/Republican/Senate (July 30, 2024), perma.cc/K5YF-KZJL ....................................................................14

FCC Political File Record, Sherrod Brown (Nov. 1, 2024), perma.cc/DK7L-CWKV .................................................................10

FCC Political File Record, Titus for Congress/DCCC (Oct. 7, 2024), bit.ly/4wR70SJ .........................................................................11

FCC Political File Record, Tranel/Democrat/Congress (Oct. 17, 2024), bit.ly/4fFtYq2 ...........................................................................12

FCC Political File Record, Tranel/Democrat/Congress (Oct. 31, 2024), bit.ly/4wTkAoL ..........................................................................11

FCC Political File Record, Trump/Republican/President (Oct. 27, 2024), bit.ly/3T8s48L ...........................................................................12

*In re Codification of the Commission's Pol. Programming Pol'ys*, 7 F.C.C. Rcd. 4611 (1992) ..........................................................................22

*In re Request for Declaratory Ruling Concerning Section 315 KWWL-TV, Waterloo, Iowa*, 23 F.C.C.2d 758 (Sept. 8, 1966) ...........................................24

*Joint Fundraising with Other Candidates and Political Committees*, FEC, perma.cc/3MFX-E5FU .................................................................13

Letter from Robert Pettitt, FCC Gen. Counsel (July 17, 1992), reprinted in FEC Advisory Op. Request 1992-26, perma.cc/5U3L-Y3NP ......................4

Nat'l Ass'n of Broadcasters, *Political Broadcasting Catechism* (16th ed. 2004) .......................................8, 26

Nat'l Ass'n of Broadcasters, |*Political Broadcasting Handbook* (19th ed. 2024) ............................................8

# GLOSSARY OF ABBREVIATIONS

| | |
|---|---|
| DCCC | Democratic Congressional Campaign Committee |
| DSCC | Democratic Senatorial Campaign Committee |
| FCC | Federal Communications Commission |
| FEC | Federal Election Commission |
| FECA | Federal Election Campaign Act |
| JFC | Joint Fundraising Committee |
| LUC | Lowest Unit Charge |
| NRCC | National Republican Congressional Committee |
| NRSC | National Republican Senatorial Committee |

## INTRODUCTION

Petitioners spend two-thirds of their argument not on the merits but trying to convince the Court that it has jurisdiction to hear this case. That they relegate the merits to the undercard telegraphs that the Court lacks jurisdiction. The substance of their jurisdictional arguments is no better. In claiming that a Media Bureau guidance document is "final" and that they can run straight to Court before the Commission ever even addresses their application for review, Petitioners run headlong into a wall of contrary precedent. *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997); *Int'l Telecard Ass'n v. FCC*, 166 F.3d 387, 388 (D.C. Cir. 1999). On top of that, the Commission questions their standing. FCC-MTD.5 n.1; FCC-Br.29-35.

Petitioners wish to ignore the jurisdictional requirement of final agency action and bypass the required application-for-review process in order to manufacture judicial review and force a merits decision in service of their own political interests during election season. But that's not how any of this works. The Court should grant the FCC's motion to dismiss.

Even if the Court were to consider the merits, the Media Bureau's Public Notice is a valid statement of the law. Federal law guarantees the lowest unit charge (LUC) for political candidates' use of a broadcasting station ahead of national elections. 47 U.S.C. §315. That means broadcasters must allow qualified candidates to buy advertisements at favorable rates to

advance political speech. The Media Bureau's Public Notice simply reminds broadcasters of their own historical practice in complying with governing law. As explained below, broadcasters have always understood that candidate-party coordinated ads and joint-fundraising-committee ads on behalf of candidates are entitled to the LUC. In short, even if the Court were to reach the merits, Petitioners provide no justification for the Court to upset the status quo and hinder political party speech during election season.

## JURISDICTIONAL STATEMENT

Intervenors maintain that the Court lacks jurisdiction for the reasons set forth in the FCC's motion to dismiss and addressed below. *See* FCC-MTD. The Media Bureau's Public Notice is not final nor is it an order subject to review in this proceeding. *See* 28 U.S.C. §2342(1) (permitting review of only "final orders" of the FCC); 47 U.S.C. §155(c)(7) (contemplating judicial review of FCC actions after the Commission issues "orders disposing of all application for review" pending before it). Accordingly, the Court should dismiss the case for lack of jurisdiction.

## STATEMENT OF THE ISSUES

I.      Whether the Court has jurisdiction to hear this case.

II.     Whether the FCC Media Bureau's Public Notice is contrary to 47 U.S.C. § 315(b) and implementing regulations as applied to (A) candidate-party coordinated advertisements and (B) candidate-party joint-fundraising-committee advertisements.

## STATEMENT OF THE CASE

### A.    Background

Congress has empowered the FCC to regulate broadcasters' treatment of political advertising. Under the Communications Act of 1934, broadcasters must offer "a legally qualified candidate" for a federal office "and any authorized committee of the candidate" the "lowest unit charge of the station for the same class and amount of time for the same period" in the runup to an election. 47 U.S.C. §315(b)(1)-(2) (designating the pre-election period as 45 days before a primary election and 60 days before a general or special election). Candidate "use of any broadcasting station" triggers the "lowest unit charge" (LUC) entitlement. *Id.* §315(b)(1). The statute thus "establishes a limit on the amount that a broadcast station may charge a political candidate for campaign advertisements." *Miller v. FCC*, 66 F.3d 1140, 1141 (11th Cir. 1995).

