# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

SHERROD BROWN, JON OSSOFF, ROY A. COOPER, III,
and KRISTEN MCDONALD RIVET,

*Petitioners*,

v.

FEDERAL COMMUNICATIONS COMMISSION
and UNITED STATES OF AMERICA,

*Respondents*,

NATIONAL REPUBLICAN CONGRESSIONAL COMMITTEE
and NATIONAL REPUBLICAN SENATORIAL COMMITTEE,

*Intervenors*.

On Petition for Review of a Public Notice by
the Federal Communications Commission's Media Bureau

## ATTACHMENT TO BRIEF FOR RESPONDENTS

D. Adam Candeub
*General Counsel*

Jacob M. Lewis
*Deputy General Counsel*

Sarah E. Citrin
*Deputy Associate General Counsel*

Scott M. Noveck
*Counsel*

Sharon Swingle
Jennifer Utrecht
  *Attorneys*

FEDERAL COMMUNICATIONS
  COMMISSION

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, APPELLATE STAFF
950 Pennsylvania Ave. NW
Washington, DC 20530

45 L Street NE
Washington, DC 20554
(202) 418-1740
fcclitigation@fcc.gov

# TABLE OF CONTENTS

**Page**

Excerpt from Nat'l Ass'n of Broads.,
  *Political Broadcast Catechism* (18th ed. 2014) ..................................... 1

Excerpt from Nat'l Ass'n of Broads.,
  *Political Broadcast Handbook* (19th ed. 2024) ..................................... 4

(i)

# POLITICAL
## BROADCAST CATECHISM

### 18TH EDITION • 2014



NATIONAL ASSOCIATION OF BROADCASTERS

# POLITICAL BROADCAST CATECHISM

## 18TH EDITION



© COPYRIGHT 2014, National Association of Broadcasters, Washington, D.C.
All Rights Reserved.

Additional copies of the Political Broadcast Catechism are avaliable at nabstore.com

charge for Saturday night. If a station does not vary its charges to commercial advertisers with the day of the week or from week to week, it may not do so with candidates for public office. *Use of Broadcast and Cablecast Facilities by Candidates for Public Office*, 34 FCC 2d 510, 524-25 (1972); *see also Political Programming Policies*, 7 FCC Rcd 678, 693-94 (1991).

## When Lowest Unit Charge Applies

Certain circumstances must co-exist in order to trigger application of the LUC:

(1)  The actual use of broadcast time must occur within the 45 days before a primary or primary run-off election or within the 60 days before a general or special election;

> Note: The FCC has informally stated that stations selling political spots during/on Election Day should give the candidates the LUC.

(2)  The use must involve a "use" by the candidate through a positive appearance where he or she is identified by his or her voice or image;

(3)  The spot must be "in connection with" the candidate's campaign (*See* 47 CFR § 1942); and

(4)  Federal candidates must sign the federal candidate certification at the time programming is purchased. *See* page 51.

## Ads Not Sponsored by Candidates

Political broadcasts by groups, organizations, or persons other than those authorized by the candidate are not entitled to the LUC. Similarly, if an independent political action committee ("PAC") or an individual unaffiliated with a candidate purchases time for ads supporting a candidate, the ad is not eligible for the LUC, even though the candidate's voice or likeness may appear on the spot. Stations are not required to take "PAC" ads, and should make an independent judgment about their broadcast. *See* page 69 for a discussion on Issue Advertising.

The status of ads run by political parties is more complex. In the past, the FCC viewed party ads as equivalent to candidate ads, and thus entitled to LUC. Following a 1996 Supreme Court decision holding that party expenditures could be independent of the candidates they supported, the FCC opined that, if a party expenditure is independent of the candidate, stations do not have to give the party the LUC. If the party is an authorized committee of the candidate, the LUC applies to the party ads. Stations can request parties that claim the LUC give them written documentation that they are an authorized candidate committee. The national political parties and their campaign committee have limited "hard money" funds; ads paid for from those funds can be coordinated with a federal candidate and would, if they are, be entitled to the LUC.



# NAB Political
# Broadcasting Handbook

NATIONAL ASSOCIATION OF BROADCASTERS

# NAB Political Broadcasting Handbook



Revised July 2024. Copyright 2024, National Association of Broadcasters, Washington, D.C. All Rights Reserved.

Additional copies of the NAB Political Broadcasting Handbook are available at **nabstore.com**

**Caucus.** Where there is an open meeting at which members of the general public express their preferences for specific candidates by selecting delegates to attend a nominating convention (even if the meeting is limited to the same political party members), the LUC applies to a candidate for the office at issue who wants to influence the public to select delegates favorable to him/her. *See Reagan for President Committee*, 80 FCC 2d 225 (1980); *Colorado Precinct Caucuses*, C2-407, 60 R.R. 2d 186 (1986).

