No. 26-1785

**UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

SHERROD BROWN, JON OSSOFF, ROY COOPER,
AND KRISTEN MCDONALD RIVET,
*Petitioners*,

v.

FEDERAL COMMUNICATIONS COMMISSION
AND UNITED STATES OF AMERICA,

*Respondents*,

&

NATIONAL REPUBLICAN CONGRESSIONAL COMMITTEE AND
NATIONAL REPUBLICAN SENATORIAL COMMITTEE,

*Intervenors*.

On Appeal from the
Federal Communications Commission
DA 26-300

# INTERVENORS' EMERGENCY MOTION FOR STAY

Thomas R. McCarthy
David L. Rosenthal
Conor D. Woodfin
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Suite 700
Arlington, Virginia 22209
(703) 243-9423
tom@consovoymccarthy.com
david@consovoymccarthy.com
conor@consovoymccarthy.com

August 26, 2026

*Counsel for Intervenors*

No. 26-1785, *Sherrod Brown v. FCC*

## CORPORATE DISCLOSURE STATEMENT

Per Rule 26.1 and Circuit Rule 26.1, Intervenors National Republican Congressional Committee and National Republican Senatorial Committee each certify that it has no parent corporation, and no corporation owns 10% or more of its stock. No publicly traded company or corporation has an interest in the outcome of this case or appeal.

*/s/ Thomas R. McCarthy*
*Counsel for Intervenors*
*NRCC and NRSC*

Dated: August 26, 2026

## INTRODUCTION

Just two days ago, the Supreme Court reminded lower courts that they should not interfere with agency decisionmaking before it is final. *Trump v. California*, No. 26A124, slip op. at 7-8 (U.S. Aug. 24, 2026) (per curiam). This Court should heed that instruction, and stay its order (or the mandate) pending a writ of certiorari to the Supreme Court.

Although this Court expedited briefing and decision, it did not expedite issuance of the mandate. Rather, the Court's judgment specifies that it "shall take effect upon issuance of this court's mandate in accordance with Fed. R. App. P. 41." Dkt.67-2. Under FRAP 41(b), the mandate issues "7 days after the time to file a petition for rehearing expires," which (because a federal agency is a party) is "45 days after entry of judgment," Fed. R. App. P. 41. So the earliest the Court's order will take effect is October 16. If the Court intended that date to be the effective date, it should clarify that its order becomes effective under the ordinary rules. But because the Court expedited its decision, and the campaign finance rules at issue "take[] effect on September 4, 2026, for the impending November general election," Op.3, Intervenors move for an emergency stay out of an abundance of caution. The Federal Respondents consent, and Petitioners are opposed, to the relief requested in this motion.

A stay is warranted under the traditional four factors.[1] Given the impending September 4 deadline, Intervenors respectfully request that the Court rule on this stay motion as soon as possible—whether by expediting or waiving response briefs—to permit Intervenors to seek emergency relief at the Supreme Court. Candidates and committees are currently drafting, negotiating, and signing contracts with broadcasters for the coming weeks. In fact, candidates and committees are currently creating the advertisements for the contracts that they've already signed with broadcasters. The parties need certainty on those contracts to move forward and conduct effective campaigns. So whether the Court grants or denies this motion, it should do so as soon as possible.

**STATEMENT**

In 1971, Congress enacted the Federal Election Campaign Act. Part of that law amended the Communications Act to set rules for broadcasting stations on how they must treat candidates and campaigns during election season. Among other things, during the 45 days preceding a primary election or 60 days preceding a general election, any charges "for the use of any

[1] This motion applies the standard for a stay pending appeal. *See Nken v. Holder*, 556 U.S. 418, 434 (2009). Arguably, the easier standard applies for motions to stay issuance of the mandate. *See* Fed. R. App. P. 41(d)(1). For the same reasons expressed in this motion, Intervenors' petition for a writ of certiorari "would present a substantial question," and they've shown "good cause for a stay." *Id.* "Stay requests are normally acted upon without a request for a response." 4th Cir. Local Rule 41.

broadcasting station by any person who is a legally qualified candidate for any public office in connection with his campaign … shall not exceed … the lowest unit charge of the station for the same class and amount of time for the same period." 47 U.S.C. §315(b)(1)(A). That "lowest unit charge" became known as the LUC rate. Federal candidates and their authorized committees must approve all advertisements as a condition of eligibility for the LUC rate. *Id.* §315(b)(2).