The FCC has enacted rules to implement the Communications Act's LUC requirement. In simple terms, broadcast stations must offer advertising slots to candidates and their authorized committees at the lowest rate that the station makes available to "its most favored commercial advertisers for the same classes and amounts of time for the same periods." 47 C.F.R. §73.1942(a)(1)(i). This rule ensures that rates for the same advertising opportunity are no higher for a qualified candidate's use than for a station's

"most favored commercial advertisers." *Id.* And the rule furthers "the overall purposes Congress intended to serve"—"regulating rates for political announcements" through discounted access to ad inventory for candidate use. *Hernstadt v. FCC*, 677 F.2d 893, 900 (D.C. Cir. 1980); *see also* Letter from Robert Pettitt, FCC Gen. Counsel, at 2 (July 17, 1992), reprinted in FEC Advisory Op. Request 1992-26, perma.cc/5U3L-Y3NP (respecting "Congress' clear intent to reduce campaign costs in enacting the lowest unit charge provision").

### i. How political ad buying works

In practice, a candidate, party committee, or authorized committee can contact a broadcasting station that sells ad slots. The broadcaster provides a rate card with a menu of options at which political advertising can be purchased. Stations offer different rates for each class of advertising slot, but the candidate rate must be the lowest rate—the LUC—available within each class for a particular ad offering. 47 U.S.C. §315(b)(1)-(2). Even so, commercially reasonable and practical inventory limits constrain the likelihood and frequency of political advertising orders that make it on air. *See* 47 C.F.R. §73.1942(a)(1)(iii), (vi) ("Stations shall not establish a separate, premium-period class of time sold only to candidates").

Under FCC regulations, the rate card typically includes four classes of time slots available for purchase: "non-preemptible, preemptible with

notice, immediately preemptible[,] and run-of-schedule as distinct classes of time." *Id*. §73.1942(a)(1)(ii). The four classes vary based on different "levels of preemption protection, scheduling flexibility, or associated privileges, such as guaranteed time-sensitive make goods." *Id*. §73.1942(a)(1)(iii). Non-preemptible advertisement slots are guaranteed to air or to "clear," because the buyer pays a premium for that privilege. *Id.* §73.1942(a)(1)(v). Preemptible with notice allows other advertisers to take the slot by paying more, but the original purchaser receives notice and an opportunity to match the higher rate to maintain the slot. *Id.* §73.1942(a)(1)(iv). Immediately preemptible can be overtaken by a higher bidder without notice to the first buyers. *Id.* §73.1942(a)(1)(iii). And the lowest tier, run-of-schedule, refers to preemptible time that can be scheduled at any time during the broadcast day at the station's discretion. *Id.* §73.1942(a)(1)(ii). The LUC rule ensures that whichever class of ad slot that a candidate, party committee, or authorized committee orders will be offered for the political ad at the lowest rate available for that tier and quality of advertising opportunity.

Just because someone places an order does not mean the advertisement will necessarily run. An advertising spot clears when an ad is publicly disseminated, meaning when an advertisement makes it on the air. Of course, advertisements during prime time are less likely to clear in the lower classes than advertisements placed during less sought-after windows

because whether an advertisement in one tier clears varies based on the demand for higher tiers. In any event, federal law requires each broadcaster to maintain "a complete record of a request to purchase broadcast time" for qualifying political ads. 47 U.S.C. §315(e)(1). FCC regulations outline how a broadcaster must maintain its political files, including a log of whether an advertisement request was accepted or rejected, the rates charged, the class of time purchased, and the precise times ads aired. 47 C.F.R. §73.1943(b).

Intervenors NRCC and NRSC are intimately familiar with this process because both entities purchase tens of millions of dollars' worth of ad slots each election cycle. In addition to ad buys for independent party-sponsored ads, for decades, both the NRCC and NRSC purchase slots for candidate-party coordinated ads. These candidate-party coordinated ads are "made with the approval of a candidate [or] a candidate's authorized committee" and thus deemed authorized by the candidate. 11 C.F.R. §110.11(d)(2)(A). The NRSC also participates in joint fundraising committees with federal candidates that purchase fundraising ads for their participating candidates' use. These vehicles permit political committees to offer ads featuring candidates without making a direct financial contribution to a particular candidate's campaign. *See, e.g.*, 52 U.S.C. §30116(d).

### ii. Candidate-party coordinated advertisements

Under the Federal Election Campaign Act, political party committees may pay for "coordinated expenditures" on behalf of their party's candidates. *See NRSC v. FEC*, 2026 WL 1868932, at *16 (U.S. June 30, 2026). FECA historically set limits on these coordinated expenditures. *See id*. But, in *NRSC*, the Supreme Court held "FECA's political-party coordinated-expenditure restrictions unconstitutional." *Id.*

Candidate-party coordinated communications are candidate advocacy communications paid for by a political party but which have been made at the request or suggestion of, based on the material involvement of, or following substantial discussions with a candidate or the candidate's authorized committee. 11 C.F.R. §109.37(a); 11 C.F.R. §109.21(d)(1)-(3) (describing coordination "conduct" standards). "For example, a political party may spend money to produce and place a television advertisement in support of a candidate after consulting with the candidate's campaign about the content, timing, or placement of the advertisement." *NRSC*, 2026 WL 1868932, at *5. In short, candidate-party coordinated advertisements are candidate-sanctioned ads functionally no different than candidate speech.