## Who is Entitled to the LUC?

**Federal Candidates.** Under the Bipartisan Campaign Reform Act of 2002 (BCRA), federal candidates or their authorized committee(s) must provide a broadcast station with a written certification at the time programming is purchased to avail themselves of a station's LUC. The certification must indicate whether the programming refers to another candidate for the same office. If the programming does refer to an opposing candidate, the certificate must state that the programming will contain the following so-called "stand by your ad" text:

Radio: A candidate must include an audio statement voiced by the candidate identifying him or herself, the office being sought and that the candidate has approved the broadcast.

Television: At the end of a political spot, and for a minimum of four seconds, there must be a clearly identifiable photographic or similar image of the sponsoring candidate while simultaneously displaying a clearly readable printed statement. The printed statement must identify the candidate, affirm that the candidate approved the broadcast and that the candidate and/or the candidate's authorized committee paid for the broadcast.

Congress intended for this obligation to limit the number of "attack ads" against opposing candidates. The provision, however, broadly applies to <u>any</u> mention of an opposing candidate, whether the spot attacks, praises or merely refers to the opposing candidate in a neutral manner.

Failure to adhere to these certification requirements means that the candidate forfeits all rights to the LUC for all programming aired during the remainder of the political window (45 days before a primary, 60 days before a general election). As an aside, the FEC has declined to give an opinion on whether stations giving LUC to federal candidates who do not provide this certification could be deemed a corporate contribution from the station licensee to the candidate in violation of the Federal Election Campaign Act. Stations should consult with their counsel before taking such action.

**State/Local Candidates.** Stations that choose to sell time to candidates in a particular state or local race must offer those candidates the LUC for ad time. The BCRA "stand by your ad" requirements above do not apply to state and local candidates, although many such candidates voluntarily include the statements.

**Noncandidates and Political Parties.** Only legally qualified candidates or their "authorized campaign committee(s)" are entitled to the LUC. Political ads purchased by independent PACs and other groups, organizations or persons other than those authorized by the candidate are not entitled to the LUC, even if a candidate's voice or likeness appears in the spot.

The status of ads run by political parties is more complex. Following a 1996 Supreme Court decision holding that party expenditures could be independent of the candidates they supported, the FCC opined that if a party expenditure is independent of the candidate, stations do not have to give the party the LUC. If the party is an authorized committee of the candidate, the LUC applies to the party ads. Stations can request written documentation from parties that claim the LUC that they are an authorized candidate committee. The national political parties and their campaign committee have limited "hard money" funds; ads paid for from those funds can be coordinated with a federal candidate and if they are, would be entitled to the LUC.

In recent years, this has become a more frequent situation, as some candidates have started to identify additional organizations as an "authorized campaign committee" on top of their primary authorized campaign committee to allow such organizations to demand the LUC. Stations should consult their attorney if confronted with a request for the LUC by entities other than a candidate's primary authorized campaign committee.

## Classes of Time

**Fixed vs. Preemptible.** A station may offer candidates "non-preemptible" time and "fixed position" time as separate classes, provided that the station clearly explains the differences between these classes and offers such classes to commercial advertisers. These classes should provide candidates with benefits not available from the purchase of lower-priced preemptible time.

**Preemptible.** Stations may establish different classes of "preemptible" time as long as these classes are distinguishable in terms of benefits to candidates, such as varying levels of preemption protection. *Political Programming Recon.*, 7 FCC Rcd 4611, 4615 (1992). The station must disclose the likelihood of clearance for each class of preemptible time and distinguish classes by differences other than price.

Once a candidate has full disclosure of the benefits and differences in the classes of preemptible time and the candidate has subsequently purchased time, that candidate is not entitled to a rebate should another class of time (commercial or political) clear at the same daypart as the candidate's spot or spots. *Political Programming Recon.*, 7 FCC Rcd 4611, 4616 (1992).

In general, stations must apply their normal preemption policies to political advertisers. The FCC has raised concerns about stations that allow commercial advertisers to preempt other ads by offering a small amount over the price paid by the first advertiser, but require candidates to move to a higher "class" to preempt an existing spot. On the other hand, the FCC has also expressed concerns about station preemption policies such as "last in; first out" that may have the effect of preferring long-term commercial advertisers over candidates. Stations facing preemption questions should seek advice of counsel.

**Run-of-Schedule (ROS).** A station that offers ROS spots to commercial advertisers must offer them to candidates. ROS spots are a form of discount. The FCC has indicated that stations must permit an opposing candidate to buy a spot in the same time period their opponent's ROS spot runs or purchase ROS time. However, an opposing candidate cannot buy ROS time and demand the same placement as the other candidate if the first candidate's ROS spot cleared in a more desirable daypart.