The FCC and the broadcasting industry have always taken the position that candidate-party coordinated ad buys and joint fundraising committee ad buys for candidate use get the favorable LUC rate. Intervenors-Br.7-15; Dissent.50. The FCC and the broadcasting industry have long taken that position. FCC-Br.38-39. And the practice has continued in full force this primary season. Dkt.64.

Petitioners in this case sought to upset that status quo. Notwithstanding that both major parties—including Petitioners themselves—have exploited the favorable LUC rate for candidate-party coordinated ad buys and JFC ad buys, Petitioners sought a "competitive" advantage over their political rivals by filing an application with the FCC asking the Commission to end the longstanding practice of giving favorable LUC rates to these types of advertisements. Dkt.3-3 at 1, 17-19. They challenge a public notice issued by the Commission's Media Bureau in March. That public notice is merely

informal guidance that restated existing policy and "remind[ed] broadcasters and the public about the FCC's lowest unit charge (LUC) requirements." J.A. 1-2. It reiterated that the LUC rate applies to "authorized committees, including authorized committees that engage in joint fundraising with legally qualified candidates for federal office," and to "advertisements that qualify as coordinated expenditures of political parties and legally qualified candidates for federal office." J.A. 1. Petitioners filed an application for review, asking the full Commission to revisit and set aside that guidance. The Commission is still considering that application. *See* Dkt.63.

Petitioners nevertheless sought review of the Commission's non-action. This Court expedited briefing, allowed the NRCC and NRSC to intervene as respondents, and held oral argument on August 7. On August 25, the Court issued its opinion and order granting the petition, denying the Commission's motion to dismiss, and setting aside "the Public Notice issued by the FCC's Media Bureau." Op.30. Intervenors timely moved for this stay.

## ARGUMENT

This Court should stay its order (or mandate) because (1) Intervenors are likely to succeed on appeal; (2) they will be irreparably injured absent a stay; (3) a stay would impose no substantial harm on Petitioners; and (4) the public interest favors a stay. *See Nken*, 556 U.S. at 434.

## I. The premature adjudication of nonfinal agency action warrants a stay.

On Monday, the Supreme Court stayed a court order enjoining agency officials before the agency had engaged in "final" agency action. *Trump v. California*, No. 26A124, slip op. at 8 (U.S. Aug. 24, 2026) (per curiam). In that case, several States challenged an executive order that, among other things, directed the U.S. Postal Service to issue a notice of proposed rulemaking requiring outbound ballot envelopes to contain a unique barcode to facilitate tracking. *Id.* at 2. The Court held that the States lacked standing because the executive order "is not a proposed rule, let alone a final rule." *Id.* at 7. The order itself "impose[d] no legal requirements on the States (or, for that matter, on anyone outside the Executive Branch)." *Id.* And any application to the States required "a string of speculations." *Id.* The Court held that the lower court lacked jurisdiction because "[f]ederal courts review final rules, not proposed rules." *Id.* at 8.

The Supreme Court's "interim orders … inform how a court should exercise its equitable discretion in like cases." *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025). And what *Trump v. California* is to agency rulemaking, this case is to adjudication. Both cases involve "internal" rules that are not binding, "final rule[s]." *Trump v. California*, slip op. at 7. While *Trump v. California* concerned an executive order directing rulemaking, this case concerns an informal reminder about how the FCC has historically interpreted its rules. At

most, that interpretation applies only in a rate dispute between a broadcasting station and a committee or candidate. Both cases thus require "a string of speculations" about what the agency will do, how it will "weigh" any arguments or public "comments it received," and how the rule (or here, interpretation) would apply in practice. *Id.* at 7-8. After all that, a court could ask how the "hypothetical final rule would harm" the challengers. *Id.* at 8. Short-circuiting that process "disrespects the value of agency finality" and deprives the parties and the court of "the benefit of having a complete, collective judgment of the most accountable agency officials before judicial review commences." Dissent.45.