In practice, candidate-party coordinated ads run by both the Democrat and Republican parties regularly received the LUC before the Media Bureau's Public Order. Since at least 2004, the National Association of

7

Broadcasters—the nation's largest trade association for broadcasters—has advised their members that candidate-party coordinated ads must be offered at the LUC. Nat'l Ass'n of Broadcasters, *Political Broadcasting Catechism* 13 (16th ed. 2004) (explaining that a station must treat an ad as candidate use when a candidate merely appears—as is the case in candidate-party coordinated ads); *see also* Nat'l Ass'n of Broadcasters, *Political Broadcasting Handbook* 36 (19th ed. 2024) ("The national political parties and their campaign committee have" funds that "can be coordinated with a federal candidate and would, if they are, be entitled to the LUC."). The trade association's guidance has remained consistent for at least two decades.[1] This is the case because broadcasters offering the LUC for candidate-party coordinated ads has been and remains the industry standard. *See id.*

FCC records prove that candidate-party coordinated ads have consistently received the LUC. By comparing the rate at which broadcasters fulfilled party-coordinated ad orders—placed by the NRCC and its Democrat counterpart, the Democratic Congressional Campaign Committee (DCCC)—with identical ad orders placed directly by a candidate campaign

---

[1] Petitioners cited a briefly posted memorandum from the National Association of Broadcasters questioning whether coordinated advertisement were entitled to the LUC. *See* Pet.5. The trade association immediately removed that mistaken staff memorandum, which does not reflect the association's official guidance reflected in its handbooks. *See supra* 7-8.

committee during the designated pre-election period, FCC records that each type of ad consistently receives the same rate—the LUC. Because broadcasters give candidates the statutorily-entitled LUC in each ad class purchased during the designated period, any other entity paying the same rate as a candidate committee has also received the LUC.

For instance, in 2022, the DCCC purchased an ad from an NBC television affiliate in Ohio supporting Democrat congressional candidate Emilia Sykes at the same exact rate in the same exact class of advertisement as the Sykes campaign itself.[2] That means both ads received the LUC. And Sykes is far from alone.

Petitioners have benefitted from the application of the LUC rule to their own candidate-party coordinated ads. The Democratic Senatorial Campaign Committee (DSCC) ran candidate-party coordinated ads with Petitioner Sherrod Brown in the 2024 election cycle during the World Series[3]

---

[2] *Compare* FCC Political File Record, POL/Emilia Sykes/DCCC/D/US House/OH (Sept. 12, 2022), perma.cc/B6HK-HPT8 (reporting an order by the Sykes' campaign committee that cleared at the rate of $1,400 in with the exact same order details), *with* FCC Political File Record, POL/Emilia Sykes/D/US House/OH (Sept. 12, 2022), perma.cc/B6U3-K5SV (showing the same order at the same $1,400 for the same evening news slot).

[3] *Compare* FCC Political File Record, POL/DSCC/Sherrod Brown/US Senate (Oct. 28, 2024), perma.cc/4TMK-C3DJ, *with* FCC Political File Record, POL/Sherrod Brown/US Senate/OH (Oct. 28, 2024), perma.cc/W4EV-22BZ (identical ad orders at $9,000 for World Series Game 4 on Fox).

and Wheel of Fortune[4] that received the same rate as identical ad buys from his candidate committees and thus received the LUC. The DCCC also ran candidate-party coordinated ads for Petitioner Kristen McDonald Rivet at the same rate as an identical ad buy from her campaign committee and thus received the LUC.[5] Petitioners know that the LUC practice isn't new—they've extensively benefited from it.

To elaborate on just one NRCC example, a party-coordinated advertisement for Republican congressional candidate Nick Begich received the same rate in the same class of ad as an ad purchased by the campaign committee of his direct competitor, Mary Peltola for Alaska.[6] Again, it is undisputed that principal campaign committees receive the LUC. These are a few of the many examples that hold true across party, race, station, and location before the Media Bureau even issued its challenged guidance.

---

[4] *Compare* FCC Political File Record, Brown/DSCC (Nov. 1, 2024), perma.cc/36HN-SJL4, *with* FCC Political File Record, Sherrod Brown (Nov. 1, 2024), perma.cc/DK7L-CWKV (identical ad orders at $8,500 for Wheel of Fortune on CBS).

[5] *Compare* FCC Political File Record, Kristen for MI/DCCC (Aug. 20, 2024), perma.cc/R6C8-3THL, *with* FCC Political File Record, Kristen for Michigan (Aug. 20, 2024), perma.cc/RTX4-YPJ2 (identical ad orders at $75 during a WNBA game on CBS).

[6] *Compare* FCC Political File Record, Begich-NRCC for Alaska's AL CD (Sept. 18, 2024), perma.cc/EN6M-34MQ, *with* FCC Political File Record, Mary Peltola for Alaska (Sept. 12, 2024), perma.cc/HQK8-23C2 (identical orders at $385 during Sunday Night Football on NBC).