This Court can review only "final orders" of the FCC. 28 U.S.C. §2342(1); 47 U.S.C. §402. And the "order" here is nonfinal in at least two respects. First, it's a policy expressed in a staff decision, not a "'consummation' of the agency's decisionmaking process." *Bennett v. Spear*, 520 U.S. 154, 178 (1997). Second, the Commission is still "in the middle of its deliberations" on Petitioners' application for review. Dissent.52. If the FCC issues a final order that "harms" Petitioners, they can challenge that new order. *Trump v. California*, slip op. at 7; *see also TeleSTAR, Inc. v. FCC*, 888 F.2d 132, 133 (D.C. Cir. 1989) ("[T]o obtain review of a now-final agency order, a new petition for review must be filed."). But until that "attenuated chain of inferences" comes

to pass, the Court lacks jurisdiction. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414-15 & n.5 (2013).

## II. The panel majority's disregard of two jurisdictional finality rules creates two circuit splits and warrants a stay.

Intervenors are likely to succeed on the merits of their appeal. The panel opinion makes two fatal mistakes on finality. First, the opinion mistakes staff guidance for final agency action. *See supra* 5-6. Second, the opinion disregards Congress's requirement that the Commission resolve Petitioners' application for review before the agency prior to judicial review. In doing so, the panel majority splits from longstanding precedents from three different circuits, including twice from D.C. Circuit precedent. The splits demonstrate the panel opinion's errors and provide grounds for a stay.

**A.** The panel holds that "the Public Notice is, and always has been, a 'final' order" because the Media Bureau acted under delegated authority and the Commission has not completed its review of the Public Notice. Op.12. That is the first place where the panel goes astray. Dissent.44-45. The Media Bureau's Public Notice is a mere interpretive guidance document restating the FCC's longstanding position regarding LUC rates. *Am. Tort Reform Ass'n v. Occupational Safety & Health Admin.*, 738 F.3d 387, 395 (D.C. Cir. 2013) (an agency's "interpretative rules or statements of policy" do not qualify as final agency action).

Indeed, an FCC bureau order issued under delegated authority "is not an order of the Commission," and "without a final order from the Commission" courts lack jurisdiction. *NTCH, Inc. v. FCC*, 877 F.3d 408, 409-10 (D.C. Cir. 2017). "When Congress says 'the Commission,' it means the Commission," not "delegated subdivisions of the Commission." *Id.* at 413. The D.C. Circuit's explanation makes sense because the FCC's application for review process is "designed to ensure that if a delegated authority … renders a decision, the Commission itself has the opportunity to review the decision before this Court considers it." *Id.* at 413-14 (quoting *Environmentel, LLC v. FCC*, 661 F.3d 80, 83 (D.C. Cir. 2011)). In doing so, Congress "prevent[ed] a party from appealing directly to this Court from a decision made by a delegated authority." *Environmentel*, 661 F.3d at 84. The panel opinion deeming the Media Bureau's guidance to be final agency action is incorrect and creates a direct split with the D.C. Circuit.