Each cited example shows an instance where a broadcaster offered the same exact rate for a party-coordinated ad as a candidate campaign ad for the same ad inventory, on the same station, during the same program, at the same air time, with the same day class, and the same priority class of time over the same flight dates. Put simply, broadcasters provide the LUC candidate advertisements, whether purchased by the party committee or the candidate's campaign. These are just a few of the numerous party-coordinated ad buys from both party committees that lined up with an identical candidate committee ad buy at the LUC rate in 2024.[7] A half-dozen more candidate-party coordinated ad purchases from both Democratic[8] and

[8] (1) *Compare* FCC Political File Record, DCCC/Sykes (Oct. 2, 2024), bit.ly/4pCjY4j, *with* FCC Political File Record, Brown/Democrat/US Senate (Sept. 27, 2024), bit.ly/4vzDtf2 (identical ad orders at $5,000 during Dancing With the Stars);

(2) FCC Political File Record, POL/C Deluzio/DCCC/D/Con/PA-A (Nov. 1, 2024), bit.ly/3T7GINr, *with* FCC Political File Record, POL/Donald Trump/R/President/US-A (Aug. 21, 2024), bit.ly/3RjXusc (identical ad orders at $5,000 during Jeopardy);

(3) FCC Political File Record, Titus for Congress/DCCC (Oct. 7, 2024), bit.ly/4wR70SJ, *with* FCC Political File Record, Kamala Harris for President (Oct. 3, 2024), bit.ly/3T8qm7l (identical ad orders at $3,000 during Hell's Kitchen);

(4) FCC Political File Record, DCCC/Tranel (Oct. 2, 2024), bit.ly/4vDtUfh, *with* FCC Political File Record, Tranel/Democrat/Congress (Oct. 31, 2024), bit.ly/4wTkAoL (identical ad orders at $2,700 during college football);

(5) FCC Political File Record, POL/Janelle Bynum/DCCC/D/US House, (Sept. 16, 2024), bit.ly/4fGDfy2, *with* FCC Political File Record, Marie

Republican[9] committees that align with a candidate ad purchase at the LUC are provided here.

Perez (Sept. 12, 2024), bit.ly/4h3xNXt (identical ad orders at $1,800 during The Voice);

(6) FCC Political File Record, POL/Lanon Baccam/DCCC/D/US House F (Oct. 7, 2024), bit.ly/4fHzW9R, *with* FCC Political File Record, Lanon Baccam (Sept. 30, 2024), bit.ly/3Tn6nBN (identical ad orders at $1,200 during college football).

[9] (1) *Compare* FCC Political File Record, NRCC/Zinke (Oct. 18, 2024), bit.ly/4bOuZts, *with* FCC Political File Record, Tranel/Democrat/Congress (Oct. 17, 2024), bit.ly/4fFtYq2 (identical ad orders at $440 during evening news);

(2) FCC Political File Record, NRCC/Schweikert (Oct. 27, 2024), bit.ly/4wPIKjF, *with* FCC Political File Record, Trump/Republican/President (Oct. 27, 2024), bit.ly/3T8s48L (identical ad orders at $1,000 during the morning news);

(3) FCC Political File Record, POL/Kevin Coughlin/NRCC/R/US House (Oct. 29, 2024), bit.ly/458e7Kz, *with* FCC Political File Record, POL/Bernie Moreno/R/US Senate/OH (Oct. 29, 2024), bit.ly/4vvi2Md (identical ad orders at $900 during Entertainment Tonight);

(4) FCC Political File Record, NRCC/Coughlin for Congress (Oct. 22, 2024), bit.ly/4aUFxak, *with* FCC Political File Record, OH - Bernie Moreno For Senate (Oct. 29, 2024), bit.ly/4flEZLJ (identical ad orders at $500 during the morning news);

(5) FCC Political File Record, POL/Derek Merrin/R/Congress/NRCC/OF (Oct. 1, 2024), bit.ly/44BsS8G, with FCC Political File Record, POL/Sherrod Brown (Sept. 30, 2024), bit.ly/4flkdfv (identical ad orders at $600 during the evening);

(6) FCC Political File Record, POL/Lori Chavez-DeRemer/NRCC/R/USH (Sept. 20, 2024), bit.ly/4pr9zsf, *with* FCC Political File Record, POL/Andrea Salinas/D/USHouse/OR (Sept. 19, 2024), bit.ly/3Rgi4K4 (identical ad orders at $450 during the weekend news).

### iii. Joint Fundraising Committee (JFC) advertisements

FECA also permits candidates and political committees to engage in joint fundraising through JFCs "established solely for the purpose of joint fundraising." 52 U.S.C. §30102. JFCs are an efficiency vehicle, allowing candidates, parties, and other committees "to raise funds collectively." *McCutcheon v. FEC*, 572 U.S. 185, 215 (2014); 11 C.F.R. §102.17(a); *see also Joint Fundraising with Other Candidates and Political Committees*, FEC, perma.cc/3MFX-E5FU (explaining that "[j]oint fundraising is election-related fundraising conducted jointly by a political committee and one or more other political committees or unregistered organizations"). Under FECA, a JFC in which a federal candidate's campaign is a participant is an "authorized committee" of the candidate. 52 U.S.C. §§30101(6), 30102(e)(1), (3); *see also* 11 C.F.R. §102.17(a)(1)(i) (stating that a JFC "shall be … an authorized committee of each candidate for federal office participating in the joint fundraising activity").

JFCs fundraising on television is a relatively new practice in senatorial campaigns. Each JFC ad must include a solicitation for contributions to ensure the JFC meets its legal purpose of "engag[ing] in joint fundraising with other political committees." *See id*. §102.17(a)(1). Though national party committees and candidates may participate in the same JFC, JFC advertisements are not considered party-coordinated ads. *Id*. §109.37. This is

because the ad must be "paid for by a political party committee" with whom the organization coordinated, while JFC ads are paid for by the JFC. *Id.* §102.17(a)(1)(i). Yet JFCs are authorized committees of candidates, not the party. As such, prior to the *NRSC* ruling, JFCs were an ideal vehicle for national party committees and candidates alike to create and purchase advertisements that solicited contributions for particular candidates without running afoul of party-coordination limits.