**B.** Separately, the panel opinion runs headlong into well-reasoned precedents from at least three sister circuits on a procedural aspect of finality. *See* Intervenors-Br.20-21. Congress made "filing" an application for review with the full Commission "a condition precedent to judicial review." 47 U.S.C. §155(c)(7). The Hobbs Act sets a jurisdictional bar, requiring that petitions for review be filed "within 60 days after … entry" of a "final order" of the Commission. 28 U.S.C. §§ 2342(1), 2344; 47 U.S.C. § 402(a). As Judge

Wilkinson explains, that rule means nothing if the Commission does not also need to *resolve* the application prior to judicial review. Dissent.43 (citing *W. Union Tel. Co. v. FCC*, 773 F.2d 375, 377 (D.C. Cir. 1985) (the statute establishes a filing window, not merely a deadline)). Everyone agrees that Petitioners filed an application for review with the FCC, but the Commission did not act prior to Petitioners' decision to run to the court. Op.5-7. The panel opinion's jurisdictional analysis thus contravenes Congress's statutory requirement.

The panel opinion would leave the Fourth Circuit on an island by splitting from every other circuit on this finality question. In particular, the Third, Eleventh, and D.C. Circuits have all ruled that the Hobbs Act requires the Commission to rule on an application for review before a challenge may proceed in court. Dissent.46-47 (citing *Alabama Power Co. v. FCC*, 311 F.3d 1357, 1366 (11th Cir. 2002) ("[T]he Commission must in some way act on the application for review before a party may petition a court of appeals for review."); *Council Tree Commc'ns v. FCC*, 503 F.3d 284, 287 (3d Cir. 2007); *Ga. Power Co. v. Teleport Commc'ns Atlanta*, 346 F.3d 1047, 1050 (11th Cir. 2003); *Int'l Telecard Ass'n v. FCC*, 166 F.3d 387, 387-88 (D.C. Cir. 1999)); *accord Sierra Club v. NRC*, 825 F.2d 1356, 1359 (9th Cir. 1987). Yet the opinion allows Petitioners to side-step this Hobbs Act requirement by reaching the merits of an

"incurably premature" petition. *TeleSTAR, Inc.*, 888 F.2d at 134; *Council Tree Commc'ns, Inc.*, 503 F.3d at 287.

Petitioners sought to avoid this requirement by arguing that the Commission "constructively denied" their application for review. Op.13-14. But as the FCC pointed out, this case would be the first in the Communications Act's 92-year history to find constructive denial. FCC-Br.27. Agency inaction—especially for such a short period of time—does not transform non-final guidance into a final action. Inaction is not the same as a denial, particularly in the regulatory review process. *See Bennett*, 520 U.S. at 177-78; *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 241-43 (1980). Even if agency inaction over a long period of time could warrant a mandamus remedy, as the dissent makes clear, this case is nowhere near such extraordinary relief (and Petitioners could not meet the high bar for mandamus, which is of course why they didn't seek it). *See* Dissent.48-49. In any event, the FCC was moving forward with a resolution of Petitioners' application for review before the panel issued its opinion. Op.8. But the panel majority usurped the Commission's opportunity to complete the first pass upon the application. 47 U.S.C. § 155(c)(4). As a result, a stay is warranted to prevent a jurisdictional error that splits from every other circuit to have addressed this finality requirement.

### III. The remaining factors favor a stay.

The remaining factors—irreparable harm, the balance of equities, and the public interest—favor a stay. *Nken*, 556 U.S. at 426.

To start, Intervenors will suffer irreparable harm absent a stay. Coordination between candidates and parties "has formed the essence of our Nation's party system of government" since the Founding. *National Republican Senatorial Committee v. FEC*, 146 S. Ct. 2404, 2416 (2026). Parties and candidates depend on "coordinated expenditures" to win elections. *Id.* And "as petitioners concede, party-coordinated ads received LUC rates in prior election cycles," Dissent.50, allowing parties and candidates to collaborate effectively on broadcasted ads.

On the eve of an election, this Court changed those rules. Dissent.50. As Intervenors demonstrated, the FCC and the broadcast industry have long taken the position that candidate-party coordinated ad buys and joint fundraising committee ad buys for candidate use get the LUC rate. That practice has continued in full force this primary season. Dkt.64; Dissent.50. Changing the LUC rules and industry practice during election season will, at a minimum, throw broadcasters, candidates, and campaigns into confusion. Parties and candidates will be inhibited in their ability to engage in political speech through broadcast advertising during election season. *See NRSC*, 146 S. Ct. at 2416. Indeed, those advertising contracts are being drafted,

negotiated, and signed right now—and many have already been executed. Denying LUC rates to certain "disfavor[ed]" political speakers "risks smothering political speech severely." Dissent.59-60.