As with party-coordinated advertisements, broadcasters offered the LUC to JFCs who purchased political ads prior to the Media Bureau's Public Notice. For example, in Montana's 2024 U.S. Senate elections, Sheehy Victory Committee JFC purchased overlapping ad slots at the same rate as the Sheehy campaign committee.[10] Michigan Victory Committee JFC similarly purchased an overlapping ad slot with Elissa Slotkin's campaign committee during morning news.[11] JFCs across the country consistently enjoyed the same overlapping rates with candidate campaign committees.[12] These

---

[10] *Compare* FCC Political File Record, Sheehy Victory Committee (July 30, 2024), perma.cc/FFD4-DTMM, *with* FCC Political File Record, Sheehy/Republican/Senate (July 30, 2024), perma.cc/K5YF-KZJL (overlapping orders at $200 during the morning news).

[11] *Compare* FCC Political File Record, Michigan Victory Committee – Mike Rogers (Oct. 31, 2024), perma.cc/52S8-N5PV, *with* FCC Political File Record, Elissa Slotkin for Michigan (Oct. 28, 2024), perma.cc/FB44-35B2 (overlapping orders at $100 during the morning news).

[12] *Compare* FCC Political File Record, PA Victory Fund/Friends of Dave McCormick (Oct. 28, 2024), perma.cc/3WHR-6Z4D, *with* FCC Political File

examples further demonstrate that broadcasters have considered JFCs eligible for the LUC in the cycle prior to the issuance of the challenged Public Notice.

## B. Procedural History

Intervenors will not repeat the extensive background laid out by the FCC. *See, e.g.*, FCC-MTD.2-5. But they highlight one important point: the FCC's Media Bureau issued a Public Notice to confirm the existing application of LUC requirements on March 30, 2026. JA001-002. The Public Notice acknowledges that the FCC has "long held" that "both candidates and their authorized campaign committees" are entitled to the LUC. JA001. This includes candidate-party coordinated ads and ads purchased by JFCs, so long as the ads meet the candidate use requirement for LUC applicability. JA001 (explaining that the LUC "appli[es] to (1) authorized committees, including authorized committees that engage in joint fundraising with legally qualified candidates for federal office, and (2) advertisements that

_____

Record, Friends of Dave McCormick (Oct. 28, 2024), perma.cc/6PS3-ZJSW (overlapping orders at $1,800 during the morning news); *compare* FCC Political File Record, Nevada Victory Committee (Oct. 15, 2024), perma.cc/B4VK-YF7S, *with* FCC Political File Record, Sam Brown for Nevada (Oct. 14, 2024), perma.cc/5PP7-HP37 (overlapping orders at $300 during the morning news, with the JFC's ad buy designated as "coordinated").

qualify as coordinated expenditures of political parties and legally qualified candidates for federal office").

Petitioners—candidates running for the United States Senate and House of Representatives—applied for review of the Media Bureau's Public Notice with the FCC on April 29, 2026. That application remains pending before the Commission. *See* Pet.-Br.55. On June 22, 2026, Petitioners petitioned for review of the Media Bureau's Public Notice in this Court.

## STANDARD OF REVIEW

A "court will deny a petition for review of an order by the Commission unless it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Star Wireless, LLC v. FCC*, 522 F.3d 469, 473 (D.C. Cir. 2008) (quoting 5 U.S.C. § 706(2)(A)). Courts resolve constitutional and statutory interpretation issues *de novo. See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024). "But in determining whether agency action is arbitrary and capricious, [courts'] review is 'highly deferential.'" *Sprint Corp. v. FCC*, 151 F.4th 347, 359 (D.C. Cir. 2025) (quoting *Nat'l Lifeline Ass'n v. FCC*, 983 F.3d 498, 507 (D.C. Cir. 2020)). Courts "presume the validity of agency action and must affirm unless the Commission failed to consider relevant factors or made a clear error in judgment." *Id.* (cleaned up).

## SUMMARY OF ARGUMENT

**I.** For the reasons the FCC has articulated in its motion to dismiss, FCC-MTD, and response brief, this Court lacks jurisdiction.

Petitioners challenge a staff-level guidance document that is neither final nor an order of the Commission. The D.C. Circuit, among others, has held repeatedly that judicial review of an FCC bureau order filed before the FCC disposes of an application for review is premature and requires dismissal. Petitioners' constructive denial argument fares no better. Because the Court lacks jurisdiction, the simplest (and correct) way to resolve this appeal is to grant the FCC's motion to dismiss.

**II.** Even if the Court were to consider the merits, Petitioners' legal theory is without merit. To cut through Petitioners' handwaving: dozens of party-coordinated advertisements and advertisements run by JFCs in previous election cycles received the LUC. The Media Bureau's Public Notice does nothing other than acknowledge the status quo, which Petitioners seek to upset for their own political interests in the midst of election season. And the Media Bureau's interpretation of the LUC requirement is correct.

**A.** First, candidate-party coordinated advertisements are entitled to the LUC. The statute is clear: candidate "use of any broadcasting station" triggers entitlement to the LUC. 47 U.S.C. §315(b)(1). The reliance on candidate use extends the LUC to party-coordinated ads authorized by the candidate. But the rule is not without a limiting principle: party ads not authorized by a candidate are not entitled to the LUC.