Moreover, "[a]n injunction is an equitable remedy, and such relief may be inequitable if it is issued shortly before an election, when candidates, election officials, and voters have relied on the rules in place at that time." *Malliotakis v. Williams*, 146 S. Ct. 809, 811 (2026) (Alito, J., concurring in grant of a stay) (citing *Purcell v. Gonzalez*, 549 U.S. 1 (2006)). The public interest counsels against federal courts "fine-tuning campaign finance ground rules in the run up to a general election." Dissent.53.

Nor would a stay irreparably injure Petitioners. After all, Petitioners "profited" from candidate-party coordinated LUC rates in past election cycles. Dissent.50; *see also* Intervenors-Br.9-10 nn.3-5. And because the public notice did not "change the status quo in the first place," at "worst," Petitioners "will keep facing for a few more months the LUC rules" before the FCC issues its decision. Dissent.50. Whatever indirect competitive benefits Petitioners reap from the Court's order are far outweighed by the direct blow to Intervenors' present coordinated expenditures. *See NRSC*, 146 S. Ct. at 2416.

In addition, the majority's decision will disrupt the proper working of the FCC and countless other federal agencies. The Supreme Court has long recognized that laws requiring full agency adjudication prevent "premature

interruption of the administrative process." *McKart v. United States*, 395 U.S. 185, 193-94 (1969). Cutting the Commission out of the review process "weaken[s] the effectiveness of an agency by encouraging people to ignore its procedures." *Id.* at 195. As Judge Wilkinson recognized, accepting jurisdiction to review agency staff decisions both undermines agency efficiency and subverts accountability. Dissent.45-46.

The decision opens the floodgates, allowing challenges to staff decisions of the FCC and other agencies in parallel tracks before the Commission and courts. Dissent.45. This will leave agency process stalled and mired in litigation. Indeed, "[t]he public has an interest in an efficient administrative process, which would be undermined if parties taking part in the administrative process could seek immediate review in federal court whenever they are dissatisfied." *Connor-Stokes v. Ishimaru*, 2009 WL 10714755, at *1 (D.D.C. Apr. 30, 2009). Plus, "premature review squanders judicial resources." *Vanda Pharms. v. FDA*, 123 F.4th 513, 521 (D.C. Cir. 2024). All told, the decision will both harm the agency and the public that relies on efficient agency adjudication absent a stay. The equities favor a stay.

## CONCLUSION

For these reasons, the Court should stay its order (or mandate) pending disposition of a petition for writ of certiorari to the Supreme Court. It should issue a ruling as soon as possible, without waiting for response briefs.

Dated: August 26, 2026

Respectfully submitted,

*<u>/s/ Thomas R. McCarthy</u>*
Thomas R. McCarthy
David L. Rosenthal
Conor D. Woodfin
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Suite 700
Arlington, VA 22209
(703) 243-9423
tom@consovoymccarthy.com
david@consovoymccarthy.com
conor@consovoymccarthy.com

*Counsel for Intervenors*
*NRCC and NRSC*

## CERTIFICATE OF COMPLIANCE

This brief complies with Rule 27(d)(2)(A) because it contains 3,007 words, excluding the parts that can be excluded. This brief also complies with Rule 32(a)(5)-(6) because it has been prepared in a proportionally spaced face using Microsoft Word for Mac in 14-point Palatino font.

Dated: August 26, 2026 */s/ Thomas R. McCarthy*

## CERTIFICATE OF SERVICE

I filed this brief with the Court via ECF, which will email everyone requiring notice.

Dated: August 26, 2026 */s/ Thomas R. McCarthy*