This rule is also consistent with the FCC's longstanding position that candidate appearances in party-sponsored ads are candidate "uses" under the Communications Act. Candidates authorize the ads, appear in them, and even provide requisite communications and disclaimers related to candidate use. Candidate-party coordinated ads thus fulfill each of the statutory requirements for LUC eligibility. The marketplace knows it, and so do Petitioners, as their past practice demonstrates. Reliance interests further demonstrate that the Public Notice does nothing more than restate the understanding under which the market has long operated.

**B.** Similarly, JFC advertisements that feature candidates meet the test for candidate use and are entitled to the LUC. Federal law even considers a JFC in which a qualifying candidate's campaign is a member of an "authorized committee" of the candidate. 52 U.S.C. §§30101(6). The LUC extends to authorized committees by statute, making this analysis particularly straightforward. Again, JFCs have received the LUC in the past election cycle and both political parties have equal opportunity to use the LUC with respect to JFCs.

## ARGUMENT

### I.   The Court lacks jurisdiction.

Petitioners seek review of an order that doesn't exist, in an attempt to entice this Court to exercise jurisdiction it doesn't have. The Media Bureau issued the Public Notice under delegated authority. That notice does not

become a final, reviewable order until the FCC acts on Petitioners' pending application for review, *see* 47 U.S.C. §§155(c), 402(a), 405; 28 U.S.C. §2342. Petitioners concede that the Commission has not addressed their application, which they filed less than 12 weeks ago. Pet.-Br.3. Instead, Petitioners argue that the sixty-day period in which to seek judicial review under 28 U.S.C. §2344, *after* the agency disposes of all pending applications, "has not even begun to run" Pet. 2. Contrary to Petitioners' assumptions, that fact proves fatal to their jurisdictional argument.

For starters, an agency action cannot be considered "final" unless two conditions are satisfied: (1) "the action must mark the 'consummation' of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature," and (2) "the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett*, 520 U.S. at 177-78. Petitioners challenge a sub-regulatory guidance issued under delegated authority and a so-called constructive denial. Delegated-authority action is not a final Commission order until the Commission disposes of the application for review. In short, without a final order, the Court lacks jurisdiction under the Hobbs Act. 28 U.S.C. §2342. Only a decision by the Commission disposing of Petitioners' application can produce a reviewable order here.

That leads into Petitioners' exhaustion problem. An FCC "public notice is not a final, reviewable agency decision." *AT&T Corp. v. FCC*, 369 F.3d 554, 561 (2004). *see also Nat'l Ass'n of Broadcasters v. FCC*, 2014 WL 4449657, at *1 (D.C. Cir. Sept. 9, 2014) (Media Bureau's "Public Notice cannot be considered a 'de facto' FCC rule for purposes of judicial review"). Further, the statute authorizing review of final FCC actions anticipates the agency first disposing of Petitioners' application of review as a condition precedent to judicial review. 47 U.S.C. §155(c)(7) ("The time within which a petition for review must be filed … shall be computed from the date upon which public notice is given of orders disposing of all applications for review filed in any case"); *see Int'l Telecard Ass'n*, 166 F.3d at 388 (rejecting the argument that "the act of filing a request for Commission review in itself sufficient to satisfy the judicial review prerequisites of § 155(c)(7)").

Petitioners' attempt to toss aside *International Telecard* as an aberration exposes the weakness of their argument. Just this month, the D.C. Circuit reaffirmed its position that "the appeal of an FCC bureau order filed before FCC's disposition of an application for review of that order is thus jurisdictionally premature and 'subject to dismissal.'" Order granting MTD 3, *Broadband Comms Ass'n of Penn. v. FCC*, No. 26-1062 (July 9, 2026) (collecting cases). As in this case, "[a]t the time their appeals were filed, appellants had filed an application for review of the Media Bureau Order,

but FCC had not and still has not resolved that application." *Id.* The D.C. Circuit thus held that it "lacks jurisdiction over appellants' challenges and must dismiss the [case]." *Id.* Petitioners do not cite a single circuit that has sided with their position; all line up for dismissal. *See Ala. Power Co. v. FCC*, 311 F.3d 1357, 1366 (11th Cir. 2002) (holding that the Commission must act on an application for review of a Bureau decision "before a party may petition a court of appeals for review"); *accord Council Tree Commc'ns v. FCC*, 503 F.3d 284, 287-91 (3d Cir. 2007); *Sierra Club v. NRC*, 825 F.2d 1356, 1359 (9th Cir. 1987).

Petitioners' constructive-denial theory cannot save them. Agency inaction is not the equivalent of a denial, and the inaction cannot transform non-final guidance into final agency action. *See Bennett*, 520 U.S. at 177–78 (1997); *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 241-43 (1980). This is especially so when the inaction has been only a matter of weeks. Finally, under 5 U.S.C. §706(1), the proper remedy to unreasonable delay is a petition to compel agency action rather than a premature review of the merits. Petitioners have not sought that here and are not entitled to it anyway. The Court should dismiss for lack of jurisdiction.

II.  **Even if the Court could review the merits, both candidate-party coordinated ads and JFC ads are subject to the LUC rule.**

The Communications Act protects candidate "use" of broadcast stations for political advertisements by requiring stations to extend the LUC

to any "legally qualified candidate," as well as "any authorized committee of such candidate." 47 U.S.C. §315(b)(1)-(2). The Public Notice likewise identifies that the FCC has long interpreted Section 315(b)'s LUC rule to apply to both candidates and their authorized committees. JA001-002; *In re Codification of the Commission's Pol. Programming Pol'ys*, 7 F.C.C. Rcd. 4611, 4613 (1992) (acknowledging that "the statutory obligations imposed under Section 315" apply to advertisements "by a candidate *or the candidate's authorized committee*" (emphasis added)). By its terms, the LUC provision regulates broadcasters by conferring rights based on candidate use. 47 U.S.C. §315(b)(1)-(2).

The FCC's implementing regulation draws the same line as the statute based on candidate use. "If a station permits a candidate to *use* its facilities, the station shall make all discount privileges offered to commercial advertisers, including the lowest unit charges." 47 C.F.R §73.1942(a) (emphasis added). An ad qualifies as a candidate "use" when: (1) The candidate's recognizable voice or image appears, *id.* §73.1941(b); (2) the ad is authorized by the candidate (i.e., not an independent expenditure); and (3) the candidate is legally qualified during the pre-election time period. 47 U.S.C. §315(b)(1)(A). Here, all three requirements are either not in dispute or easily satisfied by candidate-party coordinated and JFC ads alike. That

leaves the question whether an ad authorized by the candidate but paid for by another entity constitutes "use" by the candidate.

Federal regulations again provide clarity. First, the FCC's companion regulation defines "use" as "a candidate appearance (including by voice or picture)." 47 C.F.R §73.1942(b). Second, FEC advertising disclaimer regulations contemplate a communication that is "authorized by a candidate, [or] an authorized committee of a candidate, … but is paid for by any other person." *Id.* §110.11(b)(2). The party-coordinated disclaimer, for instance, states that an advertisement is paid for by NRSC or NRCC, authorized by the candidate's committee, and approved by the candidate. *See id.* Third, all parties agree the LUC requirements are limited to ads involving qualified candidates in the designated period. *E.g.*, Pet.-Br.5, 9.

Petitioners' proposed test for candidate use would require an ad to be purchased by the candidate's campaign, not the party. *See* Pet.-Br.21. Yet this position lacks any basis in law or fact. Indeed, no such requirement exists in the statute or regulation. 47 U.S.C. §315; 47 C.F.R. §73.1942. More to the point, FEC regulations expressly encompass communications that are either "authorized *or* paid for by a candidate or the authorized committee of a candidate."[13] *Id.* §110.11(c)(3) (emphasis added). This regulatory structure

---

[13] To be sure, FEC regulations permit candidates to have more than one authorized committee, so "the authorized committee" cannot be read as

belies Petitioners' proposed test that a candidate must pay for an ad to be candidate use. *E.g.*, Pet.-Br.16, 27. Candidate-party coordinated ads and JFC ads thus each meet all criteria for candidate use and LUC eligibility.

### A. The LUC applies to candidate-party coordinated ads.

Party-coordinated ads authorized by a candidate satisfy all three elements of candidate use and are thus entitled to receive the LUC. The FCC's regulations clarify that "the term 'use' means a candidate appearance (including by voice or picture) that is not [otherwise] exempt." 47 C.F.R. § 73.1941(b). Rather, candidate-party coordinated ads are a candidate "use" when candidates appear in these ads.

In fact, both federal communications and campaign finance laws *require* federal candidates to appear in candidate-party coordinated ads as part of the "stand by your ad" authorization disclaimer. *See* 47 U.S.C. §315(b)(2)(c); 52 U.S.C. §30120(d)(1)(B). The FCC has separately confirmed that candidate appearances in party-sponsored ads are candidate "uses" for purposes of Section 315 and specifically for equal opportunities purposes. *See In re Request for Declaratory Ruling Concerning Section 315 KWWL-TV, Waterloo, Iowa*, 23 F.C.C.2d 758 (Sept. 8, 1966). And, as the Public Notice cites, courts too have long considered candidate-party coordinated ads to

---

justification to limit the LUC to only the principal campaign committee. *E.g.,* 11 C.F.R. §102.13(a)(1), *id.* §110.3(a)(1)(i).

constitute candidate "use" subject to the LUC rule. *See, e.g., FEC v. Colo. Republican Fed. Campaign Comm.*, 41 F. Supp. 2d 1197, 1210 (D. Colo. 1999), *rev'd on other grounds* 533 U.S. 431 (2001) ("For example, independent expenditures do not qualify for the lowest rates on the purchase of broadcasting time, as coordinated expenditures would."). By definition, these ads are authorized candidate communications—and therefore entitled to the LUC. Congress, federal regulators, and the courts agree.

Petitioners next try to manufacture doubt by cherry-picking language from a single paragraph of a reply brief filed by the Solicitor General's Office in litigation unrelated to LUC. Pet.-Br.21-22; *see also NRSC*, 2026 WL 1868932, at *16 (holding that FECA's limits on candidate-party coordinated expenditures violate the First Amendment's protection of free speech). But that brief simply stated the obvious: LUC entitlement applies to *candidate* advertising, not non-candidate *party* spending in the abstract. *NRSC v. FEC*, 2025 WL 3068193 at *23 (U.S. Oct. 1, 2025) (Federal Respondents' Reply Brief). It said nothing that undermines or alters long-established LUC requirements for *candidate-authorized* party-coordinated ads—nor could it have. *See id.* And, after *NRSC*, party spending is now the functional equivalent of candidate speech. 2026 WL 1868932, at *10-11. In any event, the FCC, not the Solicitor General, is the policymaking entity responsible for

interpreting and applying the Federal Communications Act, including enforcing the LUC requirement. *See* 47 U.S.C. §§151, 315.

To the point, not all party-issued ads are the same. As FEC regulations make clear, candidate-party coordinated ads are authorized by a candidate while other party ads are not. 11 C.F.R. §110.11(d)(2). When these ads *are* authorized—candidate-party coordinated ads—they are treated as candidate ads and must receive the LUC. Petitioners hint at concern that this rule provides a blank check to parties to run unlimited ads at the LUC. That is not reality. *See* Pet.-Br.22. Of course, an ad bought by a political party, without candidate authorization, would not qualify for the LUC. Nat'l Ass'n of Broadcasters, *Political Broadcasting Catechism* 19, 36, 116 (16th ed. 2004). This has been black-letter law for years—and it remains so.

Further, a key consideration to the Supreme Court in *NRSC* actually supports the Respondents' position. "Importantly, by holding FECA's political-party coordinated-expenditure restrictions unconstitutional, the Court's decision today treats all political parties equally." *NRSC*, 2026 WL 1868932, at *16. The same logic applies here. The LUC rule is not isolated to a singular party; it applies equally across the aisle. In fact, the LUC rule's application "will allow all political parties—including the DNC and RNC and the respective Senate and House campaign committees, as well as other parties and party committees—to participate more freely and compete more

fully in the political process, and to coordinate more closely with their candidates." *Id.* "Whether the Democratic party, the Republican party, or other parties, all political parties and candidates going forward can compete equally under the same rules regarding coordinated expenditures and can structure their fundraising, spending, and political speech on a level playing field as they see fit within the law." *Id.*

In fact, both parties have taken full advantage of the LUC rule's protection for candidate-party coordinated ads in past cycles. Among the examples provided, are dozens of instances where both Democrat and Republican candidates benefitted from the LUC rule's application to coordinated ads. That longstanding history demonstrates that broadcasters know the LUC rule applies to coordinated ads. And so do Petitioners based on this extensive history that both parties have enjoyed.

These reliance interests further weigh against a finding that a rule restating the widely accepted understanding is arbitrary or capricious. The Supreme Court has made clear that an agency must consider "serious reliance interests" when setting policy. *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) (citing *Smiley v. Citibank (S.D.)*, 517 U.S. 735, 742 (1996)). In fact, "[i]t would be arbitrary or capricious to ignore such matters" and "a reasoned explanation is needed for disregarding facts and circumstances" underlying an existing policy. *Id.* at 515-16. As a result, "an agency must be

cognizant that longstanding policies may have engendered serious reliance interests that must be taken into account." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 212 (2016) (cleaned up). This case should not upset the longstanding status quo that provides no advantage to either political party over the other.

### B. The LUC applies to qualifying JFC ads.

"[T]he terms 'authorized committee' and 'Federal office' have the meanings given [to] such terms by section 30101" of FECA. 52 U.S.C. §315(b)(2)(F). Under FECA, a JFC in which a federal candidate's campaign is a participant is an "authorized committee" of the candidate. *Id.* §§30101(6), 30102(e)(1), (3); *see also* Pet. 10 (conceding as much). The statutory analysis requiring the inclusion of JFCs as covered committees for LUC purposes is thus straightforward.

Although FECA generally prohibits the designation of a political committee that supports multiple candidates as an authorized committee, the law makes a specific exception for committees "established solely for the purpose of joint fundraising." 52 U.S.C. § 30102(e)(3)(A). In addition, there is no distinction between a principal campaign committee and an authorized joint fundraising committee in statute or FCC regulation. The fact that a JFC is an authorized committee of the candidate under FECA is thus sufficient for JFC ads to qualify for the LUC as well. 47 U.S.C. §315(b)(2).

Even though JFC advertising is a relatively new practice, Petitioners acknowledge that JFCs played a role in candidate advertising in the 2024 cycle. *See* Pet.-Br.25. In fact, the JFC that Petitioners identify—Michigan Victory Committee—qualified for the LUC in its ads involving candidate use. *See supra* 14 n.11. If anything, Petitioners complain about disparate fundraising outcomes through JFCs. *See* Pet.-Br.26-27. But, just as the LUC applies to candidate-party coordinated advertising, the same rules apply to all parties. Both parties have an equal opportunity to use (or not) JFC advertising as they see fit. *See NRSC*, 2026 WL 1868932, at *16.

## CONCLUSION

This Court should grant the FCC's motion to dismiss this case. If the Court hears the case on the merits, the Court should deny the petition.

Dated: July 20, 2026

Respectfully submitted,

*/s/ Thomas R. McCarthy*
Thomas R. McCarthy
David L. Rosenthal
Conor D. Woodfin
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Suite 700
Arlington, VA 22209
(703) 243-9423
tom@consovoymccarthy.com
david@consovoymccarthy.com
conor@consovoymccarthy.com

*Counsel for Intervenors*
*NRCC and NRSC*

## CERTIFICATE OF COMPLIANCE

This brief complies with Rule 32(a)(7)(B) and the Court's order permitting Intervenors to file a separate brief, Dkt. 36, because it contains 6,430 words, excluding the parts that can be excluded. This brief also complies with Rule 32(a)(5)-(6) because it has been prepared in a proportionally spaced face using Microsoft Word for Mac in 14-point Palatino font.

Dated: July 20, 2026                    */s/ Thomas R. McCarthy*

## CERTIFICATE OF SERVICE

I filed this brief with the Court via ECF, which will email everyone requiring notice.

Dated: July 20, 2026                    */s/ Thomas R. McCarthy*